**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WP STEEL VENTURE LLC, *et al.*,[1] | Case No. 12-11661 (KJC) |
| Debtors | (Jointly Administered) |
| | **Hearing Date:  TBD**<br>**Objection Deadline:  TBD** |

**MOTION OF CENTRAL WEST VIRGINIA ENERGY COMPANY,
MASSEY ENERGY COMPANY AND MASSEY COAL SALES COMPANY, INC.
FOR AN ORDER GRANTING MODIFICATION TO THE AUTOMATIC STAY,
OR IN THE ALTERNATIVE, FOR AN ORDER EXTENDING
THE AUTOMATIC STAY TO THE PENDING STATE COURT ACTION**

Central West Virginia Energy Company ("Central West Virginia"), Massey Energy

Company (n/k/a Alpha Appalachia Holdings, Inc., or "Alpha"), and Massey Coal Sales

Company, Inc. (n/k/a Appalachia Coal Sales Company, Inc., or "Appalachia Coal Sales")

(together, "Movants"), by undersigned counsel pursuant to Sections 105 and 362 of Title 11 of

the United States Code (the "Bankruptcy Code"), Rules 4001(a) and 9014 of the Federal Rules of

Bankruptcy Procedure, and Local Bankruptcy Rule 4001-1, hereby move this Court for the entry

of an Order in the form attached hereto, either (1) modifying the automatic stay applicable to the

case of Central West Virginia Energy v. Mountain State Carbon, LLC, et al., Civil Action

Number 5:09-cv-00467 pending in the United States District Court for the Southern District of

West Virginia (the "Related Federal Action"), (see Ex. A, Order of 7/16/2012, Docket No. 206),

or (2) extending the automatic stay to Mountain State Carbon et al. v. Central West Virginia

Energy Company, et al., Civil Action Number 08-C-160 (Brooke County Circuit Court, West

---

[1] The Debtors in these cases, along with the last four digits of their taxpayer identification numbers (if applicable), are: (i) WP Steel Venture LLC (7095); (ii) Metal Centers LLC; (iii) RG Steel, LLC (1806); (iv) RG Steel Railroad Holding, LLC (4154); (v) RG Steel Sparrows Point, LLC (3633); (vi) RG Steel Warren, LLC (0252); (vii) RG Steel Wheeling, LLC (3273); and (vii) RG Steel Wheeling Steel Group, LLC (9927).  The Debtors' executive headquarters are located at 1430 Sparrows Point Boulevard, Sparrows Point, MD 21219.

Virginia) (the "State Court Action"). In support of their Motion, the Movants respectfully state as follows:

**SUMMARY OF ARGUMENT**

This controversy arises from the existence of two lawsuits between the exact same parties over breaches of the exact same contract. In the first lawsuit—the State Court Action—Mountain State Carbon, which is 50% owned by Debtor RG Steel Wheeling, is proceeding on its claim against Movants for $31.8 million, with trial set to begin July 30, 2012. In the second lawsuit—the Related Federal Court Action—the Movants were proceeding on their claim against Mountain State Carbon and Debtor RG Steel Wheeling in the amount of $31.5 million until this past Monday, when the entire action was ordered stayed under the Bankruptcy Code upon motion of Mountain State Carbon. Preventing the Movants from pursuing their $31.5 million claim, which is an offset against Mountain State Carbon and Debtor RG Steel Wheeling, would, in these circumstances, allow Mountain State Carbon and Debtor RG Steel Wheeling to use the automatic stay as both a "sword" and a "shield." See, e.g., In re Saxon Industries, Inc., 43 B.R. 64 (Bankr. S.D. N.Y. 1984); In re Wedtech Corp., 87 B.R. 279, Bankr. L. Rep. (CCH) P 72337 (Bankr. S.D. N.Y. 1988). 11 U.S.C. § 362(a) and its interpretive case law prohibits this inequity. Accordingly, this Court should either: (1) lift the automatic stay as it pertains to Debtor RG Steel Wheeling, Mountain State Carbon, and all other defendants in the Related Federal Court Action, or, in the alternative, (2) lift the automatic stay as it pertains to all parties and all claims, except as to Debtor RG Steel Wheeling, in the Related Federal Court Action, or, in the alternative, (3) extend the automatic stay to cover the State Court Action as well, so that both matters would be stayed for now and then allowed to proceed, simultaneously, at a later point in time.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9024 of the Federal Rules of Bankruptcy Procedure, and Rule 60(b)(6) of the Federal Rules of Civil Procedure.

