## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WP STEEL VENTURE, LLC, *et al.*,[1] | Case No. 12-11661 (KJC) |
| Debtors. | Jointly Administered |
| | **Docket Ref. No. 621, 647, 659**<br>**Hearing Date: July 25, 2012 at 2:00 p.m. (ET)** |

### PRELIMINARY OBJECTION OF MOUNTAIN STATE CARBON, LLC TO THE MOTION OF CENTRAL WEST VIRGINIA ENERGY COMPANY, MASSEY ENERGY COMPANY AND MASSEY COAL SALES COMPANY, INC. FOR AN ORDER GRANTING MODIFICATION TO THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, FOR AN ORDER EXTENDING THE AUTOMATIC STAY TO THE PENDING STATE COURT ACTION

Mountain State Carbon, LLC ("**MSC**"), by and through its undersigned counsel, hereby submits this preliminary objection to the Motion of Central West Virginia Energy Company ("**Central West Virginia**"), Massey Energy Company (n/k/a Alpha Appalachian Holdings, Inc., "**Massey Energy**") and Massey Coal Sales Company, Inc. (n/k/a Appalachian Coal Sales Company, Inc., "**Massey Coal Sales**")[2] for an Order Granting Modification to the Automatic Stay, or in the Alternative, for an Order Extending the Automatic Stay to the Pending State Court Action (the "**Original Motion**") [D.I. 621] and the Supplement to the Motion [D.I. 659] (the "**Supplement**," and together with the Original Motion, the "**Motion**"). In support of this preliminary objection, MSC respectfully submits as follows:

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: (i) WP Steel Venture LLC (7095); (ii) Metal Centers LLC; (iii) RG Steel, LLC (1806); (iv) RG Steel Railroad Holding, LLC (4154); (v) RG Steel Sparrows Point, LLC (3633); (vi) RG Steel Warren, LLC (0253); (vii) RG Steel Wheeling, LLC (3273); and (viii) RG Steel Wheeling Steel Group, LLC (9927). The Debtors' executive headquarters' address is 1430 Sparrows Point Boulevard, Sparrows Point, MD 21219.

[2] Central West Virginia, Massey Energy and Massey Coal Sales are referred to herein as the "**Massey Defendants**." A.T. Massey Coal Company, Inc. (n/k/a Appalachian Holding Company, Inc., "**A.T. Massey**"), who is not a movant with respect to the Motion but is a plaintiff in the Federal Action (defined below), and Central West Virginia are referred to herein as the "**Massey Plaintiffs**," and the Massey Plaintiffs and Massey Defendants are collectively referred to herein as the "**Massey Parties**."

## PRELIMINARY STATEMENT[3]

The Motion is the Massey Parties' third attempt to derail a trial that has been scheduled for over a year.  Their motivation is obvious – they face a liability of at least $31.5 million for breaches of a Coal Supply Agreement with MSC – a breach that is substantively the same as a prior breach of the same contract that resulted in a previous verdict against certain of the Massey Parties of $219 million just a few years ago.  The Bankruptcy Court should not allow the Massey Parties to frustrate and delay MSC's right to proceed to trial which:  (i) involves no claims against any Debtor nor includes any Debtor as a party; (ii) will result in no claim or judgment against a Debtor or for which a Debtor will be liable; and (ii) invokes no substantive rights arising under the Bankruptcy Code or in these chapter 11 cases.

The Massey Parties request, without citation to any applicable authority, that the Bankruptcy Court extend the protections of the automatic stay – an injunction that exists solely to protect the debtors and their estates from depletion and to provide debtors with an opportunity for a successful reorganization – to advance solely the Massey Parties' own interests by staying the State Court Action.  This request is contrary to well-established precedent that the automatic stay should only be extended in unusual circumstances, where a debtor's assets, estate or reorganization prospects would be imperiled absent an extension.  The State Court Action presents no such threat to the Debtors in these cases.  The sole authority upon which the Massey Parties rely in seeking this relief are cases in which courts found it appropriate to lift the automatic stay where a debtor has asserted counterclaims or where offsetting claims and debts existed with respect to the movant and the debtor.  Since no Debtor is a party to the State Court Action these cases are wholly inapposite to the relief requested.  The automatic stay cannot be

---

[3]    Capitalized terms used in this Preliminary Statement, but not already defined, have the meanings ascribed to them below.

extended to MSC and the State Court Action, and if the Massey Parties want an injunction against MSC, they have failed to meet the standards to obtain one.

Further, while the Massey Parties assert that the failure to stay the State Court Action would impair their setoff rights, the Massey Parties fail to acknowledge that (1) they have not asserted an affirmative defense of setoff in the State Court Action, and (2) the Bankruptcy Code has no impact on the setoff of potential claims between MSC and the Massey Parties, which are the only mutual claims that the Massey Parties might hold.  Simply put, there is no setoff right which this Court must (or could) provide stay relief for the Massey Parties to effectuate.

The sole relief the Bankruptcy Court can grant is to lift the automatic stay with respect to the Massey Parties' ability to proceed with claims against Wheeling in the Federal Action.  The Massey Parties have not demonstrated that cause exists to do so.

What the Massey Parties truly seek is to delay the imminent trial in the State Court Action and to obtain relief from the Discretionary Stay Order -- none of which relief is available in this Court.  The Bankruptcy Court should not interfere with the Southern District's or the State Court's exercise of jurisdiction over the matters before it.

Moreover, any issues with the timing of the trials between the State Court Action and the Federal Action, is an issue of the Massey Parties' own making.  As counsel to the Massey Parties admitted during the scheduling conference before this Court, their decision to dismiss their State Court counterclaim and file the separate Federal Action was a strategic decision on their part.  There was never any expectation that the cases would be tried simultaneously.  Thus, there is no harm that can result to the Massey Parties that was not already contemplated by them.  This merely underscores the true nature of the Motion – to avoid a long

01:12306155.7

scheduled trial at all costs for the Massey Parties' own benefit.  The Court should not countenance these tactics.

## BACKGROUND

### A.    The Parties and the Coal Supply Agreement

1.    MSC is a Delaware limited liability company that owns and operates the Follansbee Coke Plant located in Follansbee, West Virginia.  The Follansbee Plant is the country's third largest producer of metallurgical coke, a critical ingredient used in production of steel.

2.    MSC was originally formed in 2005 as a joint venture between SNA Carbon LLC ("**SNA Carbon**") and Wheeling Pittsburgh Steel Corporation ("**Wheeling-Pitt**") to own and operate the Follansbee Plant.  Each member then had the right to take 50% of the coke produced by the Follansbee Plant.  Wheeling-Pitt's rights in that joint venture were subsequently acquired by Severstal Wheeling, a subsidiary of the Severstal affiliated steel-making companies based in the United States.  Severstal Wheeling is now known as RG Steel Wheeling, LLC and is a debtor in these chapter 11 cases.

