IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re                                    :   Chapter 11
                                         :
WP Steel Venture LLC, et al.,¹           :   Case No. 12-11661 (KJC)
                                         :
                  Debtors.               :   (Jointly Administered)
                                         :   Re: D.I. 621 and 659
                                         :
-----------------------------------------------------x
```

## OBJECTION OF DEBTORS TO MOTION OF CENTRAL WEST VIRGINIA ENERGY COMPANY, MASSEY ENERGY COMPANY AND MASSEY COAL SALES COMPANY, INC. FOR AN ORDER GRANTING MODIFICATION TO THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, FOR AN ORDER EXTENDING THE AUTOMATIC STAY TO THE PENDING STATE COURT ACTION

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**"), by and through their undersigned counsel, submit this objection (the "**Objection**") to the motion of Central West Virginia Energy Company ("**Central**"), Massey Energy Company ("**Massey Energy**") and Massey Coal Sales Company, Inc. ("**Massey Coal**", and, collectively with Central and Massey Energy, "**Movants**") for an order granting modification to the automatic stay (the "**Motion**"). [Docket No. 621]. In support of this Objection, the Debtors respectfully state as follows:

---

¹ If applicable, the last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) WP Steel Venture LLC (7095); (ii) Metal Centers LLC; (iii) RG Steel, LLC (1806); (iv) RG Steel Railroad Holding, LLC (4154); (v) RG Steel Sparrows Point, LLC (3633); (vi) RG Steel Warren, LLC (0253); (vii) RG Steel Wheeling, LLC (3273); and (viii) RG Steel Wheeling Steel Group, LLC (9927). The Debtors' executive headquarters are located at 1430 Sparrows Point Boulevard, Sparrows Point, MD 21219.

## PRELIMINARY STATEMENT[2]

1.      The Debtors object to Movants' request for relief from the automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**") on the grounds that Movants have not established, and cannot establish, that "cause" exists to modify the automatic stay.

2.      By the Motion, Movants seek relief from the automatic stay to proceed with litigation against the Debtors of unliquidated, unsecured, and contingent claims, to the likely prejudice of other creditors in these bankruptcy cases.  Movants concede that they bear the initial burden for establishing cause to modify the automatic stay.  Movants have failed to satisfy their burden as a matter of law.

3.      Movants ignore: (a) the fundamental purpose of the automatic stay, which is to enable the Debtors to focus on the reorganization process without the distraction and expense of litigation in other forums; (b) the prejudice that will be suffered by the Debtors and their creditors as a result of having to divert attention away from the sale process and prematurely expend the estates' limited resources to defend the Federal Court Litigation; (c) the fact that any harms suffered by the Movants as a result of the stay of the Federal Court Litigation while the State Court Litigation continues are a result of Movants' own strategic choices and will not be alleviated through lifting the stay as to the Debtors; (d) Movants' burden to make a showing on their probability of success on the merits of their claims in the Federal Court Litigation; and (e) the fact that the Debtors are not parties to the State Court Litigation and, consequently, are in no way seeking to use the automatic stay as a "sword and a shield," nor are

---

[2]      Undefined capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them below.

the Debtors judicially estopped from arguing that the Federal Court Litigation should remain stayed.

4.     As a result, this Court should deny the Motion and the automatic stay should remain in effect as to the Debtors.

## BACKGROUND

### A.  Introduction

5.     On May 31, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.     The Debtors continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.     On June 12, 2012, pursuant to Section 1102(a)(1) of the Bankruptcy Code, the Office of the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors.

### B.  The State Court Litigation

8.     In 2008, Mountain State Carbon, LLC ("**Mountain State Carbon**") filed a lawsuit against Movants in the Circuit Court for Brooke County, West Virginia (the "**State Court**") under Civil Action Number 08-C-160 ("**State Court Litigation**").  Mountain State Carbon alleged, in part, breach of contract and tortious interference by the Movants.  Movants filed no counterclaims against Mountain State Carbon in the State Court Litigation.

