# EXHIBIT C

## SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT

This Second Amendment to Asset Purchase Agreement (this "Amendment"), dated as of September 21, 2012, is made and entered into by and among RG Steel Warren, LLC, a Delaware limited liability company ("Seller"), CJ Betters Enterprises, Inc., a Pennsylvania corporation ("Purchaser 1") and BDM Warren Steel Holdings, LLC, an Ohio limited liability company ("Purchaser 2" and together with Purchaser 1, "Purchaser"). Capitalized terms used in this Amendment but not otherwise defined herein shall have the respective meanings ascribed to them in the Purchase Agreement (as defined below).

### RECITALS:

WHEREAS, Seller and Purchaser entered into that certain Asset Purchase Agreement, dated as of August 7, 2012, and entered into an amendment to the Purchase Agreement on September 6, 2012 (as amended, the "Purchase Agreement");

WHEREAS, the parties to the Purchase Agreement desire to further amend the Purchase Agreement pursuant to Section 11.3 thereof;

WHEREAS, Seller and Purchaser have agreed to share certain royalties received and to be received by Seller from Phoenix Services LLC and/or Metal Services LLC in consideration for the processing and removal of certain slag on the Owned Real Property from August 7, 2012 through the Closing Date; and

WHEREAS, in consideration for Purchaser's agreement to pay all Real Estate Taxes (as hereinafter defined) and to provide Purchaser its share of royalties received to date, Seller has agreed to reduce the Purchase Price as set forth herein.

NOW THEREFORE, in consideration of the foregoing and the mutual covenants, and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Article I.    Article 1 of the Purchase Agreement is hereby amended by adding the following Section 1.7 at the end thereof:

> "1.7    Liens.    (a) Seller hereby transfers to Purchaser, and Purchaser hereby assumes, the claims and liabilities related to the liens set forth on Exhibit A attached hereto, and all of Seller's defenses related thereto (but not including, for the avoidance of doubt, any causes of action Seller may have under article 5 of the Bankruptcy Code against the holders of such claims, liabilities and liens).
>
> (b) As of the date hereof, to the Seller's Knowledge, there are no liens against the Owned Real Property other than claims and notices of liens that have been filed with the Bankruptcy Court or those that have been set forth in the title commitment issued by Fidelity National Title

8430621.6

Insurance Company, dated August 17, 2012, reference number 508120105."

2.      Section 2.1. Section 2.1 of the Purchase Agreement is hereby amended by deleting it in its entirety and inserting the following in lieu thereof:

"2.1   Consideration.   The aggregate purchase price for the purchase of the Purchased Assets and the assumption of the Assumed Liabilities (the "Purchase Price") is (i) \$16,000,000 *minus* (ii) \$505,306.14.     The Purchase Price shall be paid on the Closing Date in accordance with Section 3.3(a). Notwithstanding anything to the contrary contained herein, each of Purchaser 1 and Purchaser 2 shall be jointly and severally liable for all obligations under this Agreement, including the payment of the Purchase Price."

3.      Article 7. Article 7 of the Purchase Agreement is hereby amended by adding the following Sections 7.17, 7.18 and 7.19 at the end thereof:

"7.17   Release of Claims.   "As of the Closing Date, Purchaser forever, irrevocably, and unconditionally releases Seller and its affiliates, successors and assigns from any and all claims arising out of, involving or related to any slag on the Owned Real Property removed or processed by Metal Services LLC or Phoenix Services LLC (collectively, "Phoenix"), or any of their affiliates.

7.18   Transition Matters.

(a) Seller agrees to retain and continue to pay the employees that operate and supervise the operation of the boiler house at the Facility until Purchaser can retain such employees on its payroll (but in no event for greater than fifteen (15) days). Purchaser shall promptly reimburse Seller for all costs and expenses (including, without limitation, all salaries, benefits and insurance costs) related to retaining such employees from the Closing Date through the date of the transition of such employees upon receipt of notice of such amounts from Seller.

(b) Seller agrees to maintain utility services until Purchaser can obtain new service arrangements (but in no event for greater than fifteen (15) days) (the "Utility Termination Date"). Purchaser shall promptly reimburse Seller for all utility costs, fees and expenses from the Closing Date through the date of that Seller terminates such services upon receipt of notice of such amounts from Seller.

