IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WP Steel Venture, LLC., *et al.*,<br><br>                      Debtors. | Chapter 11<br><br>Case No. 12-11661 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 22, 2013 at 2:00 p.m. (ET)**<br>**Objection Deadline: May 10, 2013 at 4:00 p.m. (ET)**<br><br>Ref. No. 2886 |

### OBJECTION OF RICHARD H. CARTER, GREGG M. JOHNSTON, CLARENCE E. NEWHOUSE AND JOHN P. McCONEGLY, JR. TO DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 1107 AND 1108 OF THE BANKRUPTCY CODE FOR AN ORDER CONFIRMING RICHARD D. CARUSO AS A PERSON AUTHORIZED TO ACT ON BEHALF OF RG STEEL WHEELING, LLC

Richard H. Carter, Gregg M. Johnston, Clarence E. Newhouse and John P. McConegly, Jr., (the "**Beneficiaries**"), by and through their undersigned counsel, hereby file this objection to the *Debtors' Motion Pursuant to Sections 105(a), 1107 and 1108 of the Bankruptcy Code for an Order Confirming Richard D. Caruso as a Person Authorized to Act on Behalf of RG Steel Wheeling, LLC* (the "**Motion**"), and in support thereof states the following:

### PRELIMINARY STATEMENT

The Motion should be denied for several reasons. First, the Motion is procedurally flawed. If the proposed order on the Motion is entered, the Beneficiaries would be irreparably harmed should the Debtors use the Trust's assets to satisfy creditor claims. While the Debtors claim that they are "not asking that the Court interpret the terms of the Trust Agreement to determine the proper disposition of the assets held in trust by the Trustee," Motion at ¶ 10, important questions of fact and law exist regarding the Trust and must be addressed before this Court consider the relief requested in the Motion—namely, confirmation "that the CFO of the Debtors is authorized to act on behalf of the Company." Motion at ¶ 10. Accordingly, this Court

should cause the Debtors to commence an adversary proceeding in order to properly determine the rights or entitlement to the corpus of the Trust.

Second, none of the Debtors were the settlor of the Trust. A predecessor in interest was the settlor of the Trust. That predecessor in interest created and fully funded the Trust before it filed for bankruptcy in 2000. No claims were made against the Trust during that bankruptcy proceeding. When the reorganized predecessor emerged from bankruptcy, it was not the same settlor of the Trust since all claims were discharged pursuant to the Confirmation Order (defined below). No funds of the reorganized entity or any successor in interest were contributed to the Trust. Since none of the Debtors were the settlor and contributed no funds they have no authority to act in any respect with the Trust.

Finally, because the Trust contains non-alienability language, the Debtors cannot, under any theory, access the Trust funds to pay "senior creditors" or enhance their recovery. The plain language of the Trust permits, under appropriate circumstances not applicable here, that only general creditors have rights to the Trust. The Trust excludes secured creditors from any recovery and prohibits anyone from creating a security interest in secured creditors.

## BACKGROUND

### A.     The Debtors

1.     On May 31, 2012 (the "**Petition Date**"), each of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner. On June 13, 2012, the Court appointed the Official Committee of Unsecured Creditors (the "**Committee**").

## B. The Trust

4. On December 1, 1990, that certain trust agreement between Wheeling-Pittsburgh Steel Corporation ("**Wheeling-Pitt**") and Pittsburgh National Bank dated December 1, 1990 (the "**Trust**") was created. The Trust is annexed to the Debtors' Motion as Exhibit B. The Beneficiaries are participant–beneficiaries under the Trust.

5. Shortly after the Trust's creation, Wheeling-Pitt, as settlor, began funding the Trust by purchasing life insurance policies on the lives of the Beneficiaries. On or about December 1, 1994, the Trust had been fully funded by Wheeling-Pitt. Pursuant to Article 2 of the Trust, Wheeling-Pitt, as settlor, had the right to terminate the Trust only in the limited case of its insolvency and then the Trust could only be terminated for the benefit of its general unsecured creditors at the time of its insolvency.

## C. The Wheeling-Pitt Bankruptcy Proceeding

6. On November 16, 2000, Wheeling-Pitt filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. Wheeling-Pitt did not terminate the Trust, liquidate its corpus or take any other action respecting the Trust during its bankruptcy case.