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

## STATEMENT OF FACTS

4.      On May 31, 2012 (the "Petition Date"), Debtors WP Steel Venture LLC; Metal Centers LLC; RG Steel, LLC; RG Steel Railroad Holding, LLC; RG Steel Sparrows Point, LLC; RG Steel Warren, LLC; RG Steel Wheeling, LLC; and RG Steel Wheeling Steel Group, LLC (collectively, the "Debtors"), filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

5.      By order dated June 1, 2012, the Bankruptcy Court ordered the joint administration of the cases under Case Number 12-11661 (the "Bankruptcy Case").

6.      Mountain State Carbon is listed on the "Organizational Chart of Debtors" filed by the Debtors in the Bankruptcy Case. (See Ex. B.)

7.      Mountain State Carbon has already appeared in this action. On June 8, 2012, it filed its "Motion of Mountain State Carbon, LLC for Relief from the Automatic Stay to Effectuate Set-Off of Debts Owed by [Debtor] RG Steel Wheeling, LLC" (hereafter, the "Mountain State Carbon Bankruptcy Motion"). (See Ex. C attached hereto, Docket No. 154 in this case.)

8.      Debtor RG Steel Wheeling, LLC ("RG Steel Wheeling") is the 50% Owner and Managing Member of Mountain State Carbon.

3

9.      Prior to the Petition Date, Mountain State Carbon had filed a State Court Action against the Movants in the Circuit Court for Brooke County, West Virginia ("State Court") under Civil Action Number 08-C-160 ("State Court Action"). The State Court Action is now set for trial on July 30, 2012.

10.     At issue between Mountain State Carbon (which is 50% owned by Debtor RG Steel Wheeling) and Central West Virginia in the State Court Action are questions of liability, as well as alleged damage claims by Mountain State Carbon, of approximately $31.8 million dollars. (See, e.g., Expert Report of Bryan F. DiLucente, attached as Ex. D hereto.)

11.     The State Court Action was briefly removed to the United States District Court for the Northern District of West Virginia by Movants based on related to jurisdiction. See Mountain State  Carbon, LLC v. Central West Virginia Energy Company, et al., Civil Action No. 5:12-cv-00087-JPB (N.D.W. Va. June 19, 2012).  While the court ultimately remanded the State Court Action under the doctrine of permissive abstention, the court found that "there can be no question that the outcome of [the State Court Case] could conceivably have an effect on RG Steel's bankruptcy state" Id., Docket # 26, p. 7.  On this finding, the Court held that it possessed related to jurisdiction over the State Court Action.

12.     There is also a pending lawsuit involving the exact same contract as the State Court Action between Central West Virginia and Mountain State Carbon in the United States District Court for the Southern District of West Virginia under Civil Action Number 5:09-CV-00467 (the "Related Federal Action"). Specifically, in the Related Federal Action, Central West Virginia has sued Mountain State Carbon, Debtor RG Steel Wheeling (as successor in interest to Severstal Wheeling, Inc.) and two other entities related to Severstal Wheeling, Inc., namely Severstal North America, Inc., and OAO Severstal (collectively, "Severstal"). At issue in the

Related Federal Action are damages claims by Central West Virginia of approximately $31.5 million dollars against Debtor RG Steel Wheeling and the other defendants, including Mountain State Carbon.

13.    In the Mountain State Carbon Bankruptcy Motion, Mountain State Carbon made allegations of "alter ego" management (actually mismanagement) by Debtor RG Steel Wheeling of the joint venture (Mountain State Carbon) similar to those made by Mountain State Carbon and SNA Carbon in the Mountain State Carbon Management Control Litigation.