3.    Metallurgical coal is a primary input used in the production of metallurgical coke.  As such, MSC was a party to a long-term Coal Supply Agreement (the "**Coal Supply Agreement**") with Central West Virginia under which MSC agreed to purchase 100% of its high-vol metallurgical coal for coking operations from Central West Virginia, and Central West Virginia agreed to supply all the metallurgical coal that MSC requires.  *See* Verified Complaint, ¶¶5-6.[4]  The Coal Supply Agreement has certain provisions (including the

---

[4]    *See* Complaint, *Mountain State Carbon, LLC v. Central West Virginia Energy Company*, Case No. 08-C-160 (Cir. Ct. W. Va.) (the "**State Court Docket**"), [D.I. 3] (the "**Verified Complaint**"), a copy of which is attached as Exhibit 1 to the Declaration of Ryan M. Bartley (the "**Bartley Declaration**"), filed substantially contemporaneous herewith

price paid for coal, estimates, and nomination procedures), which are applicable during a designated contract year (each a "**Contract Year**"), which runs from October 31st of one calendar year until October 31st of the next calendar year.  The actions of Central West Virginia, MSC and certain related parties with respect to the Coal Supply Agreement – including two separate litigations pending in separate state and federal courts in West Virginia – underlie the relief requested in the Motion.

> **B.**     **The Initiation of the State Court Action Against the Massey Defendants**

4.     On August 27, 2008, MSC filed a breach of contract action seeking monetary damages and equitable relief (the "**State Court Action**") against Central West Virginia in the Circuit Court of Brooke County, West Virginia (the "**State Court**") for Central West Virginia's breaches of the Coal Supply Agreement during the 2008 Contract Year.  *See* Verified Complaint, ¶¶ 28-42.  Subsequently, the State Court trial judge granted MSC leave to pursue tort claims against Central West Virginia's corporate affiliates, Massey Energy and Massey Coal Sales, for their role in interfering with MSC's business relations and role in directing Central West Virginia's breach of the Coal Supply Agreement.  *See* Order dated July 10, 2009, State Court Docket [D.I.130].

5.     Specifically, when coal prices rose dramatically in 2008, Central West Virginia breached its obligations to supply metallurgical coal to the Follansbee Plant, and the other Massey Defendants tortiously interfered with that long-term supply contract so that they would have more coal to sell into the export market at higher prices than the price MSC was obligated to pay.  *See* Third Am. Complaint, ¶¶55-73.[5]

---

[5]     *See* Third Amended Complaint, State Court Docket [D.I. 606]  ("**Third Am. Complaint**"), a copy of which is attached as Exhibit 2 to the Bartley Declaration

6.      This pattern of behavior was not new for the Massey Defendants. Approximately one year before MSC commenced the State Court Action, a Brooke County jury had rendered a verdict totaling approximately $219 million against Massey Energy and Central West Virginia for substantially similar conduct during the 2005 Contract Year.[6]

7.      The Massey Defendants have denied any liability and have asserted various legal defenses to MSC's claims.  Although Central West Virginia originally asserted a counterclaim in the State Court Action, *see* Original State Court Answer, Part III, pp. 11-33,[7] it sought and obtained leave to voluntarily dismiss that counterclaim. *See* Voluntary Dismissal Motion and Order dated July 27, 2010.[8]   There presently are no counterclaims or cross-claims asserted by any of the Massey Defendants in the State Court Action.  *See* Third Am. State Court Answer. [9]  The Massey Defendants' most recent answer filed in the State Court Action does not assert any affirmative defense for setoff.  *See id.*

**C.      The Federal Action and the Parties to the Federal Action**

8.      Beginning around August or September of 2008, the world financial crisis rocked the global markets, causing a precipitous decline in the demand for steel and steel-related products.  As a result, in October 2008, MSC advised Central West Virginia of its reduced requirements for metallurgical coal under the Coal Supply Agreement for the upcoming 2009 Contract Year, which began on November 1, 2008.

---

[6]     *See* Associated Press, *Massey ordered to pay nearly $220M*, USATODAY.com, July 3, 2007, http://www.usatoday.com/money/economy/2007-07-03-1102780475_x htm (accessed July 24, 2012).

[7]     *See* Central West Virginia's Answer, Affirmative Defenses and Counterclaim, State Court Docket [D.I. 30] (the "**Original State Court Answer**"), a copy of which is attached as Exhibit 3 to the Bartley Declaration.

[8]     *See* Central West Virginia's Motion for Voluntary Dismissal of Counterclaim, State Court Docket [D.I. 198] ("**Voluntary Dismissal Motion**"), a copy of which is attached as Exhibit 4 to the Bartley Declaration and Order dated July 27, 2010, State Court Docket [D.I. 199].

[9]     *See* Central West Virginia's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint, State Court Docket [D.I. 614] (the "**Third Am. State Court Answer**"), a copy of which is attached as Exhibit 5 to the Bartley Declaration.

9.      Central West Virginia responded that the notice provided by MSC under the Coal Supply Agreement was ineffective, and on April 29, 2009, Central West Virginia filed an action (the "**Federal Action**") in the United States District Court for the Southern District of West Virginia (the "**Southern District**").  *See* Original Federal Complaint.[10]  The Federal Action initially named MSC and Severstal Wheeling Inc. (n/k/a RG Steel Wheeling, LLC or "**Wheeling**", a debtor in this action), seeking declaratory relief on the question of whether the annual estimate and quarterly nominations provided under the Coal Supply Agreement for the 2009 Contract Year are binding, or whether the prior year's figures should be used.  *See id.*

10.      Less than two weeks later, on May 11, 2009, Central West Virginia amended its complaint to add as plaintiff A.T. Massey and to add as new defendants entities now known as Severstal Dearborn, Inc. and OAO Severstal as alleged alter egos of MSC and on claims that these parties tortuously interfered with the contractual relations between MSC and the Massey Plaintiffs and induced MSC to breach its contracts.[11]  A.T. Massey is not a party in the State Court Action.  Wheeling, OAO Severstal or Severstal Dearborn are also likewise only parties in the Federal Action.

11.      Contrary to the statements made by the Massey Parties in the Motion, *see* Original Motion at p. 1, the State Court Action and Federal Action are not actions between the exact same parties.  Notably, none of Wheeling, OAO Severstal or Severstal Dearborn are parties to the State Court Action.  Further, while the causes of action asserted in the State Court Action and Federal Action each related to the Coal Supply Agreement, they relate to actions taken with respect to separate contract years, 2008 in the State Court Action and 2009 in the Federal Action.

---

[10]      *See* Complaint, *Central West Virginia Energy Company, Inc. v. Mountain State Carbon*, Case No. 5:09-cv-00467 (S.D.W. Va.) (the "**Southern District Docket**"), [D.I. 1] (the "**Original Federal Complaint**").

[11]      *See id.* [D.I. 3].

12.     The Defendants moved to dismiss the federal claims in July 2009 based primarily upon lack of federal subject matter jurisdiction due to lack of diversity.[12]

**D.     The Massey Defendants Block MSC's Efforts to Consolidate All of the Contract Claims in the State Court Action**

13.     In response to the claims in the Southern District, MSC moved for leave in the State Court on June 9, 2009 to file a Second Amended Complaint to include a new count ("**Count IV**") in the State Court Action to address Central West Virginia's contractual declaratory relief claims regarding the 2009 Contract Year within context of State Court Action. *See* Motion for Leave.[13]

14.     On August 6, 2009, the Massey Defendants moved to stay MSC's ability to address those claims in the Brooke County Action based on first-filed abstention grounds, and on the assertion that the two actions were unrelated.  In its request for relief, Central West Virginia plainly states:

> WHEREAS, defendant [Central West Virginia] requests that this Court reject [MSC's] attempt to circumvent the federal court action and shoe-horn a new and unrelated claim already before [the Southern District] into [the State Court Action] with regard to [Count IV] pending resolution of the matter before the [Southern District].