9.      For at least a year, trial in the State Court Litigation has been set for July 30, 2012.

10.      No Debtor is a party to the State Court Litigation.

**C.  The Federal Court Litigation**

11.      Subsequently, in 2009, Movants commenced a new and separate litigation alleging interrelated breach of contract, alter ego and tort claims against Mountain State Carbon, Severstal North America, Inc. n/k/a Severstal Dearborn ("**Severstal Dearborn**"), OAO Severstal, and Severstal Wheeling, Inc. ("**Severstal Wheeling**") in the United States District Court for the Southern District of West Virginia (the "**District Court**") under Civil Action Number 5:09-CV-00467 (the "**Federal Court Litigation**").

12.      Debtor RG Steel Wheeling, LLC ("**RG Steel Wheeling**") is a defendant in the Federal Court Litigation as the-successor-in-interest to Severstal Wheeling.

13.      RG Steel Wheeling is also a 50% owner of Mountain State Carbon, as a joint venture, with SNA Carbon LLC ("**SNA Carbon LLC**").  However, since the Debtors' bankruptcy filing, SNA Carbon has argued[3] that RG Steel Wheeling ceased to be a member of, and no longer has any authority over, Mountain State Carbon.[4]

14.      Under the August 23, 2011 Scheduling Order in the Federal Court Litigation (the "**August 23 Scheduling Order**"), discovery requests were not set to be completed until July 17, 2012, depositions were not set to be completed until August 31, 2012,

---

[3]      Debtors reserve all rights, positions, and arguments with respect to SNA Carbon's assertions.

[4]      Mountain State Carbon and RG Steel Wheeling are also engaged in litigation in the United States District Court for the Northern District of West Virginia, Civil Action No. 5:12-CV-77.  The litigation concerns, among other things, the authority of Mountain State Carbon to prevent RG Steel Wheeling's removal of Mountain State Carbon Officers, the status of a contract providing for the sale by Mountain State Carbon of coke to RG Steel Wheeling, and whether Mountain State Carbon is entitled to suspend performance under the contract.

and assuming all other pre-trial motions and expert discovery were completed as scheduled, the trial was not set to begin until January 8, 2013, over five months after the start of trial in the State Court Litigation.  (Attached as <u>Exhibit A</u>.)

15.    On June 1, 2012, a Suggestion of Bankruptcy was filed in the Federal Court Litigation and, shortly thereafter, the Movants canceled their scheduled deposition of defense witnesses.  *See* Letter from James Doerfler to Robert Stonestreet, dated July 12, 2012, attached as <u>Exhibit C</u> to the Motion to Enforce Automatic Stay and For Modification of the Court's Scheduling Order filed in the Federal Court Litigation (the "**Motion to Enforce Automatic Stay**").

16.    On July 13, 2012, Mountain State Carbon filed its Motion to Enforce Automatic Stay in the Federal Court Litigation seeking, in part, application of the automatic stay to all defendants and the vacating or modifying of the August 23 Scheduling Order.  In arguing for the enforcement of the automatic stay, Mountain State Carbon did not take the position that Mountain State Carbon and RG Steel Wheeling were alter egos of each other.  Rather, Mountain State Carbon pointed to Movants' allegation that Mountain State Carbon and RG Steel Wheeling were alter egos, and the invasive discovery that Movants would no doubt seek against the Debtors to support its claims in the Federal Court Litigation, to argue that the continuation of the Federal Court Litigation would be highly disruptive to the orderly disposition of this bankruptcy proceeding.  (*See* Ex. E to the Motion at 4-7.)

17.    On July 16, 2012, United State District Judge Thomas E. Johnston granted the Motion to Enforce Automatic Stay and ordered the Federal Court Litigation stayed as to all defendants, including RG Steel Wheeling, during the pendency of RG Steel Wheeling's

bankruptcy and vacated the August 27 Scheduling Order (the "**July 16 Order**").  (Attached as Exhibit B.)