7.19   Prepaid Gas Amounts.   In the event that the credit of \$87,897.52 reflected in the flow of funds memorandum, dated September 21, 2012, is either less than or greater than the actual expenses incurred in connection with the utility services provided through the Utility Termination Date to

- 2 -

8430621.6

Seller, on behalf of Purchaser, than the parties shall cooperate in good faith to reconcile and resolve any amounts that may be owed either to Seller or Purchaser within five (5) days of receipt by Seller of a final invoice on account of such utility expenses.

4.      Article 10. Article 10 of the Purchase Agreement is hereby amended by adding the following subsection (c) at the end thereof:

"(c) All water and sewer charges and payments and real and personal property taxes (whether at current or new assessment rates) attributable to the Owned Real Property with respect to any periods, whether before or after the Closing Date (all of the foregoing, "Real Estate Taxes", which shall constitute an Assumed Liability) shall be borne and timely paid by Purchaser, and Purchaser shall indemnify, defend (with counsel reasonably satisfactory to Seller), protect, save and hold harmless Seller and its Affiliates from and against any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any Real Estate Taxes."

5.      Section 11.1. Section 11.1 of the Purchase Agreement is hereby amended by deleting it in its entirety and inserting the following in lieu thereof:

"11.1   Payment of Expenses.    Except as otherwise provided in this Agreement and whether or not the transactions contemplated hereby are consummated, each party hereto shall bear its own costs and expenses (including investment advisory and legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby; provided, however, that (a) all Transfer Taxes (as well as the costs and expenses incurred in connection with the preparation and filing of all Tax Returns with respect thereto) shall be borne solely by Purchaser, (b) all filing fees (but not the costs and expenses of preparing any applicable filings) in connection with any required filings or submissions under any competition Law shall be borne by Purchaser and (c) all Real Estate Taxes (as well as the costs and expenses incurred in connection with the preparation and filing of all Tax Returns with respect thereto) shall be borne solely by Purchaser."

6.      Full Force and Effect. Except as expressly modified by this Amendment, all of the terms, covenants, agreements, conditions and other provisions of the Purchase Agreement shall remain in full force and effect in accordance with their respective terms. This Amendment shall not constitute an amendment or waiver of any provision of the Purchase Agreement except as expressly set forth herein. Upon the execution and delivery hereof, the Purchase Agreement shall thereupon be deemed to be amended and supplemented as hereinabove set forth as fully and with the same effect as if the amendments and supplements made hereby were originally set forth in the Purchase Agreement, and this Amendment and the Purchase Agreement shall henceforth be read, taken and construed as one and the same instrument, but such amendments and supplements shall not operate so as to render invalid or improper any action heretofore taken

- 3 -

8430621.6

under the Purchase Agreement. In the event of any inconsistency between this Amendment and the Purchase Agreement with respect to the matters set forth herein, this Amendment shall take precedence.

7.      Governing Law. THIS AMENDMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH FEDERAL BANKRUPTCY LAW, TO THE EXTENT APPLICABLE, AND WHERE STATE LAW IS IMPLICATED, THE LAWS OF THE STATE OF DELAWARE SHALL GOVERN, WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF TO THE EXTENT THAT THE LAW OF ANOTHER JURISDICTION WOULD APPLY AS A RESULT THEREOF, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.

8.      Counterparts. This Amendment may be executed in several counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument.

[remainder of page intentionally left blank]

- 4 -

IN WITNESS WHEREOF, the parties have duly executed this Amendment as of the date first above written.

**SELLER**

RG STEEL WARREN, LLC

By: _Richard L. Caruso_
Name: RICHARD L CARUSO
Title: CFO

**PURCHASER**

CJ BETTERS ENTERPRISES, INC.

By: _____

Name: Charles J. Betters
Title: President

BDM WARREN STEEL HOLDINGS LLC

By: _____

Name: Charles J. Betters
Title: Manager

## Exhibit A

1. Plibrico Company, LLC ($100,770.97, plus interest and costs, filed May 29, 2012) (#25)

2. S.E.T., Inc. ($115,052.28, plus interest and costs, filed June 13, 2012) (#27)

3. McCarl's Inc. ($344,711.85, plus interest and costs, filed June 15, 2012) (#28)

4. Diamond Steel Construction Company – Youngstown ($1,625,009.02, plus interest and costs, filed July 2, 2012) (#29

5. Stevens Engineers and Constructors, Inc. ($526,012.15, plus interest and costs, filed July 6, 2012) (#30)

6. Alcon Mechanical, Inc. ($137,062.35, plus interest and costs, filed July 31, 2012) (#31)