7. On June 18, 2003, the United States Bankruptcy Court for the Northern District of Ohio entered an order confirming Wheeling-Pittsburgh Steel Corporation's Third Amended Joint

Plan of Reorganization (the "**Confirmation Order**"), a copy of which is attached as **Exhibit A**. Upon entry of the Confirmation Order, Wheeling-Pitt emerged as a reorganized entity and with all claims that were made or could have been made against Wheeling-Pitt being discharged pursuant to the Confirmation Order. *See* Confirmation Order at ¶ 27.

8. The Trust emerged from the bankruptcy case divorced of the reorganized Wheeling-Pitt and its successors in interest right to terminate the trust in the case of insolvency since all claims of the "general creditors" of Wheeling-Pitt were discharged under the Confirmation Order. *Id.*

**D.    Events Leading Up to the Debtors' Motion**

9. In December 2012, the Beneficiaries learned that PNC Bank, as successor to Pittsburgh National Bank, the original named Trustee of the Trust, planned to "freeze" the assets comprising the Trust as a result of RG Steel Wheeling, LLC ("**RG Steel Wheeling**") filing bankruptcy.

10. On February 22, 2013, counsel for the Beneficiaries wrote PNC Bank, advised them of the Beneficiaries position vis-à-vis the Trust and demanded that PNC Bank take no action to terminate the Trust or honor any request by RG Steel Wheeling to do so. Counsel received a letter dated March 19, 2013, from PNC Bank stating that they had received a request from Mr. Caruso to deliver the Trust assets to RG Steel Wheeling, but that PNC Bank had not received an appropriate direction that would comply with the terms of the Trust.

## ARGUMENT

11.     RG Steel Wheeling contends that, because it is insolvent, pursuant to Article 2.2 of the Trust it is entitled to use the assets of the Trust to satisfy certain creditor claims. Motion at ¶¶ 5; 10. For the following reasons, the Motion should be denied.

### I.     The Relief Requested in the Motion Can Only be Granted by Adversary Proceeding.

12.     The Debtors seek a declaration from this Court "confirming that the CFO of the Debtors is authorized to act on behalf of the Company," Motion at ¶ 10, which, by necessity, requires this Court to determine the Debtors' interests in the Trust. While the Debtors claim that they are "not asking that the Court interpret the terms of the Trust Agreement to determine the proper disposition of the assets held in trust by the Trustee, Motion at ¶ 2, they are seeking declaratory relief as to the authority of their CFO "to act on behalf of the Company" with respect to the Trust Funds. *Id.* Such declaratory relief as to the interests of property of the estate can only be achieved by adversary proceeding pursuant to Bankruptcy Rule 7001. FED. R. BANKR. P. 7001(2) & (10).

13.     The Third Circuit Court of Appeals has held that an adversary proceeding to determine a debtor's interest in property of the estate is "mandatory and establishes a right to specific process that must be afforded." *In re Mansaray-Ruffin*, 530 F.3d 230, 238 (3d Cir. 2008); *see also* Fed. R. Bankr. Proc. 7001(2). The party who seeks a determination of its interest in estate property bears the burden of commencing such an adversary proceeding. *See, e.g., In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008) (holding plan provision treating lien as invalid could not be deemed final where debtor failed to pursue invalidity of lien through adversary proceeding); *In re McKay*, 732 F.2d 44 (3d Cir. 1984) (holding debtors bore burden of commencing adversary proceeding to determine validity, priority, or extent of lien that debtors

had attempted to avoid pursuant to provision in debtors' Chapter 13 plans); *In re Whitehall Jewelers Holdings, Inc.*, 2008 WL 2951974 (Bankr. D. Del. July 28, 2008) (holding debtors had to commence adversary proceeding regarding whether consigned goods constituted property of the estate because determining validity, priority, or extent of liens was at issue).