14.    These "alter ego" allegations include the following: "One feature of the [Mountain State Carbon-RG Steel Wheeling] Agreements is that none of management or operating employees at [Mountain State Carbon] is an employee of [Mountain State Carbon]; rather, [Debtor RG Steel Wheeling employs each person who works at [Mountain State Carbon] and [Mountain State Carbon] reimburses [Debtor RG Steel Wheeling] for the actual costs of employing those persons. Thus, the Coke Facilities [of Mountain State Carbon] are dependent on [Debtor RG Steel Wheeling's] employees to function and operate." (See Ex. C, Docket No. 154 in the Bankruptcy Case, at 3, ¶ 5.) This "alter ego" mismanagement of Mountain State Carbon by Debtor RG Steel Wheeling has allegedly resulted in a debt of over $24 million dollars owed by Debtor RG Steel Wheeling to the joint venture (i.e., Mountain State Carbon). (Id. at 4, ¶ 6.)

15.    Debtor RG Steel Wheeling and Mountain State Carbon are inextricably intertwined: Debtor RG Steel Wheeling owns 50% of Mountain State Carbon; Debtor RG Steel Wheeling holds a right to purchase 50% of the coke production at the Mountain State Carbon facility; Debtor RG Steel Wheeling's obligations under a $100 million note are secured by, among other things, the equity interests held by Debtor RG Steel Wheeling in Mountain State

Carbon; and Debtor RG Steel Wheeling has always provided the manpower and management of Mountain State Carbon.

16.     In further recognition of the intertwinement of Mountain State Carbon and Debtor RG Steel, on July 13, 2012, Mountain State Carbon filed its Motion to Enforce Automatic Stay and for Modification of the Court's Scheduling Order in the Related Federal Court Action. (See Ex. E, Motion of 7/13/2012, Docket No. 205.) In its motion, Mountain State Carbon argued as follows:

> […] Massey's allegations that all of the Defendants are mere "alter egos" of one another and operate with "a unity of purpose," would appear to set forth precisely the type of allegations that the Fourth Circuit had in mind in *Piccinin*. Indeed, this Court has recently indicated that alter ego allegations represent the type of "unusual circumstances" involving an alleged identity between the debtor and non-debtors which would justify an extension of the automatic stay. *See Acadian Energy Resources LLC v. Carpenter*, No. 2:09-00150, 2010 WL 3061421 (S.D.W.V. July 30, 2010). In Acadian Energy, the Court extended the scope of the automatic stay to cover non-debtors in light of the alter ego liability claims made, noting that an alter ego "allegation presents the unique circumstances contemplated explicitly by the panel in *Piccinin*." The Court further reasoned that permitting the continuance of claims against the non-debtors would amount to a "circumvention of the policy behind the automatic stay" and would be "the precise evil sought to be avoided by the panel in Piccinin." *Id.*, 2010 WL 3061421 at *8.

(Id. at 7.) Mountain State Carbon also argued that stay of the action was appropriate as to both Debtor RG Steel Wheeling and the non-debtor defendants therein (including Mountain State Carbon) because "Plaintiffs [Movants] have *not* sought relief from the automatic stay in the Bankruptcy Court to proceed with their claims against RG Steel Wheeling or any of the other Defendants." (Id. at 3 (emphasis in original).)

17.     The following business day, on July 16, 2012, the District Court entered an order extending the automatic stay to the debtor and all non-debtors, thus freezing the entire action.

(See Ex. A, Order of 7/16/2012, Docket No. 206.) In its Order, the District Court accepted

Mountain State Carbon's legal position — namely, that Mountain State Carbon and Debtor RG

Steel Wheeling should be considered one and the same entities for purposes of the automatic stay

analysis. The District Court wrote as follows: "Plaintiffs' theories of liability include, in part,

alter ego and instrumentality doctrines and seek to pierce the corporate veils of all of the

corporate Defendants. In light of the nature of these claims, this case is **STAYED** **as to all**

**Defendants** during the pendency of RG Steel Wheeling, LLC's bankruptcy proceeding." Id. at 2

(emphasis added).

18.    As set forth in greater detail below, Mountain State Carbon should be judicially

estopped from asserting a different legal position with respect to the automatic stay analysis than

it asserted in the Related Federal Court Action, which assertion was successful there as the

District Court accepted it as the basis for its automatic stay ruling.