Motion to Stay Count IV, at p. 5 (emphasis added).[14]  Central West Virginia successfully obtained a stay of Count IV in the State Court Action.  In subsequent Answers filed in the State Court, the Massey Defendants have persistently reiterated their position that Count IV should not be heard in the State Court Action:

---

[12]     *See id.* [D.I. 29, 30, 33-38].

[13]     *See* Motion for Leave of Court to file Plaintiff's Second Amended Complaint, State Court Docket [D.I. 124] (the "**Motion for Leave**"), a copy of which is attached as Exhibit 6 to the Bartley Declaration, and Second Amended Complaint ("**Second Am. Complaint**"), a copy of which is annexed to the Motion for Leave.

[14]     *See* Central West Virginia's Motion to Stay Count IV of Plaintiff's Second Amended Complaint, State Court Docket [D.I. 137] (the "**Motion to Stay Count IV**"), a copy of which is attached as Exhibit 7 to the Bartley Declaration.

> . . . [Central West Virginia] responds that on April 29, 2009, it
> filed [the Federal Action].  The Federal Action was filed prior to
> [MSC's] assertion of Count IV in the Third Amended Complaint
> and concerns the same controversy and claim as Count IV.  The
> Circuit Court of Brooke County previously stayed this claim and
> there has been no event or occurrence which should affect the
> stay.  Accordingly, [Central West Virginia] will file a Motion to Stay
> Count IV based on the pending Federal Action and the Court's
> prior order. . . .

*See* Third Am. State Court Answer, at ¶ 74.

15.     With MSC's efforts at consolidation in the State Court Action having been

thwarted, the lawsuits diverged in terms of their progress.

16.     Due to the pendency of the motions seeking to dismiss the Federal Action

in its entirety, the Massey Plaintiffs in the Federal Action agreed to refrain from engaging in

discovery while those motions were decided.  These concerns turned out to be well-founded, as

the District Court granted the motions to dismiss on March 31, 2010, and dismissed the Federal

Action in its entirety.  Massey appealed that decision to the Fourth Circuit Court of Appeals.

17.     While the Federal Action was on hold, the State Court Action proceeded

forward.  The State Court trial judge on February 18, 2010 set an initial trial date of March 8,

2011 and ordered the parties to mediate.  In November 2010, a mediation was held before the

Honorable Arthur Ziegler (Ret.) with respect to the matters asserted in the State Court Action.

That mediation was unsuccessful, discovery was completed, and the State Court Action

proceeded toward a revised June 2011 trial date.

18.     On April 27, 2011, without any action by the parties, the State Court *sua*

*sponte* entered an Order Setting Trial Date postponing the case for one year, and setting a new

01:12306155.7

July 30, 2012 trial date, with the entire month of August 2012 set aside to try the case.  *See*

Brooke County Scheduling Order.[15]

19.     The parties to the State Court Action have adhered to the Brooke County

Scheduling Order (as amended by agreement or the court), and are ready to proceed to trial, and

the State Court is ready to hold its trial in the State Court Action.

### E.     The Federal Action Returns

20.     Approximately two weeks before the revised Brooke County Scheduling

Order was issued, on April 13, 2011, the Fourth Circuit held that Federal Action could proceed,

finding that complete diversity jurisdiction existed, based its determination that the principal

place of business of Severstal Wheeling was in Dearborn, Michigan, and not in West Virginia.[16]

21.     Following remand from the Fourth Circuit, the Federal Action finally

began to proceed.  On August 5, 2011, the Massey Plaintiffs filed a new and amended version of

their complaint.[17]   On August 23, 2011, the Southern District issued its scheduling order (the

"**Federal Action Scheduling Order**")[18] in the Federal Action, setting a trial in the Federal

Action for January 2013.  A few days later, MSC answered and the other defendants in the

Federal Action filed motions to dismiss the Federal Actions under Fed. R. Civ. P. 12(b)(6), with

OAO Severstal additionally alleging lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(1).

Those motions were eventually denied on March 30, 2012, with Southern District leaving

unresolved OAO Severstal's jurisdictional status.

---

[15]   *See* Order Setting Trial Date, State Court Docket [D.I. 651] (the "**Brooke County Scheduling Order**"), a copy of which is attached as Exhibit 8 to the Bartley Declaration.

[16]   *See Central West Virginia Energy Company, Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011).

[17]   *See* Third Amended Complaint, Southern District Docket, [D.I. 97] (the "**Third Am. Complaint**").

[18]   *See id.* [D.I. 102]

22.     The progress of discovery in the Southern District was initially slow, with the exchange of written discovery punctuated by various discovery disputes and motions to compel filed in January and February 2012, and which still remain pending.

23.     Only in May 2012 did meaningful progress take place with respect to discovery in the Federal Action.  On May 11, 2012, an Electronically Stored Information (ESI) Protocol was agreed upon and was entered by the Court, and on May 15, 2012, the Massey Plaintiffs issued their first notices of deposition under Fed. R. Civ. P. 30(b)(6), which were scheduled to first be held on June 8, 2012.

**F.      The RG Steel Bankruptcy and the Massey Parties' Efforts to Use the Bankruptcy to Delay Trial in the State Court Action**

24.     On May 31, 2012 (the "**Petition Date**"), Wheeling and its affiliates, the debtors and debtors-in-possession in these chapter 11 cases (the "**Debtors**"), filed for voluntary chapter 11 protection in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  On June 1, 2012, the Debtors filed a Suggestion of Bankruptcy in the Federal Action.

25.     In response, the Massey Plaintiffs cancelled the depositions they had previously scheduled in the Federal Action to occur beginning the following week.

26.     On June 13, 2012, the Massey Defendants filed (i) a notice of removal of the State Court Action to the United States District Court for the Northern District of West Virginia (the "**Northern District**") pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) on the purported grounds of "related to" jurisdiction[19] and (ii) a motion to transfer venue of the State Court Action to the Bankruptcy Court (the "**Transfer Motion**").[20]  Two days later, MSC filed its

---

[19]     *See Mountain State Carbon, LLC v. Central West Virginia Energy Company, Inc.*, Case No. 5:12-cv-00087-JPB (N.D.W. Va.) (the "**Northern District Docket**") [D.I. 1].

[20]     *See id.* [D.I. 7]

motion to remand the State Court Action to State Court and brief in support thereof (together, the

"**Remand Motion**").[21]    The Massey Defendants filed a motion to expedite briefing, and from

June 13, 2012 to June 25, 2012, the Massey Defendants and MSC filed, respectively, the

Transfer Motion and Remand Motion, and their respective objections thereto and replies in

support thereof.[22]

27.    On June 26, 2012, the Northern District issued its opinion granting the

Remand Motion and denying as moot all other motions filed in the Northern District since the

removal of the State Court Action. *See Mountain State Carbon, LLC v. Central West Virginia*

*Energy Company*, C.A. No. 5:12-CV-87, 2012 WL 2415547 (N.D.W. Va. Jun. 26, 2012).  In its

opinion, the Northern District found that:  (i) the "broad" test for "related to" jurisdiction had

been met, *id* at *3-4; (ii) abstention was not mandatory under 28 U.S.C. § 1134(c)(2) because

MSC could have brought the action under federal diversity jurisdiction, *id.* at *5; but (iii) the

State Court Action should be remanded to the State Court for proceedings on grounds of both

permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable abstention under 28 U.S.C.