18.    On July 17, 2012, Central, Massey Energy, and Massey Coal filed the Motion seeking an order from this Court to overturn the July 16 Order, and/or lift the automatic stay in the Federal Court Litigation as to all non-Debtor parties, and/or stay the State Court Litigation.

19.    On July 22, 2012 at 7:56 p.m., less than 48 hours before the Debtors' Objection was due, and without authority from this Court, Movants filed a Supplement to Motion ("**Supplement**").[5]

### D.  Upcoming Bankruptcy Events

20.    To obtain the postpetition financing necessary to conduct an orderly asset sale process, the Debtors entered into a ratification agreement (the "**DIP Financing Agreement**") that amended the terms of their senior secured prepetition credit facility to provide incremental postpetition borrowing capacity of up to $50 million in supplemental loans.  On June 21, 2012, the Court entered a final order authorizing the Debtors to enter into the DIP Financing Agreement, among other relief.  [Docket No. 353].  As described in the *Debtors' Motion for Orders: (A)(I) Approving Bidding Procedures In Connection With Sale(s) of Substantially All of the Debtors Assets; (ii) Scheduling Hearing to Consider Sale; (III) Approving Form and Manner of Notice Thereof; and (IV) Authorizing Entry Into Stalking Horse Agreements Subject to Further Hearing; (BB)(I) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of*

---

[5]    The Debtors believe that the Supplement should be struck as it fails to address **any** new facts or law that did not exist at the time the Motion was filed and is essentially a premature, unauthorized, and untimely reply.

*Executory Contracts and Unexpired Leases; and (C) Granting Related Relief*, in the Debtors'

business judgment, the prompt sale of their assets presents the best opportunity to maximize

value for the estates.  [Docket No. 93].  To this end, the DIP Financing Agreement prescribes

certain milestones in connection with the sale process.

21.     Such milestones require a prompt sale process and do not afford the

Debtors the luxury of time.  For example, in accordance with the DIP Financing Agreement, the

Debtors obtained entry of an order approving bidding procedures for the sale(s) of substantially

all of their assets on June 21, 2012.  [Docket No. 354].  Since then, the Debtors have devoted

significant resources to marketing their assets in advance of the July 25, 2012 deadline for

submitting bids on such assets (the "**Bid Deadline**") and preparing for multiple possible

upcoming auctions.  Notably, the Debtors must obtain entry of a sale order no later than August

8, 2012 if a stalking horse bidder for the Sparrows Point, Maryland[6] facility is not chosen, or no

later than August 23, 2012 if a stalking bidder is chosen.

22.     Importantly, with an outside maturity date under the DIP Financing

Agreement of August 24, 2012, the Debtors are dependent upon a successful asset sale to satisfy

their obligations under the DIP Financing Agreement and to avoid an event of default.

Furthermore, due to the nature of the Debtors' business, there is a significant risk of asset value

deterioration if the Debtors' sale process is prolonged.  An expeditious sale of assets will

alleviate further strain on the Debtors' estates by unburdening them from ongoing costs

associated with maintaining such assets.  As such, the Debtors' focus must continue to be on the

sale process in order to maximize the value of the estates for the benefit of all creditors.

---

[6]     Sparrows Point is the Debtors' largest integrated steel production facility.

**OBJECTION**

**I.    "CAUSE" DOES NOT EXIST TO WARRANT LIFTING THE STAY.**

   23. The Motion should be denied because Movants cannot demonstrate that any "cause" exists to lift the automatic stay.  In fact, each element of the test traditionally used by this Court to determine if cause exists militates against granting stay relief here.

   24. Section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the automatic stay "for cause."  11 U.S.C. § 362.  "In order to establish cause for relief under section 362(d)(1), the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips **significantly** in [its] favor."  *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) (emphasis added) (citations and quotation marks omitted).  "Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts."  *In re Lincoln*, 264 B.R. 370, 373 (Bankr. E.D. Pa. 2001) (quoting *In re Hohol*, 141 B.R. 293, 297 (M.D. Pa. 1992)).