14. Bankruptcy Rule 7003 further provides that an adversary proceeding "is commenced by filing a *complaint* with the court." FED. R. BANKR. P. 7003 (adopting FED. R. CIV. P. 3) (emphasis added). While the Motion seeks to invoke this Court's equitable authority pursuant to "sections 105(a), 1107 and 1108," Motion at ¶ 9, the Beneficiaries respectfully submit that this Court cannot issue any such order without totally disregarding even the most basic procedural and substantive requirements for the commencement of adversary proceedings, which includes Beneficiaries' rights to have discovery and an evidentiary hearing an based on facts of record. Moreover, the Beneficiaries submit that without the Debtors providing evidence in a proper adversary proceeding, the Court cannot possibly determine on an expedited basis whether "the CFO of the Debtors is authorized to act on behalf of the Company." Motion at ¶ 10.

15. Courts that have considered whether to deny a motion filed under Bankruptcy Rule 9014 where a complaint under Bankruptcy Rule 7001 should have been filed appear to fall into two camps. On the one hand, some courts take the position that any motion that should have been filed as a complaint under Bankruptcy Rule 7001 should be denied as procedurally defective. *See In re Perkins*, 902 F.2d 1254 (7th Cir. 1990) (turnover proceeding commenced by motion rather than adversary proceeding was dismissed); *see also In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999) (stating in dicta that as general proposition, motion filed under Bankruptcy Rule 9014 seeking injunctive relief must be denied because Bankruptcy

Rule 7001 requires commencement of adversary proceeding to seek injunctive relief); *In re Beard*, 112 B.R. 951 (Bankr. N.D. Ind. 1990) ("If an adversary proceeding is required to resolve the disputed rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed.") (*citing In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1336-38 (9th Cir. 1985). By this analysis, the Motion should be denied.

16. On the other hand, some courts conclude that where either (i) the right to proceed by adversary proceeding is waived by the adverse party or (ii) the due process rights of the affected parties have been adequately presented such that no prejudice has arisen, the parties will be allowed to proceed by way of motion. *See, e.g., In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (parties may proceed by motion instead of complaint if parties expressly agree to waive requirements of formal adversary proceeding); *In re Swizzlestick, L.L.C.*, 253 B.R. 264 (Bankr. W.D. Mo. 2000) (party may proceed by motion instead of complaint where rights of affected parties have been adequately represented so no prejudice has arisen); *In re Alliance Properties, Inc.*, 104 B.R. 306 (Bankr. S.D. Cal. 1989) (finding that court had authority to consider dispute by way of motion, since debtor and adverse party consented to procedure and were provided full and fair opportunity to conduct discovery and prepare and present their cases).

17. Here, the Beneficiaries have not waived their rights to proceed by way of adversary proceeding. Accordingly, the Motion should be denied on these grounds alone.

**II. Because RG Steel Wheeling is not the Settlor under the Trust, it Has No Authority to Act.**

18. Since neither the reorganized Wheeling-Pitt, nor its successors in interest contributed any additional funds to the Trust, RG Steel Wheeling cannot now terminate the Trust for the benefit of its current general creditors.

19. Stated differently, the Trust, here, is no different than any other revocable trust that becomes irrevocable by operation of law upon a specified event of irrevocability, most commonly the death or incapacity of the settlor. *See* Myron Kove, George Gleason Bogert & George Taylor Bogert *The Law of Trusts and Trustees* § 264.5 (West 2012) (explaining that upon settlor's death, a revocable trust becomes irrevocable by operation of law). *See also The Law of Trusts and Trustees* § 233 (explaining that upon incapacity of settlor, revocable trust can become irrevocable).

20. Pursuant to Pennsylvania law, the three interested parties in a trust are (1) the settlor, which is a person or entity who creates or contributes property to a trust; (2) the trustee, who is the legal owner of trust property and includes an original, additional or successor trustee; and (3) the beneficiary, who is the equitable owner of trust property with an actual present or future beneficial interest in the subject matter of the trust, vested or contingent. 20 PA.Cons. Stat. § 7703.

21. Although it is unquestionable that PNC Bank, as successor to Pittsburgh National Bank the original named trustee, is the trustee of the Trust and that the Beneficiaries are beneficiaries of the Trust, RG Steel Wheeling is not the settlor under the Trust.