## ARGUMENT

**A.    THE AUTOMATIC STAY SHOULD BE MODIFIED, OR ALTERNATIVELY, THE AUTOMATIC STAY SHOULD BE EXTENDED TO BOTH THE RELATED FEDERAL COURT ACTION AND THE STATE COURT ACTION**

**1.    To the Extent the Court Determines the Automatic Stay to be Applicable, Relief from the Stay for "Cause" is Appropriate**

19.    In the event the Court concludes that the Related Federal Court Action is subject

to the automatic stay imposed by section 362(a), Movants respectfully request that the Court

enter an Order modifying the stay for "cause" pursuant to section 362(d) of the Bankruptcy code,

which provides, in part:

> (d)    On request of a party in interest and after notice and a hearing
> the court shall grant relief from the stay provided under
> subsection(a) of this section, such as by terminating, annulling,
> modifying or conditioning such stay—

>    (1) for cause, including the lack of adequate protection of an
>    interest in property of such party in interest[.]

20.     Movants submit that "cause" exists to modify the automatic stay. See 11 U.S.C.

§ 362(d)(1).  "Cause" is not defined in the Bankruptcy Code; it must be "determined on a case-

by-case basis."  In re Rexene Products Company, 141 B.R. 574, 576 (Bankr. D. Del 1992) (citing

Int'l Bus. Machines v. Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991)).  In

Rexene Products, this Court stated as follows:

>    The legislative history indicates that cause may be established by a
>    single factor such as "a desire to permit an action to proceed ... in
>    another tribunal," or "lack of any connection with or interference with
>    the pending bankruptcy case." H.R. Rep. No. 95-595, 95th Cong., 1st
>    Sess. 343-344 (1977) U.S. Code Cong. & Admin. News pp. 5787,
>    6300. See also In re Drexel Burnham Lambert Group, Inc., 113 B.R.
>    830, 838 n.8 (Bankr. S.D.N.Y.1990) (citing various findings of
>    § 362(d)(1) "cause" to permit litigation in another forum such as
>    liquidation of a personal injury, arbitration or specialized jurisdiction
>    claim). The legislative history to section 362(d)(l) emphasizes the
>    section's applicability to proceedings in another tribunal. "[I]t will
>    often be more appropriate to permit proceedings to continue in their
>    place of origin, when no great prejudice to me bankruptcy estate would
>    result, in order to leave the parties to their chosen forum and to relieve
>    the bankruptcy court from any duties that may be handled elsewhere."
>    H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977). This theme is
>    echoed in the equitable balancing test most courts apply to determine
>    if cause exists to lift the stay to allow pending litigation to proceed or
>    continue in another forum.

141 B.R. at 576 (citations omitted).

21.     In Rexene Products, the Court held that the following test should be used to

decide whether relief from the stay should be granted:

>    a)      Whether any great prejudice to either the bankruptcy estate or
>    the debtor will result from continuation of the civil suit;

>    b)      whether the hardship to the [non-bankrupt party] by
>    maintenance of the stay considerably outweighs the hardship of the
>    debtor; and

      c)      whether the creditor has a probability of prevailing on the merits.

<u>Rexene Products</u>, 141B.R. at 576 (citations omitted). The movant on a relief from stay motion has the initial burden of establishing a prima facie case. <u>Id.</u> at 77; <u>In re Laguna Associates Limited Partnership</u>, 147 B.R. 709, 714-15 (E.D. Mich. 1992). If the movant does so, then the burden shifts to the debtor, who has the burden of ultimate persuasion. <u>Id.</u>

22.      The <u>Rexene Products</u> test has been repeatedly applied by this Court. <u>See e.g.</u>, <u>In re Continental Airlines, Inc.</u>, 152 B.R. 420, 424 (D. Del. 1993); <u>In re SCO Group, Inc.</u>, 395 B.R. 852, 857 (Bankr. Del. 2007); <u>In re Levitz Furniture Inc.</u>, 267 B.R. 516, 523 (Bankr. Del. 2000); <u>In re Pursuit Athletic Footware, Inc.</u>, 193 B.R. 713, 718 (Bankr. Del. 1996). In each of these cases, relief from the stay was granted.

23.      In the present case, the first prong of the <u>Rexene Products</u> test is met. No great prejudice to RG Steel Wheeling and Mountain State Carbon will result from the lifting of the stay. The Related Federal Court Action would simply proceed on the merits at the same time that the State Court Action proceeds on the merits, and the parties would be entitled to "offset" their damages claims in due course.