§ 1452(b).  *Id.*  In weighing the twelve factors applied to requests for permissive and equitable

abstention, the Northern District found:

> Based on the above factors, this Court finds that remand is
> appropriate. Though a number of factors weigh in favor of
> maintaining federal jurisdiction, the case for remand is
> significantly more compelling. First, this action exclusively

---

[21]    *See id.* [D.I. 12, 13]

[22]    During this process, MSC advised the State Court trial judge in a written letter that it believed the removal of the State Court Action was improvident, that it intended to seek expedited consideration of a remand request, and that the State Court temporarily refrain from taking any actions which would vacate the scheduled trial date in light of these efforts.  In response, the State Court trial judge advised trial counsel for the parties in an e-mail communication that the trial date was not being changed at that time, that the removal proceedings would not represent an acceptable excuse for being unprepared for trial in the State Court Action, and that any relief from his directive must come from the U.S. District Court.  *See* E-mail from the Honorable Ronald E. Wilson, May 15, 2012 at 8:57 a.m., a copy of which is attached to the Bartley Declaration as Exhibit 9.

involves state law claims and non-debtor parties. Second, this action bears only a remote connection to the bankruptcy case of RG Steel. Third, and most importantly, the economical use of judicial resources will be undeniably better served by remand to a state court that is equipped with nearly four years of experience not only with the ins and outs of the parties' contentions but also with the evidence discovered and anticipated to be presented at trial in support of those contentions, rather than remaining with a district court or being transferred to a bankruptcy court that will be asked to start back at day one. Accordingly, this Court concludes that this matter should be remanded pursuant to §§ 1334(c)(1) and 1452(b).

*Id.* (emphasis added).

### G.    The Southern District's Entry of Its Discretionary Stay

28.    As a result of a number of factors, the defendants in the Federal Action filed their request for (i) clarification regarding the automatic stay, including extending the stay to MSC, Severstal Dearborn, Inc. and OAO Severstal (collectively, the "**Non-Debtor Defendants**"), and (ii) modification of the Federal Action Scheduling Order (the "**Discretionary Stay Motion**"), because of the significant delays in discovery and the pending trial date in the State Court Action.  The defendants in the Federal Action submitted a number of reasons for the relief requested in the Discretionary Stay Motion:

- The Massey Plaintiffs' cessation of discovery immediately after Wheeling filed its chapter 11 case.

- The arguments Central West Virginia made to the Northern District that "[The Massey Defendants] have claims against MSC and Debtor RG Steel Wheeling in the [Federal Action] that are presently stayed and cannot proceed until the Delaware Bankruptcy Court allows them to proceed."[23]  *See* Opposition to Remand.[24]

---

[23]    To be clear, MSC has never argued that it believes its claims asserted against the Massey Defendants imply in any manner an "alter ego" relationship.  Instead, the defendants in the Federal Action characterized the positions taken by the Massey Plaintiffs to halt proceedings in the Federal Action as being based on "the inter-related nature of [the Massey Plaintiffs'] alter ego and other claims against the Defendants in the [Federal Action]."  Discretionary Stay Motion, at p. 3; *see also* Discretionary Stay Motion, at p. 4 ("In [Massey Defendants'] supporting papers filed in the Northern District, they made repeated references to the alleged "alter ego" relationship between Mountain State, RG Steel Wheeling and their corporate affiliates, and

- The Massey Plaintiffs' failure to seek affirmative relief from the Bankruptcy Court to proceed against Wheeling in the approximately seven (7) weeks between the Petition Date and the date of filing the Discretionary Stay Motion.25

- The threat to MSC's trial preparation efforts in the State Court Action if it were required to proceed on a dual-track trial and discovery schedule in the State Court Action and Federal Action, respectively.

- The fact that discovery in the Federal Action, as directed both at MSC (because MSC's employees are, effectively, leased from Wheeling) and Wheeling, would unduly interfere with Wheeling's bankruptcy case.

After considering the arguments presented in the Discretionary Stay Motion, the Southern District issued an order (the "**Discretionary Stay Order**") holding "In light of [the Massey Plaintiff's] theories of liability against all Defendants, however, the Court FINDS that this case presents the type of unusual circumstances identified [in] *A.H. Robbins v. Piccinin*, 788 F.2d 994, 1000 (4th Cir. 1986). Order, dated July 16, 2012, *Central West Virginia Energy Company v. Mountain State Carbon, LLC*, C.A. No. 5:09-cv-00467 (S.D.W. Va. Jul. 16, 2012) (citing *A.H. Robbins v. Piccinin*, 788 F.2d 994, 1000 (4th Cir. 1986) ("11 U.S.C. § 362(a)(1) is generally only available to the debtor . . . absent the 'unusual situation' where there is such identity between the debtor and co-defendants or third-party defendants that the debtor may be said to be the real party defendant and that a judgment against the co-defendant or third-party defendant will in effect be a judgment of finding against the debtor.").

---

emphasized the importance of their alleged alter ego status as purportedly making it difficult to separate the underlying state law proceedings from the pending RG Steel Bankruptcy.")

24  *See* Central West Virginia's Memorandum of Law in Opposition to Plaintiff's "Emergency" Motion For Remand, Northern District Docket [D.I. 21] ("**Opposition to Remand**"), at pp. 16-23

25  The Massey Plaintiffs filed a request with the Southern District to have the Federal Action transferred to the Bankruptcy Court on June 15, 2012, but then withdrew their request to transfer the Federal Action to the Bankruptcy Court just hours after the Remand Motion was granted by the Northern District.

H.      **The Motion and the Relief the Massey Parties Seek from the Bankruptcy Court**

29.     On July 18, 2012, less than two weeks before the date selected for jury selection and opening arguments in the State Court Action and almost seven weeks after the Petition Date, the Massey Defendants filed the Motion seeking alternative relief: either (i) to proceed in the Southern District against all defendants in the Federal Action or solely against the Non-Debtor Defendants; or (ii) seeking that the automatic stay be extended to preclude MSC from moving forward with the State Court Action.  A.T. Massey was not a movant with respect to the Motion.

30.     The Massey Defendants filed a companion motion requesting that the Court schedule an immediate hearing on the Motion.  On July 19, 2012, this Court held a telephonic hearing, and after hearing arguments from counsel, it scheduled a preliminary, non-evidentiary hearing on the Motion to be held on July 25, 2012 at 2:00 p.m.

31.     For the reasons set forth below, MSC respectfully submits that the relief requested against MSC as to the State Court Action should be summarily denied.  MSC also respectfully submits that relief from the automatic stay should be denied until such time as the re-commencement of the Federal Action will not have an adverse impact on (i) the parties' preparation and conduct of the trial in the State Court Action, and (ii) Wheeling's, and the other Debtors', administration of their bankruptcy cases.

## ARGUMENT

I.      **The Request is an Attack on the Discretionary Stay Order**

32.     At bottom, the Massey Parties disagree with the Southern District's ruling that the automatic stay should be extended in the Federal Action to the Non-Debtor Defendants. The trial court in which an action is situated has the authority to determine the scope and

applicability of the automatic stay as it relates to actions pending before it.  *See In re The Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 215-216 (Bankr. D. Del. 1995); *see also Holland v. High Power Energy*, 248 B.R. 53, 56-57 (S.D. W.Va. 2000).  Here, the Southern District, relying on *A.H. Robbin v. Piccinin*, exercised its discretion to extend the automatic stay to the Non-Debtor Defendants.