   25. Movants' burden cannot be met with unsubstantiated assertions.  "A creditor's unsupported allegation that continuance of the stay will cause it irreparable harm will not suffice."  *In re Towner Petroleum Co.*, 48 B.R. 182, 191 (Bankr. W.D. Okla. 1985).  If the moving party's showing is insufficient, the motion should be denied without further inquiry. *Sonnax Indus., Inc. v. Tri-Component Prods. Corp.*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."); *see also In re Jones*, No. 02-17125, 2002 WL 34560880, at *3 (Bankr. E.D. Pa. Sept. 27, 2002) (movant failed to make even a "vague initial showing" of cause to lift the automatic stay where his motion "consist[ed] of no more than his own unsupported allegations").

26.     In determining whether or not adequate cause exists to modify the automatic stay, courts are guided by the precept that unsecured creditors (such as Movants) that move for stay relief "bear[] the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the [d]ebtor in denying relief." *In re Micro Design*, 120 B.R. 363, 369 (Bankr. E.D. Pa. 1990) (citations omitted); *see also In re R.F. Cunningham & Co., Inc.*, 355 B.R. 408, 412 (Bankr. E.D.N.Y. 2006) ("Only in extraordinary circumstances will an unsecured creditor be granted relief from the stay."); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) ("The general rule is that claims that are not . . . secured . . . should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief.").

27.     Courts in this Circuit engage in a three-part balancing test to evaluate whether cause exists for lifting the automatic stay that considers: (a) whether prejudice will result from the stay being lifted; (b) the balance of hardships facing the parties; and (c) the probability of success on the merits of the underlying action if the stay is lifted. *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992): *see also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).

28.     As set forth below in detail, the *Rexene* factors weigh heavily against granting the Movants stay relief.

**A.  Granting the Motion Would Frustrate the Purpose of the Automatic Stay and Prejudice the Debtors.**

29.     With respect to the first *Rexene* factor, granting stay relief will frustrate the purpose of the automatic stay and result in prejudice to the Debtors.

30.     The automatic stay is "one of the fundamental protections provided to debtors by the Bankruptcy Code." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D.

Del. Apr. 13, 2007) (citations omitted). "The automatic stay … gives the debtor a breathing spell … [and] permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *In re Adams*, 27 B.R. 582, 583 (D. Del. 1983) (quoting H.R.Rep.No. 595, 95th Cong., 1st Sess., reprinted in 1978, U.S. Code Cong. & Ad. News 6296-7).

31.     The purpose of the automatic stay provided in section 362 of the Bankruptcy Code is three-fold:  "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982)).

32.     The effect of stay relief on the administration of the estate is a primary factor considered by Courts in this district. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate.  Even slight interference . . . may be enough to preclude relief in the absence of a commensurate benefit.") (citing *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).  This is of even greater concern in situations where, if stay relief is granted, other creditors in similar positions could be encouraged to seek stay relief. *See In re DBSI, Inc.*, 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate").

33.     Here, allowing the Federal Court Litigation to proceed will interfere with the administration of the Debtors' estates by diverting the attention of the Debtors from their sale efforts during a critical period, by requiring the Debtors to expend limited resources to defend the Federal Court Litigation, and by encouraging similarly situated unsecured creditors to seek similar relief.

34.     The Debtors and their professionals are presently diligently working within the constraints of a less than three month period from filing to accomplish an asset sale, with swiftly approaching deadlines.  As such, granting the Motion would impose a hardship upon the Debtors by diverting personnel and financial resources away from what should rightfully be their primary focus – selling their assets for the benefit of all of their creditors.

35.     Movants' argument that Debtors will suffer no prejudice because other counsel has been handling the Federal Court Litigation (Motion at ¶ 24) ignores the enormous expenditure of time, personnel, and financial resources that would be required to respond to highly fact-intensive document and deposition requests in connection with Movants' alter ego and other claims.  Regardless of the counsel involved, critical employees of the Debtors – the very individuals who are integral to the Debtors' sale process – would need to divert attention away from that very time-sensitive process to address discovery and litigation issues.  Furthermore, responding to discovery and proceeding with a trial would have a real financial cost and hasten rather than "forestall the depletion of the debtor's assets.." *Borman*, 946 F.2d at 1036.