22. The entry of the Confirmation Order was the operative event of irrevocability for the Trust. At that moment, the settlor of the Trust, Wheeling-Pittsburgh Steel Corporation, in effect "died" and by operation of law, the Trust became irrevocable. A reorganized Wheeling-Pitt emerged under that Confirmation Order; but, the reorganized Wheeling-Pitt was not the same settlor of the Trust because all of the claims and liabilities of the predecessor Wheeling-Pitt had been discharged. Consequently, the Beneficiaries interests in the Trust were no longer

contingent, but fully and irrevocably vested since the Trust assets could no longer be used to satisfy the claims of the predecessor Wheeling-Pitt since those claims had been discharged.

### III. Trust Funds Cannot Be Used As RG Steel Wheeling Requests.

23.     Even if RG Steel Wheeling had a right to terminate the Trust and take control of the assets in Trust (which the Beneficiaries explicitly deny that any such right exists) RG Steel Wheeling cannot use the assets to "either make distributions to the Company's most senior creditors or to maximize distributions to creditors by helping to fund these cases and monetization of the Debtors' remaining assets." Motion at ¶ 12.

24.     Article 2.1 of the Trust precludes the granting of security interests in the Trust:

> 2.1    No Security Interest. It is the intent of the parties hereto that the Trust Fund is and shall remain at all times subject to the claims of the Company's general creditors. Accordingly, the Company shall not create a security interest in the Trust Fund in favor of any Participant or Beneficiary of the Plans or any creditor.

25.     The Trust is what is commonly referred to as a Rabbi trust, which is a form of nonqualified deferred compensation plan. If a Rabbi trust contains non-alienability language respecting general creditors (i.e., that the Rabbi trust shall remain subject to the claims of general creditors of the settlor company and that the settlor company shall not create a security interest in the Rabbi trust in favor of any creditor), then the assets comprising the trust cannot be subject to the claims of secured creditors.

26.     This exact tactic was specifically addressed and rejected by Judge Posner of the Seventh Circuit. *See Bank of America, N.A. v. Moglia*, 330 F.3d 942, 948 (7th Cir. 2003). In *Moglia*, Judge Posner found that the language of the rabbi trust at issue could not be more clear, in that it conferred rights on general creditors and barred the creation of any security inters in the corpus. *Id.* Consequently, secured creditors had no claim to the trust corpus. *Id.*

27.     Since the Trust has non-alienability language, under *Moglia*, the Debtors cannot use, through the exercise of the senior creditors' liens or otherwise, the Trust's assets to "either make distributions to the Company's most senior creditors or to maximize distributions to creditors by helping to fund these cases and monetization of the Debtors' remaining assets." Motion at ¶ 12.

28.     The practical effect of RG Steel Wheeling's requested relief to use the assets of the Trust "to either make distributions to [RG Steel Wheeling's] most senior creditors or to maximize distributions to creditors by helping to fund these cases and monetization of the Debtors' remaining assets," Motion at ¶ 14, is to impermissibly sidestep *Moglia*. In the event that there is no distribution to pre-petition unsecured creditors in this case, the effect of the relief requested would be to enhance the secured creditors' recovery by deferring the costs of administering the bankruptcy estates. Such an outcome is prohibited under *Moglia*.

## CONCLUSION

For the foregoing reasons, the Beneficiaries respectfully request that this Court (i) enter an order denying the Motion; (ii) award Beneficiaries attorneys' fees and cost, and; (iii) grant such other and further relief as this Court deems just and proper.

Dated:  May 10, 2013
       Wilmington, Delaware

                            **COUSINS CHIPMAN & BROWN, LLP**

                            */s/ Scott D. Cousins*
                            Scott D. Cousins (No. 3079)
                            Rachel S. London (No. 5836)
                            1007 North Orange Street, Suite 1110
                            Wilmington, Delaware 19801
                            Telephone:     (302) 295-0191
                            Facsimile:      (302) 295-0199
                            Email:           cousins@ccbllp.com
                                                  london@ccbllp.com

-and-

Arch W. Riley, Jr.
Dennis J. McGlaughlin, II
**SPILMAN THOMAS & BATTLE, PLLC**
1233 Main Street, Suite 4000
Post Office Box 831
Wheeling, West Virginia 26003-8731
Telephone:       (304) 230-6955

*Counsel for Richard H. Carter, Gregg M. Johnston, Clarence E. Newhouse and John P. McConegly, Jr.*