24.      The Movants, in the Related Federal Court Action, simply seek to enforce the pre-existing obligations of RG Steel Wheeling and Mountain State Carbon. Moreover, continuation of the Related Federal Court Action will not distract RG Steel Wheeling from its reorganization efforts because RG Steel Wheeling has separate counsel responsible for the Related Federal Court Action. Consequently, the active involvement of counsel involved in RG Steel Wheeling's reorganization efforts would be unnecessary. In light of the foregoing, no great prejudice to RG Steel Wheeling or Mountain State Carbon will result from lifting the stay.

DM3\2242346.1

25.     The second prong of the <u>Rexene Products</u> test is likewise met, as the hardship to the Movants outweighs any hardship to RG Steel Wheeling that might result from modification of the stay. The hardship to the Movants is clear: if the State Court Action proceeds while the Related Federal Court Action is stayed, then the Movants could suffer liability of up to $31.8 million dollars, while the Movants would be prohibited from obtaining a judgment in the Related Federal Court Action that would offset those claims. That circumstance would constitute a severe hardship to Movants.

26.     Also, there is no great hardship to RG Steel Wheeling or Mountain State Carbon in requiring them to participate in their defense. Courts have generally not been persuaded by a debtor's arguments concerning the cost of defense:

> The courts have not, however, ascribed much significance to the fact that the debtor will be required to participate in their defense, especially when the debtor's insurer is obligated to provide counsel. See for example, <u>Matter of Holtkamp</u>, [669 F.2d 505 (7th Cir.1982)]. This position has been sustained despite the fact the debtor was uninsured and was required to assume the costs of its own defense. <u>In re Terry</u>, [12 B.R. 578 (Bankr. E.D. Wis. l981)], <u>In re McGraw</u>, [18 B.R. 140 (Bankr. W.D. Wis. 1982)].

<u>Id.</u> at 567. The Court of Appeals for the Third Circuit concurs with this position:

> The Court of Appeals for the Third Circuit has declared that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation against the Debtor.  <u>In re Davis</u>, 691 F.2d l76, 178 (3d Cir. 1982), quoting <u>Younger v. Harris</u>, 401 U.S. 37, 46 (1971).

<u>Matter of Nicholas, Inc. (Nicholas v. National Labor Relations Board)</u>, 55 B.R. 212, 216 (Bankr. N.J. 1985). Accordingly, the hardship to the Movants in denying the motion to modify the stay considerably outweighs any hardship to RG Steel Wheeling or Mountain State Carbon in continuing Related Federal Court Action.

27.    Finally, the third prong of the <u>Rexene Products</u> test is also met. This Court has previously held that the required showing of probability of success on the merits is "very slight." <u>See</u> <u>Rexene Products</u>, 141B.R.at 578. Thus, the Related Federal Court Action, which involves a breach of contract claim against Debtor RG Steel Wheeling and Mountain State Carbon in the amount of approximately $31.5 million (as against the $31.8 million sought by Mountain State Carbon in the State Court Action), which has been pending since 2009, and which the U. S. Court of Appeals for the Fourth Circuit has held survives a motion to dismiss,[2] clearly presents meritorious issues for judicial determination. <u>See, e.g.</u>, <u>Fernstrom</u>, 938 F.2d at 736 (ordering automatic stay lifted where the underlying action was not frivolous).

28.    Movants respectfully submit that in view of the foregoing, the automatic stay should be modified to permit the Related Federal Court Action to proceed on the merits as against all parties. RG Steel Wheeling's estate will not be prejudiced by continuing the Related Federal Court Action, the hardship to Movants by maintenance of the automatic stay greatly outweighs the hardship to RG Steel Wheeling, and Movants have more than a reasonable chance of prevailing on the merits in an action that has been pending for more than three years and been validated by the Fourth Circuit.

**2.    <u>To the Extent the Court Determines the Federal Court Action Should Continue to be Stayed, then the State Court Action Should be Stayed as Well</u>**

29.    "The purpose of the automatic stay is to protect the debtor. Therefore, when the debtor attempts to use the stay as a sword, rather than a shield, courts typically will grant a lift stay motion." 5 <u>Bus. & Com. Litig. Fed. Cts.</u> § 51:10 (3d ed.); <u>see also</u> 2B <u>Bankr. Service L. Ed.</u>

---

[2] <u>See</u> <u>Central West Virginia Energy Company, Inc. v. Mountain State Carbon, LLC</u>, 636 F.3d 101 (4th Cir. 2011).