33.     The Massey Parties ask the Bankruptcy Court to overrule or reverse the judgment of the Southern District.  This request constitutes an impermissible collateral attack on the Discretionary Stay Order.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) ("persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order").

34.     "Moreover, the decision whether to grant a stay in [a] case is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket."  *Cost Brothers, Inc. v. Travelers Indemnity Co.,* 760 F.2d 58, 60 (3d Cir. 1985).  The Bankruptcy Court should decline the invitation to interfere with those matters that are within the sound discretion of the Southern District, particularly where they relate to matters of judicial economy and the management of that court's own resources.  It is the Southern District which must decide whether an "appropriate showing" has been made that warrants granting the Massey Parties relief from the Discretionary Stay Order.

35.     MSC acknowledges that the Bankruptcy Court is the appropriate court to consider the Massey Parties' request for relief from the automatic stay to pursue actions against Wheeling.  *See, e.g., Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194,

01:12306155.7

1204 (3d Cir. 1991). MSC continues to believe that it would be detrimental to the Debtors and

their estates if the Federal Action were to go forward at this tenuous time in the chapter 11 cases.

36.     Assuming, *arguendo*, that the Massey Parties could demonstrate cause for

stay relief in the Bankruptcy Court, the Massey Parties would still need to seek relief from the

Discretionary Stay Order in the Southern District. All of this must be considered in context. The

Massey Parties waited until the virtual eve of a four-week trial to seek the relief set forth in the

Motion. An immediate grant of stay relief would be highly prejudicial to MSC and would

reward the Massey Parties for their approximately seven week delay in obtaining stay relief with

respect to their claims against Wheeling.

## II.     The Automatic Stay Should Not Be Extended Solely To Advance a Creditor's Interest

37.     "Section 362 by its terms only stays proceedings against the debtor."

*Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d

Cir. 1982); *see also McCartney v. Integra National Bank North,* 106 F.3d 506, 509 (3d Cir.

1997); *Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204-1205 (3d

Cir. 1991). Under its express terms, the stay does not apply to actions between non-debtor

parties, even where those parties are closely related to the debtor. *Id.* at 1205 ("In this regard,

formal distinctions between debtor-affiliated entities are maintained when applying the stay. A

proceeding against a non-bankrupt corporation is not automatically stayed by the bankruptcy of

its principal; and, section 362 does not bar an action against the principal of a debtor-

corporation." (internal citations omitted)). The automatic stay serves several purposes – to give

the debtor a breathing spell from collection efforts; to allow the debtor to attempt to restructure

its debts under a plan of reorganization; to relieve the debtor from the pressures that drove it into

bankruptcy; and to prevent a particular creditor from moving unilaterally to secure payment from

the debtor to the detriment of the general creditor constituency, *see Maritime Electric Company*,

959 F.2d at 1204 – and it ultimately furthers the chief goal of bankruptcy, the maximization of

the estate's assets for equal distribution to creditors.

       38.    The Third Circuit has, however, recognized that the automatic stay may be

extended to third parties in "unusual circumstances."  *McCartney v. Integra National Bank*

*North*, 106 F.3d 506, 510-11 (3d Cir. 1997).  The Third Circuit has noted that extending the stay

to non-debtors may be appropriate where:

- "There is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," *id.* (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.)); or

- "Where stay protection is essential to the debtor's efforts of reorganization," *id.* (citing *In re Lazarus Burman Associates*, 161 B.R. 891, 899-900 (Bankr. E. D. N.Y. 1993).

In these circumstances, the primary purposes of the automatic stay identified in *Maritime*

*Electric* are advanced by extending the stay.  Additionally, in *In re Continental Airlines*, the U.S.

District Court for the District of Delaware considered certain factors in determining whether to

extend the automatic stay to non-debtor parties:

- the involvement of the non-debtor parties in the reorganization process and the burden imposed on those non-debtor parties if the litigation is not stayed;

- the likelihood that the litigation would detract from the debtor's efforts to reorganize; and

- whether the debtor's assets would likely be depleted as a result of the litigation.

177 B.R. 475, 481 (D. Del. 1993); *see also Midway Games, Inc. v. Anonuevo (In re Midway*

*Games, Inc.)*, 428 B.R. 327, 334 (Bankr. D. Del. 2010) (applying four *Continental* factors and

extending stay to prevent litigation of unpaid wage claims against debtor's directors and

officers).

A.    **Extending the Stay Is Not Necessary to Protect the Debtors,
Their Assets, the Administration of their Cases, or their
Reorganization**

39.    The Massey Parties have not argued, nor can they argue, that the State

Court Action will have any impact, let alone a negative impact, on the Debtors' efforts to

reorganize.[26]  The State Court Action involves no claims, counterclaims or cross-claims against

any Debtor (or even MSC, whom the Massey Parties allege is the alter-ego of Wheeling).  Thus

there is no possibility that the State Court Action presents a scenario where a judgment will be

rendered that is in effect a judgment against any Debtor. Thus, neither of the compelling reasons

identified in *McCartney* are present and the "unusual circumstances" required to extend the stay

are simply not present.

40.    Moreover, none of the factors considered in *Continental* and *Midway*

*Games* weigh in favor of extending the stay to the State Court Action.  To date, there has been no

evidence that any party to the State Court Action has played a meaningful role in the Debtors'

chapter 11 cases except for asserting their rights as creditors.  Moreover, discovery in the State

Court Action is complete, and trial is scheduled to begin in less than one week.  As a result, no

burdens will be imposed on the parties to the State Court Action that could have any conceivable

impact on the Debtors' reorganization.  For substantially the same reasons, there is no possibility

that litigation of the State Court Action would have any impact on the Debtors' reorganization.

Finally, since the only parties against whom affirmative claims have been asserted in the State

Court Action are the Massey Defendants – and, again, no Debtor is even a party in the State

---

[26]    The Massey Parties appear to take the extreme position that not even the Federal Action, where Wheeling is a
named party, will have an impact on the Debtors' efforts to reorganize.  Motion, at ¶ 24.  While MSC does not
necessarily agree with the Massey Parties' contention, accepting it as true, it would seem that an action where
Wheeling is not even a party must have less of an impact on the Debtors' efforts to reorganize.

Court Action – there can be no likelihood of a depletion of estate assets arising from a judgment in the State Court Action.

41.     Given the absence of any of the elements traditionally present where Court in this Circuit have extended the automatic stay, the Court should deny the request to extend the automatic stay to the State Court Action.

**B.     The Massey Parties Have Not Demonstrated They Have Standing to Obtain an Extension of the Automatic Stay**

42.     If the State Court Action would have any conceivable effect on the Debtors' efforts to reorganize, one would expect that it would be the Debtors, who recently advised the Court during the hearing on the Motion to Shorten that they can ill afford any distractions at this pivotal time in their chapter 11 cases, seeking the relief requested with respect to the State Court Action.  Indeed, the primary inquiries conducted by courts considering an extension of the automatic stay have looked at what the effect on the debtor will be if the stay is not extended.  Here, the Debtors have not made such a request.

43.     While the Bankruptcy Code confers relatively broad standing on parties in interest to be heard in chapter 11 proceedings, *see* 11 U.S.C. § 1109, a party seeking affirmative relief in the bankruptcy court must still meet the constitutional tests for standing.  *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).  As a result, standing for purposes of a bankruptcy proceeding is granted to "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding [] to assert that interest with respect to any issue to which [the legally protected interest] pertains." *Id.*  As a result, in order to seek an extension of the automatic stay, the Massey Parties must hold a legally protected interest the stay is intended to protect.