36.     Movants also contend that there will be "no great prejudice" because the "parties would be entitled to 'offset'" and that courts are "especially" amenable to requests for relief from a stay "in the context of 'offset' cases.'" (Motion at ¶ 23, 32.)  However, the cases

cited by Movants do not address circumstances that, like this one, involve two different lawsuits with different parties in different venues, one of which is in its infancy while the other is on the eve of trial.  In *In re United Air Lines, Inc.*, 438 F.3d 720, 734–35 (7th Cir. 2006), for example, the court, in affirming the trial court's grant of stay relief, did not address the standard for granting such relief and simply reviewed the lower court's decision for abuse of discretion. Furthermore, the court affirmed the grant of stay relief, in large part, based on the existence of setoff rights as between parties to the same case.  *Id.* at 735.  Here, entirely as a result of Movants' strategic and tactical litigation choices, there are no meaningful setoff rights as between the State and Federal Court Litigations because they involve different parties; most notably, the Debtors are parties to the Federal Court Litigation but not the State Court Litigation. *In re Semcrude, L.P.*, 399 B.R. 388 (Bankr. D. Del. 2009), *aff'd* 428 B.R. 590 (D. Del. 2010) ("In order to effect a setoff in bankruptcy, courts construing the [Bankruptcy] Code have long held that the debts to be offset must be *mutual*, prepetition debts.") (emphasis added).

37.    Cases cited by Movants in the Supplement concerning "offset" are equally inapposite and unpersuasive.  (*See* Supplement at 2-4).  Both *In re ABC Learning Centres Ltd.*, 445 B.R. 318 (Bankr. D. Del. 2010) and *Warrington Mkt. v. Fleming Cos.*, 2003 U.S. Dist. LEXIS 19845 (E.D. Pa. Oct. 9, 2003) involved application for stay relief and setoff **after** the non-debtor party had obtained a jury verdict in its favor.  In *In re ABC Learning Centres Ltd.*, there was a post-verdict lawsuit in which the non-debtor party was subsequently being sued by a debtor and, even then, the court only granted the lift stay motion for "the **limited** purposes of (1) allowing [non-debtor] to convert its verdict in [one l]itigation to a judgment and (2) preserving [non-debtor]'s right to assert the [j]udgment as a setoff in the [other l]itigation."  *Id.* at 323 (emphasis added).  Because a verdict had already been returned, the court examined prejudice

and hardship to the debtor solely from the perspective of the expense of an optional appeal and focused on the hardship the non-debtor would suffer if unable to reduce its verdict to judgment. *Id.* at 337-38.  By contrast here, defending the Federal Court Litigation would require extensive document and witness discovery on fact-intensive alter ego issues, among other things, and trial would be a considerably greater drain on the Debtors' resources than an appeal.  In addition, Movants have no verdict to reduce to judgment, placing them in no different position than that of any other unsecured creditor with a contingent claim.

38.    Similarly, *In re Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54 (3d Cir. 1990) and *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 738-39 & n.12 (Bankr. E.D. Pa. 2000) are also inapplicable as neither involved setoff in the context of a party seeking stay relief to proceed with a litigation.  However, both cases properly recognized that "to be 'mutual' [for purposes of setoff] … the debts must be in the same right and between the same parties, standing in the same capacity."  *In re Bevill*, 896 F.2d at 59; *see also In re Nuclear Imaging Sys.* 260 B.R. at 733.  As discussed *supra* at ¶ 36, the claims asserted in the State Court Litigation and Federal Court Litigation lack mutuality.