§ 19:42 (2012) (commenting that the "[a]utomatic stay is a shield, not a sword," and citing 11

U.S.C. § 362(a) and In re American Lodging, Inc., 397 B.R. 906 (Bankr. N.D. Ind. 2008)).

30.     The cases of In re Saxon Industries, Inc., 43 B.R. 64 (Bankr. S.D. N.Y. 1984), and

In re Wedtech Corp., 87 B.R. 279, Bankr. L. Rep. (CCH) P 72337 (Bankr. S.D. N.Y. 1988), are

particularly instructive on this point. In each case, the debtor sued its accounting firm for fraud

and securities law violations. In addition to those actions, the accounting firms were subject to

third-party class actions alleging securities law violations. The accounting firms sought to lift the

automatic stay to assert counterclaims against the debtor and also to implead the debtor as a

third-party defendant in the class actions. The court in each case lifted the stay to allow the

accounting firms to assert counterclaims against the debtor. The court in each case relied on

Second Circuit precedent holding that it would be inequitable to allow the debtor to use the

automatic stay to prevent the defendant from asserting counterclaims in an action commenced by

the debtor. As the Saxon court stated:

> [W]here, as here, a debtor brings a lawsuit and then invokes the
> automatic stay to prevent the defendant from asserting counterclaims,
> the Second Circuit has stated that "the situation warrants a very
> thoughtful scrutiny." Bohack Corp. v. Borden, Inc., 599 F.2d 1160,
> 1168 (2d Cir. 1979). "The purpose of the (automatic stay) is the
> protection of the debtor, but when the debtor is in the position of
> assailant rather than victim, the potential for abuse of that purpose is
> manifest." 599 F.2d at 1168. In light of the litigation initiated by [the
> debtor], it would clearly be inequitable to allow [the debtor] to use §
> 362 to prevent [the defendant] from pressing counterclaims.

Saxon Industries, Inc., 43 B.R. at 67.

31.     In addition, the courts lifted the automatic stay to allow the defendant accounting

firms to implead the debtor as a third-party defendant in the class actions in order to avoid

inconsistent decisions and promote judicial efficiency. For example, in Saxon, the court held:

"This court also modifies the stay so as to permit [the defendant] to implead [the debtor] as a

third-party defendant in the class action … and in the 18 separate lawsuits pending in the United

States District Court for the Southern District of New York. The claims of all the plaintiffs

closely parallel those made in [the class action], and the actions are in the same court and before

the same judge. Therefore, it will not greatly prejudice [the debtor] to allow these actions to

proceed in their original forum. Further, so as to avoid inconsistent results, this court modifies

the stay to permit [the defendant] to implead [the debtor] in the 17 pending state court actions."

43 B.R. at 67. Thus, defendants sued by debtors should know that when a debtor chooses to

commence litigation, it can be subject not just to counterclaims in the litigation it commenced,

but also to being impleaded in a class action that arises from the same underlying facts as those

underlying the debtor's litigation. Saxon, 43 B.R. at 67; In re Wedtech Corp., 87 B.R. 279,

Bankr. L. Rep. (CCH) P 72337 (Bankr. S.D. N.Y. 1988).

32.     This principle is especially recognized in the context of "offset" cases, as are

present here. See, e.g., In re United Air Lines, Inc., 438 F.3d 720, 734–35, 46 Bankr. Ct. Dec.

(CRR) 2, Bankr. L. Rep. (CCH) P 80495 (7th Cir. 2006), cert. denied, 127 S. Ct. 350, 166 L. Ed.

2d 44 (U.S. 2006). In that case, when United Airlines filed its bankruptcy petition, it had rights

under bond financing agreements for construction of a Los Angeles International Airport cargo

terminal. However, when United submitted a post-petition request for reimbursement on one of

its bond financings, the lender was entitled to offset its claim under the defaulted loan against the

draw request. Consequently, the bankruptcy court did not abuse its discretion in granting the

lender relief from the stay to permit the offset. Id.