44.      "[Section 362] does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate."  *St. Croix Condominium Owners*, 682 F.2d 448; *Maritime Electric*, 959 F.2d at 1204.  Actions brought by the debtor against creditors are not stayed.  *Id.* at 1205.  As a result, creditors, generally speaking, are not within the class of legally protected persons that are within the scope of the automatic stay.  Only, when an action against a creditor falls within the "unusual circumstances" discussed in Part II(A) above, such that an action against a third party might be construed as an action against a debtor, should a creditor be permitted to seek an extension of the stay.

45.      Extending the stay to prohibit MSC from prosecuting its claims against the Massey Defendants would protect no interest of the Debtors' estates and it would have no effect on depleting assets of the bankruptcy estate. Instead, it would only have the effect of denying MSC the right to collect on its assets.  Indeed, the only "benefit" that would arise from extending the stay would be to delay entry of a judgment against the Massey Defendants in the State Court Action.  Staying such an action is not the kind of interest that the automatic stay is intended to protect and, if brought by a Debtor (rather than MSC), would be expressly excluded from the stay.[27]

46.      As a result, the relief requested as to MSC should be denied.

**C.      Massey Parties Have Cited No Authority for the Extraordinary Relief They Seek Against MSC**

47.      Courts in this jurisdiction have extended the protections of the automatic stay to:  directors and officers of a debtor, *see, e.g., In re Continental Airlines*, 177 B.R. 475, 478

---

[27]   Notably, the Massey Parties have contended that MSC and Wheeling are alter egos of each other.  Taking that allegation as true (which MSC expressly disputes and does not take as true), MSC's claims in the State Court Action would be "estate assets" and expressly excluded from the automatic stay.  *See St. Croix Condominium Owners* and *Maritime Electric*, discussed *supra*.  The Massey Parties have failed to reconcile their argument that MSC's assets are, effectively, estate assets, with its request to prohibit MSC to attempt to collect on those assets.

(D. Del. 1993) (staying shareholder actions against current and former directors and officers); the insurer of a debtor, *see, e.g., Kaiser Group Int'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 315 B.R. 655 (D. Del. 2004) (finding that litigation by debtor-related party against insurer over ownership of returned insurance premiums involved property of the estate and should be stayed); and non-debtor corporations with contractual indemnity relationships with the debtor, *see, e.g., W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17 (Bankr. D. Del. 2008).

48.     The Massey Parties have not cited any authority for extending the automatic stay to protect a creditor that does not share an identity of interest with the debtor or where an extension of the stay would do nothing to protect or advance the progress of a chapter 11 case.  Tellingly, cases cited by the Massey Parties merely suggest when it is appropriate to <u>lift</u> the stay.  This illustrates that what the Massey Parties seek is not actually an "extension of the automatic stay," but rather a stay that would that would only serve their individual interests, not the Debtors', and that should be made to the State Court, not this Court.

49.     The Massey Parties have set forth no authority to support the extraordinary relief they request against MSC, and it should be denied.

## III.    The Massey Parties Have Not Met the Standard for Injunctive Relief

50.     "Extensions of the automatic stay, [are] in fact injunctions issued by the bankruptcy court."  *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009); see *also In re Fairchild Corp.*, Case No 09-10899 (CSS), 2009 Bankr. LEXIS 3815, at *30 (Bankr. D. Del. Dec. 1, 2009).  As an initial matter, this Court may only issue an injunction in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(9).  No adversary proceeding has been commenced.

51.     A court must conduct a three-part inquiry to determine whether extending the stay is appropriate:

01:12306155.7

> First, the Court must determine "whether the Bankruptcy Court had jurisdiction to issue the injunction." Second, the Court must determine "whether the Bankruptcy Court properly extended the § 362(a) stay" to the non-debtor third parties. And third, the Court will determine "whether the Bankruptcy Court properly exercised its discretion in issuing the injunction pursuant to section 105(a)."

*Union Trust Philadelphia, LLC v. Singer Equip. Co. (In re Union Trust Philadelphia., LLC)*, 460 B.R. 644, 652 (E.D. Pa. 2011) (citing *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 611 (E.D. Pa. 2009)). As discussed above in Part III, the second factor identified in *Union Trust Philadelphia* has not been met, and as discussed below, neither is the third factor.[28]

52.    A court must weigh the following four factors in determining whether to issue a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Only if the first two factors of this standard are satisfied must a court proceed to consider the third and fourth factors. In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize.

*Id*. at 660 (internal citations omitted). The burden rests with the Massey Parties to demonstrate that extension of the automatic stay is warranted. *Lilly v. Prosser (In re Nat'l Rural Utils. Coop. Fin. Corp.)*, 467 B.R. 59, 67 (Bankr. D. Del. 2011) ("With respect to a preliminary or permanent injunction, Plaintiffs have the burden of proving the basis for a preliminary or permanent injunction."). While the Massey Parties have not at all addressed the four factors necessary for obtaining injunctive relief in the Motion, none of the four factors warrant granting the requested relief.

---

[28]    The Northern District has already determined that the State Court Action is subject to "related to" jurisdiction.

53.     First, the Massey Parties have not shown any reasonable probability of success on the merits.  The Massey Parties have not cited a single authority for the proposition of extending the automatic stay solely to protect a creditor's interest – nor have they shown (or can they show) that the requested injunction of the State Court Action would have any bearing on the Debtors' ability to successfully reorganize.

54.     Second, no irreparable harm will occur if the Massey Parties are held to a trial date that has been scheduled for well over a year.  The sole arguments that the Massey Parties have raised to demonstrate prejudice is the fact that their putative setoff rights may be adversely affected if trials in the State Court Action and Federal Action were to take place at different times.  There are a number of problems with this argument.  <u>One</u>, the Massey Parties have not asserted any right to setoff as an affirmative defense in the State Court Action.  Thus no putative right of setoff is being pursued in the State Court Action that can be frustrated.  <u>Two</u>, since Wheeling has not asserted any affirmative claims against the Massey Parties, the Massey Parties have no setoff rights via-a-vis Wheeling arising out of the State Court Action. Wheeling's reliance on cases that discuss when a bankruptcy court should exercise its discretion to allow a creditor to effectuate a setoff[29] is inapposite.[30]  <u>Three</u>, the Federal Action was never scheduled to commence at the same time as the State Court Action and was, in fact, scheduled to start several months after the State Court Action was set to conclude.  This was so even before

---

[29]   *In re United Airlines, Inc.* (Original Motion, at ¶ 32) and *In re ABC Learning Centres Ltd.* (Supplement, at pp. 2-3) involved claims and obligations between a debtor and the movant.  Again, there is no evidence Wheeling has asserted claims against or obligations owed to it by any of the Massey Parties in any of the pending litigation.

[30]   Additionally, the lack of mutuality would prohibit any setoff of an award in favor of MSC in the State Court Action against an obligation of Wheeling's arising in the Federal Action.  *See* 11 U.S.C. § 553(a); *In re SemCrude, L.P.,* 399 B.R. 388, 393 (Bankr. D. Del. 2009) (A debt and a claim are considered "mutual" only when "they are due to and from the same persons in the same capacity.").  Any right to setoff between MSC and the Massey Plaintiffs is outside of the scope of the automatic stay; however, the Massey Defendants have failed to plead setoff as a defense in the State Court Action.

accounting for the delays in starting discovery, which predated the Debtors' chapter 11 filing.