39.    In addition to prejudice to the Debtors under the first *Rexene* factor, this Court has considered "general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay."  *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007).  In particular, potential prejudice to the interests of other creditors weighs against stay relief.  Indeed, if the Court denies Movants the stay relief they seek, they will be in no different position than that of any other unsecured creditor with contingent claims against the Debtors' estates; however, if the Court grants the Motion, Movants will be catapulted ahead of other such creditors and be able to proceed to discovery, trial, and even final judgment on their claims

outside of the bankruptcy process, depleting estate assets along the way. Such a result would be contrary to the Bankruptcy Code's goal of similar treatment for similar claims. *See In re U.S. Physicians, Inc.*, 236 B.R. 593, 601 (Bankr. E.D. Pa. 1999) ("[A]llowing litigation by, as well as any recovery to, an unsecured creditor would tend to significantly reduce assets of the estate and undermine the ability of the secured creditors to satisfy the debts owed to them. Relief for unsecured creditors is therefore rarely granted in bankruptcy cases under 11 U.S.C. § 362(d).").

> **B. Any Harm Suffered By The Movants as a Result of Maintaining the Automatic Stay Result From Their Own Strategic Choices And Would Not Be Alleviated By Stay Relief.**

40. The second *Rexene* factor – whether maintaining the stay will cause any hardship to the non-bankrupt party and whether this hardship is greater than the resulting prejudice to the debtor, also weighs against granting stay relief.

41. The only hardship to Movants if relief from the stay is not granted is that "Movants could suffer liability … while the Movants would be prohibited from obtaining a judgment in the [Federal] Court Litigation." (*See* Motion at ¶ 25).

42. Not only is this hardship purely the result of strategic decisions made by Movants, but relief from the automatic stay will not remedy the hardship. As a result, it does not outweigh the hardship to the Debtors if stay relief is granted.

43. The State Court Litigation preceded the Federal Court Litigation and Movants made the strategic choice not to file counterclaims in the State Court Litigation and instead to pursue a new, separate litigation. (*See* Transcript from the July 19, 2012 Scheduling Hearing with this Court ("**July 19 Hearing**") at pg. 12). Any hardship resulting from timing

differences between the litigations, and claims by and against the Movants, flow directly from that strategic decision, not the automatic stay. [7]

44.      Significantly, the two litigations have always proceeded on different schedules. As discussed above, even if the Debtors had never filed for bankruptcy, the State Court Litigation (and a potential judgment against the Movants) would have been completed many months before a trial in the Federal Court Litigation would even begin. As a result, even if relief from the stay is granted, the hardship identified by the Movants will still exist – there will be a judgment in the State Court Litigation well before liability in the Federal Court Litigation is settled, and no "offset" between the two will make any difference in the State Court Litigation. Conversely, whether or not the stay is lifted, assuming for the sake of argument that mutuality existed, the Movants would still be able to offset amounts owed by them pursuant to a judgment in the State Court Litigation against any future award they obtain in the Federal Court Litigation.

45.      The Movants also made the strategic decision not to seek stay relief following the Suggestion of Bankruptcy in the Federal Court Litigation and before the July 16 Order was issued. Consequently, the Motion effectively asks this Court to overrule the Federal Court, which was fully capable of assessing whether the automatic stay should be applied. "The Third Circuit has made clear that 'whether the stay applies to litigation otherwise within the jurisdiction of a district court . . . is an issue of law within the competence of both the [district court] . . . and the bankruptcy court . . . .'" *United States v. Delfasco, Inc.*, 409 B.R. 704, 708 (D. Del. 2009) (quoting *Brock v. Morysville Body Works*, 829 F.2d 383, 387 (3d Cir. 1987)); *see also*

---

[7]      In the Supplement, Movants cite to *Hydramar, Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. LEXIS 24828 (E.D. Pa. May 30, 1986) to support their argument for stay relief to allow a counterclaim. (*See* Supplement at 3.) However, *Hydramar, Inc.* involved a debtor seeking to use the automatic stay to prevent, via motion to dismiss, a **compulsory counterclaim in the same litigation**. *Id.* at *12-14. Here, Movants made the strategic decision not to file counterclaims in the State Court Litigation and allowing that conduct to now provide the basis for stay relief would reward their gamesmanship.