33.     Here, allowing Mountain State Carbon, which is 50% owned by Debtor RG Steel

Wheeling, to proceed on its claim against Movants for $31.8 million, while preventing the

Movants from pursuing their approximately $31.5 million claim (which would serve as an offset)

13

against Mountain State Carbon and Debtor RG Steel Wheeling, would clearly involve the use of the automatic stay as both a "sword" and a "shield." See, e.g., In re Saxon Industries, Inc., 43 B.R. 64 (Bankr. S.D. N.Y. 1984); In re Wedtech Corp., 87 B.R. 279, Bankr. L. Rep. (CCH) P 72337 (Bankr. S.D. N.Y. 1988). That is an inequitable result that 11 U.S.C. § 362(a) — and its interpretive case law — prohibits.

34.    Moreover, judicial estoppel mandates that Mountain State Carbon and Debtor RG Steel not be allowed to use the automatic stay as both sword and shield.  The remedy of judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the specific harm caused by the inconsistent representation. See, e.g., Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 777-78 (3d Cir. 2001).

35.    Scarano v. Central R. Co. of N.J., 203 F.2d 510 (3d Cir. 1953), was the first Third Circuit case to employ the doctrine.  There, the court emphasized the plaintiff's inconsistent positions, his success after asserting his prior position, and the effect of playing fast and loose with the court as the bases for estopping the plaintiff from changing his position.

36.    As mentioned above, on July 13, 2012, Mountain State Carbon filed its Motion to Enforce Automatic Stay and for Modification of the Court's Scheduling Order in the Related Federal Court Action. (See Ex. E, Motion of 7/13/2012, Docket No. 205.) In its motion, Mountain State Carbon argued that Debtor RG Steel Wheeling and Mountain State Carbon should be treated as one and the same for purposes of the automatic stay analysis. As Mountain State Carbon stated, "Massey's allegations that all of the Defendants are mere 'alter egos' of one

another and operate with "a unity of purpose," would appear to set forth precisely the type of allegations that the Fourth Circuit had in mind in *Piccinin*." (Id. at 7.)

37. The following business day, on July 16, 2012, the District Court entered an order extending the automatic stay to the debtor and all non-debtors, thus freezing the entire action. (See Ex. A, Order of 7/16/2012, Docket No. 206.) In its Order, the District Court accepted Mountain State Carbon's legal position — namely, that Mountain State Carbon and Debtor RG Steel Wheeling should be considered one and the same entities for purposes of the automatic stay analysis. (See id. at 2.)

38. Judicial estoppel is applicable against Mountain State Carbon and Debtor RG Steel here because: (1) Mountain State Carbon and Debtor RG Steel are seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the prior inconsistent position was accepted by the court; and (3) the party against whom judicial estoppel is to be applied would otherwise be misleading the court (by arguing now that Mountain State Carbon and Debtor RG Steel Wheeling are <u>not</u> one and the same for purposes of the automatic stay analysis) to gain unfair advantage. <u>Tenneco Chems., Inc. v. William T. Burnett & Co.</u>, 691 F.2d 658, 665 (4th Cir. 1982). That is precisely the scenario being played out at the current instant, and that is why Mountain State Carbon and Debtor RG Steel Wheeling are judicially estopped from arguing that the automatic stay should either be modified in the Related Federal Court Action or, in the alternative, imposed upon the State Court Action.

## <u>CONCLUSION</u>

WHEREFORE, Movants respectfully request that the Court enter an Order in the form attached modifying the automatic stay to allow the Related Federal Court Action to proceed on the merits, or in the alternative, to stay both the Related Federal Court Action and the State

Court Action until such time as this Court determines that both cases should proceed on the

merits, and for such other and further relief as the Court deems just and appropriate.

Dated: July 17, 2012
        Wilmington Delaware

                     */s/ Michael R. Lastowski*
                     Michael R. Lastowski (DE 3892)
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
Telephone:    (302) 657-4900
Facsimile:     (302) 657-4901
Email: mlastowski@duanemorris.com

-and-

Paul D. Moore, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, Massachusetts 02110
Telephone:    (857) 488-4200
Facsimile:     (857) 488-4201
Email: pdmoore@duanemorris.com

*Attorneys for Central West Virginia Company, Massey Energy Company (n/k/a Alpha Appalachia Holdings, Inc.), and Massey Coal Sales Company, Inc. (n/k/a Appalachia Coal Sales Company, Inc.)*

DM3\2242346.1