Four, Massey must show how further delays in a trial that has already been pending for three

years with no substantial progress toward adjudicating the merits of the dispute would result in

irreparable harm.

55.     Third, MSC submits that, if any party is harmed by delay, it will be MSC.

The State Court Action has been pending for over four years, and MSC has placed substantial

resources and efforts into preparation for trial in the State Court Action.  MSC believes it has

meritorious claims, particularly in light of its prior success in adjudicating substantially the same

matters against the Massey Parties.  To the extent that delay – which is the only real prejudice to

any party here – has any relevance to an injunction analysis, it weighs in favor of MSC.

56.     Fourth, the public interest weighs decidedly against granting the relief

requested.  The Massey Parties' request for relief against MSC is nothing more than a delay

tactic.  Courts have uniformly recognized that the relief sought by the Massey Parties – extension

of the automatic stay – is limited to "unusual circumstances," and then, only when the failure to

grant the relief would imperil the debtor, its assets and/or its reorganization.  None of those

circumstances are present if the State Court Action proceeds to trial.  Granting extraordinary

relief when the factual and legal predicates required for such relief are absent, only hinders the

public interest.  This is doubly so where the only possible "benefit" would be to allow a creditor

to subvert the bankruptcy process to advance its own goals.

57.     Absent the Massey Parties satisfying the standards for a preliminary

injunction, this Court must deny the relief requested as to MSC.

## IV.     No Compelling Reasons Exist for Staying the State Court Action

58.     In essence, the Motion requests that the Bankruptcy Court ignore the prior

orders and directives issued by the State Court, Northern District and Southern District.  Notably,

01:12306155.7

the Massey Parties ask the Bankruptcy Court to dictate the timing of a trial before the State Court

that involves two non-debtor parties, does not seek to assert claims against any Debtor or the

Debtors' property, will have no impact on the administration of the Debtors' cases and in which

the Massey Defendants have never sought a stay. The State Court has made it abundantly clear

to the parties before it that it plans to proceed to the scheduled trial on July 30, 2012.

59.     <u>First</u>, and most importantly, the trial in the State Court Action was always

contemplated to occur several months before the Federal Action was to proceed to trial. This

should have been ever more apparent given the significant delays in discovery and the fact that

meaningful discovery progress only began to take shape in the immediate period before the

Petition Date. Nonetheless, the Massey Parties waited until the eve of trial in the State Court

Action to request their extraordinary relief against MSC.

60.     <u>Second</u>, the Northern District, in issuing its remand decision, found that it

was appropriate for the federal courts to abstain from hearing the dispute in the State Court

Action, notwithstanding that Court's determination that it had "related to" jurisdiction under 28

U.S.C. §1334(b). In doing so, the Northern District held that the State Court Action's connection

to the Debtors' chapter 11 cases was "remote" and relied on the fact that the claims were asserted

between non-debtor parties. Simply put, the Massey Parties have advanced no reason why

proceeding with the State Court Action would have any impact, let alone a negative impact on

the Debtors' chapter 11 cases.

61.     <u>Third</u>, the Massey Parties are themselves to blame for the parallel tracks

the State Court Action and Federal Action were placed. Shortly after the Federal Action was

filed, MSC amended its complaint to add a count for declaratory relief on substantially the same

ground upon which the Massey Plaintiffs based the Federal Action. The Massey Defendants

were successful in having that claim stayed in favor of adjudicating the issue in the Federal

Action.  MSC proceeded to diligently build its case in the State Court Action and is now ready

for trial.

62.     Having chosen to have the causes of action asserted in the State Court

Action and Federal Action heard separately, and repeatedly taken the position that MSC cannot

consolidate those causes of actions, the Massey Parties cannot now seek to treat these actions as

one, and insist that the State Court Action be stayed until the Federal Action can move forward.

To the extent that any party is subject to the application of any doctrines of estoppel it is the

Massey Parties.

63.     Fourth, the Massey Parties' contention that MSC is judicially estopped

from arguing that "Wheeling and Mountain State should [not] be treated as one and the same for

purposes of the automatic stay," Motion, at ¶ 36, should also be rejected.  This contention is

premised on an inaccurate and distorted characterization of the arguments advanced by MSC and

the other defendants in the Federal Action in the Discretionary Stay Motion.  MSC merely

argued that, if the Massey Parties' alter ego allegations were true, those allegations would

necessitate the extension of the stay recognized in *A.H. Robbins v. Piccinin*.  It is the Massey

Parties who have consistently advanced the "alter ego" theory, a contention disputed by MSC

and Wheeling that serves as the basis for the Discretionary Stay Order.  That the Southern

District countenanced the theory that the Massey Parties have advanced and awarded the relief of

which they now complain, is a harm of the Massey Parties' own doing.

64.     Finally, equitable grounds related to the scheduling in the State Court

Action highlighted in the Discretionary Stay Motion also justified a stay of the Federal Action

during the pendency of trial in the State Court Action.  Any efforts of the Massey Parties to force

through a discovery schedule while MSC is conducting a trial – a trial at which the Massey

Parties had the option (that it did not elect) to have its claims heard – would be inequitable.

65.    For all of these reasons, MSC submits that on balance, the considerations

with respect to the Motion and the relief requested as to MSC weigh decidedly in favor of

denying the Motion.

## V.    The Bankruptcy Court Should Abstain From Considering the Relief Requested Against MSC

### A.    The Northern District Already Determined that Jurisdiction over the State Court Action lies in the State Court and that Court Should Consider Any Stay Request

66.    "It is axiomatic that remanding a case to state court terminates the

jurisdiction of a federal bankruptcy or district court over that case." *Hunt v. Acromed Corp.*, 961

F.2d 1079, 1081 (3d Cir. 1992).[31]   The Northern District remanded the State Court Action to the

State Court to proceed to trial, and in doing so, rejected the Massey Defendants' request that the

State Court Action be transferred to the District of Delaware.  The Northern District came to this

conclusion in reliance on, among other things, the fact that the State Court Action only had a

"remote" connection to the Debtors' chapter 11 cases.

67.    Under well settled Third Circuit precedent, upon remand to a state court,

federal courts are divested of jurisdiction over the remanded matters.  The Bankruptcy Court has

no jurisdiction to enter orders related to the conduct and administration of the State Court Action.

The Massey Parties' sole recourse is to petition the State Court to stay the scheduled trial.

---

[31]    On June 26, 2012, the clerk of the Court for the Northern District sent a certified copy of the Remand Order and a certified copy of the docket sheet for the removed action in the Northern District to the State Court.

**B.     This Court Should Otherwise Abstain from Staying the State Court Action**

68.     Irrespective of whether this Court has the jurisdiction and authority to issue a stay of the State Court Action, this Court should exercise its discretion to abstain from considering the Massey Parties' request to stay the State Court Action.

69.     Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides, in relevant part: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  Courts have identified the following twelve factors as relevant to permissive abstention:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.

See ConocoPhillips Co. v. SemGroup, L.P. (In re SemCrude, L.P.), 428 B.R. 82, 101 (Bankr. D. Del. 2010) (citing In re Mobile Tool Int'l, 320 B.R. 552, 556-57 (Bankr. D. Del. 2005)).