*United States v. Delta Distribs. Co.*, 1996 U.S. Dist. LEXIS 12062, at *2 (S.D. W. Va. June 21, 1996) (stating that because th[e district court']s jurisdiction attached first in time, it is superior").[8]

46.    In any event, even if Movants had identified legitimate hardships, these "hardships must be weighed against" the imposition that relief from the stay would have on the Debtors.  *In re Fairchild Corp.*, 2009 Bankr. LEXIS 3815, at *6 (Bankr. D. Del. Dec. 1, 2009) (denying stay relief after considering that allowing litigation to continue would require use of a debtor's "scarce human resources," including monitoring the "action and direct[ing] counsel").  As discussed *supra* at ¶ 35, if the Federal Court Litigation is allowed to proceed, Debtors will necessarily need to shift resources from the sales process to litigation issues.  No evidence adduced by Movants could overcome the substantial hardships the Debtors will undoubtedly face.

47.    Moreover, courts regularly deny stay relief when prepetition actions are in their infancy.  *See In re Fairchild Corp.*, 2009 Bankr. LEXIS 3815, at *28 (denying stay relief as to continuation of an action against debtors when the state court action had not progressed significantly and the debtors' cases were at a critical stage); *Arnold Dev., Inc. v. Collins (In re Collins)*, 118 B.R. 35, 38 (Bankr. D. Md. 1990) (denying stay relief where "the case in state court has not proceeded to trial and does not appear to be ready to do so.").

---

[8]    While the Movants spend a significant portion of the Supplement addressing the powers of this Court, the cases do not actually address the factual scenario at issue here.  *Siskin v. Complete Aircraft Servs. (In re Siskin)*, 258 B.R. 554 (Bankr. E.D.N.Y. 2001) actually undercuts Movants' procedural argument.  There, the court held that "the Rooker-Feldman doctrine preclude[d the bankruptcy court] from upsetting a New York Supreme Court judgment which determined that the automatic stay did not apply."  *Id.* at 557.  Likewise, *Am. College of Dentists Found., Inc. v. Dorris Mktg. Group, Inc. (In re Dorris Mktg. Group, Inc.)*, 2005 Bankr. LEXIS 282 (Bankr. E.D. Va. Jan. 7, 2005) involved a motion for stay relief to seek confirmation of a pre-petition arbitration award.  *Id.* at 1.  The court in that instance was asked to rule on a motion for stay relief only after "debtor filed a suggestion of bankruptcy in the district court" and not as here, where the District Court ordered, upon a motion, stay relief applied to all parties, included Debtor RG Steel Wheeling.

48.    It is uncontroverted that as of the Petition Date, the Federal Court Litigation was in its infancy – fact discovery had not been completed, depositions and expert discovery had not started, and trial was not scheduled until 2013, at the earliest.

### C.    Movants Fail to Satisfy Their Burden to Produce Any Compelling Evidence Concerning Their Likelihood of Prevailing on the Merits in the Federal Court Litigation.

49.    The final factor of the *Rexene* analysis, the movant's probability of success on the merits, like the first two factors, weighs heavily against granting stay relief because the Motion is devoid of any showing of probable success on the merits.

50.    While Movants need only to show "a slight probability of success on the merits," this factor can not support relief from the stay when there is "no evidence before the Court regarding the probability of success on the merits." *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 129 (Bankr. D. Del. 2009) (citation omitted); *see also In re Fairchild Corp.*, 2009 Bankr. LEXIS 3815.

51.    Here, the Movants introduce no evidence and only cite to a decision that found the complaint survived a motion to dismiss. *See* Motion at ¶ 27 n.2. Significantly, the grounds for dismissal in the cited motion to dismiss was lack of diversity and the court's decision did not address the merits of Movants' claims in the Federal Court Litigation. *Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

52.    Movants have not cited other decisions denying motions to dismiss their claims and for good reason. In one such decision, the Federal Court noted that "Plaintiffs will have a tall order to fill in proving the merits of their alter ego theory of liability." *Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC*, 2012 U.S. Dist. LEXIS 45231, at *47 (S.D. W. Va. Mar. 30, 2012). Given the complete lack of compelling evidence concerning the Movants' likelihood of success on the merits, this factor weighs heavily against granting stay relief.