70.     Nine of the twelve factors identified in *SemCrude* weigh strongly in favor of this Court's abstention from considering the Massey Parties' request for a stay of the State Court Action, just as the Northern District previously found it was appropriate for the federal

courts to abstain from exercising jurisdiction over the underlying State Court Action *in toto*.  Of the remaining three factors, the eighth and eleventh[32] appear to have no bearing on this matter, and only the fifth factor – jurisdictional basis – weighs in favor of having the dispute heard in federal court, although the basis for jurisdiction is merely diversity of the parties rather than a claim arising under the Bankruptcy Code or some other federal statute.

71.     First, and most elementary, a request for a stay of the State Court Action could be made in the State Court, satisfying the fourth factor set forth above.  Second, and just as fundamental, no allegation has been made that allowing the State Court Action to proceed will have an adverse impact on the efficient administration of the estate; the first factor thus weighs in favor of abstention.

72.     The State Court Action consists of state law issues, and both the State Court Action and the instant request for a stay of the State Court Action have an attenuated relatedness to the bankruptcy cases.  As noted by the Northern District in its opinion granting the Remand Motion, although the Northern District concluded that it did have "related to" jurisdiction over the State Court Action, the State Court Action "bears only a remote connection to the bankruptcy case of RG Steel."  *See Mountain State Carbon, LLC v. Central West Virginia Energy Company*, C.A. No. 5:12-CV-87, 2012 WL 2415547 (N.D.W. Va. Jun. 26, 2012).  Thus factors two, three, and six can only counsel in favor of abstention.

73.     The seventh factor, "the substance rather than the form of an asserted 'core' proceeding," strongly supports abstention.  As set forth above, the Massey Parties have attempted to dress up a request for an injunction of the State Court Action as an extension of the automatic stay, a core matter; as set forth in Part II above, the Massey Parties do not qualify for

---

[32]     The eighth factor speaks to the need to sever bankruptcy core matters and state law claims.  The claims are straight forward breach of contract claims arising under state law.  The eleventh factor appears to be inapplicable to the instant request for a stay, which would not be presented to a jury in any court.

an extension of the automatic stay.  As discussed below, controlling Third Circuit law dictates that the "substance" of what the Massey Parties seek – rather than the "form" of what they seek – renders the relief sought against MSC non-core.  *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999), discussed *infra*.  Their request to enjoin the State Court Action does note invoke a substantive right provided by title 11, nor could their request arise only in the context of a bankruptcy case.  Consequently, the seventh factor strongly counsels in favor of abstention.

74.     The tenth factor, the "likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties," also favoring abstention.  As set forth above, this is not the first attempt by the Massey Parties to escape the jurisdiction of the State Court and the impending trial in the State Court.  Indeed, the Massey Parties had the opportunity to have all matters heard in the State Court, and they chose to favor the federal court.

75.     The ninth and twelfth factors both favor abstention.  The Bankruptcy Court has a very full docket.  Were the Bankruptcy Court to grant a stay, it would assume the responsibility for, and burden of, deciding when that stay should be lifted.  This properly belongs in the State Court, which has made clear its readiness to proceed to trial in the State Court Action.  This is buttressed by the fact that no Debtor is even a party to the State Court Action.

76.     All but one factor applicable in this matter suggests it would be appropriate for this Court to abstain from considering the Massey Parties' request to enjoin the State Court Action.  Applying the relevant factors, it would be prudent for this Court to exercise its discretion to abstain from this matter, just as the Northern District opted to abstain from exercising its jurisdiction over the State Court Action in its entirety.

01:12306155.7

**VI.     Even Assuming this Court were Inclined to Stay the State Court Action, It Could not Submit a Final Order Doing So**

77.     Section 157 of the Bankruptcy Code divides bankruptcy matters into two categories:  core and non-core. A bankruptcy judge has the power to "hear, decide and enter final orders and judgments" in a core proceeding.  *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999); *see also* 28 U.S.C. § 157(b)(1).

78.     A bankruptcy judge also has the power to hear non-core proceedings – "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).  A bankruptcy court's power to hear non-core proceedings, however, is limited to submitting proposed findings of fact and conclusions of law to the district court for review.  *See Halper*, 164 F. 3d at 836.

79.     As noted by the Third Circuit in *Halper*, and more recently by the Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594, 564 U.S. ___  (June 23, 2011), 28 U.S.C. § 157(b) sets forth a list of certain matters statutorily labeled core matters by Congress – a list the Supreme Court found to be constitutionally overbroad in *Stern*.[33]  Following *Stern*, bankruptcy court judges tasked with deciding whether a matter is a core or non-core proceeding must look to whether a matter is a core proceeding under the U.S. Constitution, not simply whether the matter is a core proceeding under the language of 28 U.S.C. § 157(b) – a fact acknowledged by the amended standing order of reference automatically referring bankruptcy cases to this Court.  *See Amended Standing Order of Reference*, dated Feb. 29, 2012 ("If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred

---

[33]     As noted in *Halper*, even before *Stern* the Third Circuit considered the listing of core matters set forth in 28 U.S.C. 157(b) to be merely "an illustrative list" and still required a determination to be made whether a matter was core under the U.S. Constitution.  *See Halper*, 164 F.3d at 836-37.

under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise

ordered by the district court, hear the proceeding and submit proposed findings of fact and

conclusions of law to the district court.").  Under controlling Third Circuit law governing this

constitutional inquiry, "'a proceeding is core [1] if it invokes a substantive right provided by title

11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy

case.'"  *Halper*, 164 F. 3d at 836 (quoting *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178

(3d Cir. 1996)).

80.     As discussed in Part II above, the relief requested by the Massey Parties is

a request to extend the automatic stay in name only.  The automatic stay may be extended to

benefit persons who share an identity of interest with a debtor or to those against whom a

judgment would result in a detrimental impact on a debtor's estate.  What the Massey Parties

seek is something much different – a stay of litigation against an entity with no identity of

interest with the Debtors and against whom a judgment would have no detrimental impact on the

Debtors' estates.  As such, what the movants seek is not an extension of the automatic stay.  At

most, it is a request for this court to enter a plain injunction the State Court Action.

81.     While an order extending the automatic stay arguably "invokes a substantive

substantive right provided by title 11" – the automatic stay which arises under 11 U.S.C. § 362 –

the form of injunction requested by the Massey Parties does not seek a substantive right provided

by title 11.  The relief requested is not "a proceeding, that by its nature, could arise only in the

context of a bankruptcy case."  Accordingly, the injunction of the State Court Action sought by

the Massey Parties is not a core proceeding, and were this Court inclined to enjoin the State

Court Action, it could not enter a final order doing so.  Rather, this court would only be

01:12306155.7

authorized to submit proposed findings of fact and conclusions of law to the District Court for review.

## RESERVATION OF RIGHTS

82.     Except as expressly set forth herein, MSC shall not be deemed to admit, acknowledge or accept any of the factual allegations or legal propositions set forth in the Motion and all such allegations are expressly denied.  This Objection is a preliminary objection, and MSC reserves the right to amend, supplement and or modify any bases for objection to the relief requested in the Motion or any other relief that the Massey Parties may seek against MSC or that may affect MSC in the Bankruptcy Court or any other forum.

WHEREFORE, MSC respectfully requests that the Court deny the Motion in its entirety.

Dated: Wilmington, Delaware
          July 24, 2012

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____*/s/ Ryan M. Bartley*_____
James L. Patton, Jr. (No. 2202)
Rolin P. Bissell (No. 4478)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to Mountain State Carbon, LLC*

01:12306155.7