- 17 -

II.    **THIS COURT'S ABILITY TO MAINTAIN THE AUTOMATIC STAY IS NOT LIMITED BY THE STATE COURT LITIGATION**

53.    Contrary to Movants' arguments, the existence of the State Court Litigation does not impact this Court's ability to deny relief from the automatic stay.  (*See* Motion at ¶¶ 29-38.)

54.    First, and foremost, no Debtor is a party to the State Court Litigation. Thus, this is not, as Movants argue, a case of RG Steel Wheeling using the automatic stay as both a sword and a shield.  (*See* Motion at ¶ 33).  Rather, the automatic stay has been rightly applied in the Federal Court Litigation as it was intended, in order to provide "a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).

55.    Second, the Debtors are not judicially estopped from arguing for enforcement of the automatic stay in the Federal Court Litigation.  (*See* Motion at ¶¶ 34-38).  As Movants concede (*See* Motion at ¶ 38), "the determinative factor is whether the [party] intentionally misled the court to gain unfair advantage."  *Tenneco Chemicals v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1983) (holding that judicial estoppel did not apply because there was no evidence that party intentionally misled the court).  Debtor RG Steel Wheeling and Mountain State Carbon are not in fact alter egos and Debtors have never conceded, directly or indirectly, that they are.  Indeed, the Motion to Enforce Automatic Stay only repeated *Movants*' unsubstantiated allegations of an alter ego relationship between Mountain State Carbon and RG Steel Wheeling to illustrate why the litigation of the Federal Court Litigation would be a very time-intensive and intrusive distraction from the diligent prosecution and administration of this bankruptcy proceeding.  (*See* Ex. E to the Motion at 4-7.) To be clear, the Debtors have consistently disputed that they are alter egos of Mountain State

Carbon or that it is an alter ego of them.  Therefore, Debtors are not judicially estopped from arguing that the automatic stay remain in effect.[9]

56.     Third, even if a Debtor was a party to the State Court Litigation, "the automatic stay does not apply to actions brought by the debtor. Rather, the automatic stay only applies to actions brought against the debtor." *Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 303 B.R. 299, 303 (D. Del. 2003) (citing *Rhone-Poulenc Surfactants and Specialties, L.P. v. C.I.R.*, 249 F.3d 175, 180 (3d Cir. 2001).

57.     The State Court Litigation and Federal Court Litigation are separate and distinct actions involving separate and distinct claims and damages, and different parties, and therefore must be considered independently in analyzing whether the automatic stay applies. "All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *Maritime Elec.*, 959 F.2d at 1204-05.

58.     Therefore, the existence of the State Court Litigation should not affect this Court's analysis or deprive the Debtors of the benefit of the automatic stay.

---

[9]     In fact, as discussed *supra* at FN4, Debtor RG Steel Wheeling and Mountain State Carbon are actively engaged in litigation against each other.  The existence of such litigation belies any claim that Debtor RG Steel Wheeling and Mountain State Carbon are alter egos.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court deny the Motion in

its entirety and grant such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      July 24, 2012

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                    */s/ Erin R. Fay*

                    Robert J. Dehney (No. 3578)
                    Erin R. Fay (No. 5268)
                    1201 North Market Street
                    P. O. Box 1347
                    Wilmington, DE  19899-1347
                    (302) 658-9200
                    rdehney@mnat.com
                    efay@mnat.com

                        -and-

                    WILLKIE FARR & GALLAGHER LLP

                    Matthew A. Feldman
                    James C. Dugan
                    Joshua M. Troy
                    787 Seventh Avenue
                    New York, New York 10019
                    (212) 728-8000
                    (212) 728-8111 (Fax)
                    mfeldman@willkie.com
                    jdugan@willkie.com
                    jtroy@willkie.com

                    *Co-Counsel to the Debtors and*
                    *Debtors in Possession*

                    *8116551*
                    6110490.1