**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 12-11661 (KJC) |
| WP STEEL VENTURE, LLC, *et al.*, | : | |
| | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | |
| Debtors. | : | |
| | : | |
----------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS, | : | |
| | : | Adv. Proc. No.  13-50918 (KJC) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CERBERUS BUSINESS FINANCE, LLC, as agent | : | |
| and lender under that certain credit agreement, dated | : | |
| January 17, 2012, and THE RENCO GROUP, INC., | : | |
| as lender under those certain Subordinated | : | |
| Promissory Notes, dated as of July 5, 2011 and | : | |
| December 9, 2011, | : | |
| | : | |
| Defendants. | : | |
----------------------------------------------------------x

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RENCO GROUP, INC.'S MOTION TO DISMISS COMMITTEE'S COMPLAINT FOR <u>DECLARATORY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.      THE COMPLAINT FAILS TO ALLEGE THAT CERBERUS AND RENCO
        DID NOT SUFFER DIMINUTION IN VALUE FROM THE CONSUMPTION
        OF THEIR CASH COLLATERAL ............................................................................ 4

II.     THE COMPLAINT IS NOT RIPE FOR ADJUDICATION ........................................... 6

        A.      Case Or Controversy ................................................................................... 7

        B.      The Court Should Decline To Exercise Its Discretion To Issue A
                Declaratory Judgment ................................................................................. 8

                1.      Utility of the Judgment ....................................................................... 9

                2.      Conclusiveness of a Judgment ........................................................... 9

JOINDER ......................................................................................................................... 10

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

Abbot Labs. v. Gardner, 387 U.S. 136 (1967).................................................................6

Aetna Life Ins. of Hartford v. Haworth, 300 U.S. 227 (1937)..........................................7

Armstrong World Indus., Inc. v. Adams, 961 F.2d 405 (3d Cir. 1992)..................................7, 8, 9

Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394 (S.D.N.Y. 2002), aff'd, 346 F.3d
    357 (2d Cir. 2003) ...............................................................................................7

In re Epstein, 26 B.R. 354 (Bankr. E.D. Tenn. 1982).......................................................5

In re Gyro-Trac (USA), Inc., No. CA-10-01908-DD, 2010 WL 5173160 (Bankr.
    D.S.C. Apr. 7, 2010)............................................................................................4

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994)...................................7

Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941) ...........................................7

In re Pawtuxet Valley Prescription & Surgical Ctr., Inc., No. 07-11767, 2008 Bankr.
    LEXIS 868 (Bankr. D.R.I. Mar. 10, 2008)............................................................10

Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union
    No. 66, 580 F.3d 185 (3d Cir. 2009) ...................................................................8, 9

In re Polzin, 49 B.R. 370 (Bankr. D. Minn. 1985)...........................................................5

Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643 (3d Cir. 1990) ........................7, 8, 9

Sun Bank/Suncoast v. Earth Lite, Inc. (In re Earth Lite, Inc.), 9 B.R. 440 (Bankr. M.D. Fla.
    1981)....................................................................................................................4, 5

U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.,
    475 B.R. 347 (S.D.N.Y. 2012) ..............................................................................7

In re Williams, 61 B.R. 567 (Bankr. N.D. Tex. 1986)......................................................4

In re Wonder Corp. of Am., 109 B.R. 18 (Bankr. D. Conn. 1989)...................................5

## Statutes

11 U.S.C. § 363(c)(2)(B) ................................................................................................4

11 U.S.C. § 363(e) ..........................................................................................................4

The Renco Group, Inc. ("Renco") submits this memorandum in support of the Motion to Dismiss the Complaint for Declaratory Judgment (the "Complaint") filed by the Official Committee of Unsecured Creditors of WP Steel Venture LLC (the "Committee").

## INTRODUCTION

The Committee's Complaint should be dismissed on any of three independent grounds. First, Cerberus[1] and Renco (collectively, the "Secured Creditors") were granted liens to protect them against the use of their cash collateral. These liens were required by, and expressly granted pursuant to, section 363 of the Bankruptcy Code, which conditions the use of cash collateral on dollar-for-dollar adequate protection. An equity cushion cannot provide adequate protection for the use of cash collateral. Accordingly, any additional non-cash collateral held by the Secured Creditors is immaterial. The Complaint, however, assumes that the liens were granted under section 364 of the Bankruptcy Code, as adequate protection for priming liens under the DIP financing arrangement. The Complaint's key allegation is that, because the total collateral package securing Cerberus' and Renco's claims was enhanced by the Debtors' continuing operations, there has been no diminution in value in the Secured Creditors' total collateral position. Since the Complaint relies exclusively on allegations concerning Cerberus' and Renco's total collateral package, instead of addressing the direct diminution in value from the consumption of cash collateral, the Complaint fails to state a claim on which relief can be granted, as a matter of law.

Second, there does not exist a concrete case or controversy, within the meaning of Article III of the Constitution. One aspect of concreteness is that a matter be ripe for

---

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Complaint.

adjudication.  The legal issue presented by the Complaint, whether Cerberus and Renco have suffered a diminution in value, manifestly is not ripe.  This case is not over, and the path to an exit is unclear.  Indeed, at the recent hearing on its motion for Cybergenics standing, when asked by the Court where the case was headed, Committee counsel stated, "That is a question I do not have an answer to…."  Thus, even if the Complaint were correct that Cerberus and Renco have not suffered any diminution in value to date, the potential for a diminution in value clearly remains.  In essence, the Committee wants the Court to write the last page of the book, before the rest of the book has been completed.

Third, the Court should not exercise its discretion to hear this matter.  Even where technical ripeness exists, courts presented with declaratory judgment complaints have discretion to dismiss.  Here, the patent prematurity of the Committee's request for a determination that no diminution in value has occurred argues strongly for discretionary dismissal.

## FACTS

Prior to the Petition Date, the Debtors issued secured debt by way of three financing transactions:  (i) the First Lien Credit Agreement and related First Lien Guaranty, secured by a first lien on substantially all of the Debtors' Prepetition Assets (the "First Lien Facility") (see Complaint ¶¶ 15-16); (ii) the Second Lien Credit Agreement and related Second Lien Guaranty, secured by a second lien on substantially all of the Debtors' Prepetition Assets (the "Cerberus Facility") (see Complaint ¶¶ 19-20); and (iii) the Third Lien Notes and related Third Lien Guaranties, secured by a third lien on substantially all of the Debtors' Prepetition Assets (the "Renco Facility") (see Complaint ¶¶ 17-18).  As of the Petition Date, the Debtors owed approximately $447.6 million on the First Lien Facility, $218.7 million on the Cerberus Facility, and $130.5 million on the Renco Facility.  See D.I. 11 at ¶¶ 16, 19 and 23.

On June 21, 2012, the Bankruptcy Court entered a final order (the "DIP Order", see D.I. 353) authorizing the Debtors to obtain postpetition financing from the First Lien Lenders through a ratification agreement (the "Ratification Agreement"). After the obligations under the Ratification Agreement and First Lien Facility were fully satisfied, the Secured Creditors consented to the Debtors' continued use of cash collateral pursuant to an interim and ultimately final cash collateral order (the "Final Cash Collateral Order"), which the Court approved on October 16, 2012. See D.I. 1376.

Under the DIP Order, the Secured Creditors were granted "adequate protection for the diminution in the value of [the Secured Creditors'] interests in the Prepetition Collateral, including cash collateral, on account of the Debtors' use of such Prepetition Collateral (including cash collateral), the imposition of the automatic stay and the subordination to the Carve-Out Expenses . . ." See Final Dip Order ¶ 2.6(2) and (3). The replacement liens (the "Replacement Liens") were expressly granted "pursuant to Section 361 and 363 of the Bankruptcy Code . . . ." Id. The provisions of the Final Cash Collateral Order are the same. See Final Cash Collateral Order ¶¶ 2.2(1) – (3). The Debtors are continuing to use cash collateral pursuant to the Final Cash Collateral Order.

On January 17, 2013, the Committee filed a motion and draft complaint seeking standing to commence, prosecute and settle certain breach of fiduciary duty claims against Mr. Rennert, as a co-manager of RG Steel. See D.I. 2033. On February 1, 2013, the Committee withdrew its original standing motion, without prejudice. See D.I. 2422. On February 22, 2013, the Committee filed a renewed standing motion and draft complaint (the "Standing Motion"), adding Renco and Vincent J. Goodwin as defendants. A hearing on the Standing Motion was held on May 30, 2013.

On March 29, 2013, the Committee filed the instant Complaint, seeking a judgment declaring that Cerberus and Renco have not suffered any diminution in the value of their collateral and, thus, are not entitled to any Replacement Liens on the proceeds of avoidance actions. The purported need for such a determination at this time is that, unless the proceeds of avoidance actions are unencumbered, there will be no funds to finance the Committee's litigation of the putative complaint against Renco, Mr. Rennert, and Mr. Goodwin.

## ARGUMENT

**I.      THE COMPLAINT FAILS TO ALLEGE THAT CERBERUS AND RENCO DID NOT SUFFER DIMINUTION IN VALUE FROM THE CONSUMPTION OF THEIR CASH COLLATERAL**

Section 363 of the Bankruptcy Code does not permit the use of cash collateral, even in the ordinary course of a debtor's business, without adequate protection. 11 U.S.C. § 363(c)(2)(B) and (e). Cash is treated differently from other collateral because of its uniquely perishable nature. As stated by one court, "[o]nce cash collateral has been dissipated and spent, court-fashioned sanctions such as retroactive adequate protection, appointment of a Chapter 11 trustee or prohibitions against the further use of cash collateral can be hollow victories for a secured creditor and do not rise to the level of a 'remedy'." In re Williams, 61 B.R. 567 (Bankr. N.D. Tex. 1986). Similarly, "Congress, in enacting § 363 of the [Bankruptcy] Code, gave a special treatment to 'cash collateral' . . . ,[which] requires *special protective safeguards* in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor." Sun Bank/Suncoast v. Earth Lite, Inc. (In re Earth Lite, Inc.), 9 B.R. 440, 443 (Bankr. M.D. Fla. 1981) (emphasis added). Thus, courts routinely hold that the use of cash collateral cannot be predicated on the existence of an equity cushion. Rather, dollar-for-dollar replacement liens on new collateral are required. See In re Gyro-Trac (USA), Inc., No.

CA-10-01908-DD, 2010 WL 5173160, at *3 (Bankr. D.S.C. Apr. 7, 2010) ("A debtor should not be authorized to use cash collateral without making payments to the secured party merely because it has, at the commencement of the case, a meaningful equity cushion in the collateral."); In re Wonder Corp. of Am., 109 B.R. 18, (Bankr. D. Conn. 1989) ("the mere existence of an equity cushion does not necessarily provide a creditor with adequate protection."); In re Polzin, 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) ("Due to the fact that the collateral is consumed or used up in a § 363 context and the creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one.") (citing In re Berens, 41 B.R. 524 (Bankr. D. Minn. 1984)); In re Epstein, 26 B.R. 354, 357 (Bankr. E.D. Tenn. 1982) ("Although an equity cushion in and of itself may suffice as adequate protection entitling a debtor to the continued protection of an automatic stay, an equity cushion does not automatically entitle a debtor in possession to use cash collateral."); In re Earth Lite, Inc., 9 B.R. at 444 (holding that an equity cushion cannot provide sufficient adequate protection to justify a debtor's use of cash collateral).

In compliance with section 363, the Final DIP Order and the Final Cash Collateral Order both granted Cerberus and Renco adequate protection liens. The Replacement Liens, expressly granted under section 363 of the Bankruptcy Code, protect against diminution in value resulting from the use of their cash collateral. In order to state a viable cause of action, the Committee would have to allege that Cerberus and Renco have not suffered a diminution in the value of their cash collateral.

Instead, the Complaint focuses solely on the Secured Creditors' total collateral position. Thus, the Complaint incorrectly asserts that the Replacement Liens were granted to protect against "diminution in value in [the secured creditors'] interests in the Debtors' assets stemming from the Debtors' use of such assets". Complaint, ¶4. The key allegations of the Complaint are as follows:

In fact, Cerberus has not suffered any such diminution. With respect to adequate protection, for purposes of determining whether an asset's value has diminished, the current value of the collateral should be compared against the collateral's fire-sale liquidation value as of the petition date. Here, if the Prepetition Assets were sold at the outset of the Debtors' bankruptcies at a fire-sale liquidation, the value that Cerberus would have received would have been significantly less than it received after an orderly liquidation that was made in the context of these bankruptcies, even after taking into account all of the expenditures made to make the process orderly (i.e., professional and employee costs).

The adequate protection claims and the related adequate protection liens were granted to Cerberus solely to the extent of any diminution in the value of its interests in the Prepetition Assets. Because Cerberus has not suffered any diminution in value of its interests in the Prepetition Assets, it is not entitled to any adequate protection claims or liens and as a result, it is also not entitled to any of the proceeds of the Preference Claims.

Complaint, ¶¶34-35.

Thus, the Complaint only alleges that the net collateral position of the Secured Creditors has not diminished. The Complaint is devoid of allegations that the Secured Creditors did not suffer a diminution in their cash collateral. (And, of course, such an allegation would be ludicrous. Millions of dollars of prepetition cash and the proceeds of prepetition inventory have been spent, and are continuing to be spent.) In the absence of any allegations concerning diminution in their cash collateral, the Complaint fails to state a claim on which relief can be granted, as a matter of law.

## II.    THE COMPLAINT IS NOT RIPE FOR ADJUDICATION

Wholly apart from the failure to state a claim, the matter is not ripe. The ripeness doctrine is a jurisdictional principle that prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review. See Abbot Labs. v. Gardner, 387 U.S. 136, 148 (1967). To satisfy the ripeness doctrine, a plaintiff must demonstrate the existence of "a real and substantial controversy admitting of specific relief through a decree of conclusive

character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. of Hartford v. Haworth, 300 U.S. 227, 241 (1937). The plaintiff bears the burden of demonstrating that the court has jurisdiction to hear the dispute. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).

In a declaratory judgment action, the ripeness analysis involves a two part inquiry: (1) whether subject matter jurisdiction exists because the declaratory judgment action meets the constitutional case or controversy requirement, and, if it does, (2) whether the court should, in its discretion, exercise that jurisdiction. See Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 646 (3d Cir. 1990); U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co., 475 B.R. 347, 358 (S.D.N.Y. 2012).

A.    *Case Or Controversy*

A case or controversy is present when a legitimate dispute exists between the parties. "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient *immediacy* and *reality* to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) (emphasis added). The dispute should be one "where the alleged liability has already accrued or the threatened risk occurred, rather than whether the feared legal consequence remains a mere possibility, or even probability, of some contingency that may or may not come to pass." Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003); see also Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 412 (3d Cir. 1992).

Here, the Committee argues that there is a sufficiently immediate and real adversity of interests because the Committee and the Secured Creditors have taken opposing positions as to whether the Preference Claim proceeds are subject to the Replacement Liens.

Moreover, the Committee argues that a resolution of this issue is needed to provide clarity on how its fiduciary duty litigation will be funded and whether the Preference Claims will be a source of recovery for unsecured creditors. As explained below, these issues are not real and do not require an immediate resolution.

First, the Committee ignores the critical fact that it currently does not have the right to commence its fiduciary duty litigation. As this Court is well aware, the Committee has requested derivative standing to bring this litigation. See D.I. 2582. Until the Court rules on this request, the Committee has no need to fund the litigation. This is the very definition of a contingency, and does not rise to the level of a case or controversy.

More importantly, even if standing were granted, the mere need to finance the fiduciary duty litigation would not create a ripe controversy. Ripeness goes to the legal issue presented to the court for decision. In this case, the question is whether there has been a diminution in value in the collateral position of Cerberus and Renco. Because the future course of this case is unknown, the question of whether there will be a diminution in value cannot be answered. This renders the matter constitutionally incapable of adjudication.

**B.**     ***The Court Should Decline To Exercise Its Discretion To Issue A Declaratory Judgment***

Even when a case or controversy exists, a court is not required to exercise its power to issue a declaratory judgment. Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990). Two principles frequently guide courts determining whether to exercise discretion: (i) the practical help or utility of a judgment, and (ii) the conclusiveness of a judgment. See Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009); Armstrong World Indus., Inc. v. Adams, 961

F.2d 405, 411 (3d Cir. 1992); <u>Step-Saver</u>, 912 F.2d at 647.  Neither principle is satisfied by the Committee's Complaint.

### 1.    Utility of the Judgment

A case shall not be considered justiciable unless a court is convinced that a useful purpose will be served by its action.  <u>See</u> <u>Step-Saver</u>, 912 F.2d at 649.  Put another way, courts ordinarily do not grant a declaratory judgment unless "the parties' plans of actions are likely to be affected by a declaratory judgment."  <u>Armstrong</u>, 961 F.2d at 412.  Because the asserted need for a decision is to fund litigation that the Committee is not authorized to bring, and may never be authorized to bring, the utility of a judgment at this time is clearly nil.

### 2.    Conclusiveness of a Judgment

Another important factor in determining whether jurisdiction should be exercised is whether a judgment will conclusively define and clarify the legal rights or relations of the parties.  <u>Step-Saver</u>, 912 F.2d at 649.  This is meant to ensure that judicial action does not amount to an advisory opinion.  <u>See</u> <u>Pittsburgh Mack</u>, 580 F.3d 185, 190.

As noted, a ruling at this time could not be conclusive, because the case is not over and the risk of diminution continues.  In fact, when this Court recently asked the Committee's counsel what the exit plan for these cases is, counsel responded:  "That is a question I do not have an answer to, whether there would be a plan, whether it makes sense to go through the headache of a plan of reorganization that creates the litigation trust for these games (sic), I do not have an answer to that, Your Honor.  And I hope that the Debtors have been thinking about that. I do not have one."  May 30, 2013 Hr'g Tr. 17:16-21.

If there is no end in sight, the Secured Creditors cannot be assured that the assets securing their liens will not diminish further.  The Committee's request for a declaration curtailing the Secured Creditors' adequate protection rights mid-way through these cases is

inappropriate and violates the very purpose of adequate protection – to ensure that a secured creditor's interests are not diminished during the period between the petition date and the confirmation or rejection of a plan.  See In re Pawtuxet Valley Prescription & Surgical Center, Inc., No. 07-11767, 2008 Bankr. LEXIS 868, *5 (Bankr. D.R.I. Mar. 10, 2008) ("adequate protection relates to maintaining the status quo for the period between filing the petition and before confirmation or rejection of the plan of reorganization . . .").  The Replacements Liens remain an ongoing necessity, and a declaratory judgment at this point will not conclusively resolve the issues raised in the Complaint.

## JOINDER

In addition to the arguments set forth above, Renco endorses and joins in the arguments set forth in support of the motion to dismiss by Cerberus.

## CONCLUSION

WHEREFORE, Renco respectfully requests that the Court dismiss the Complaint in its entirety and grant such other and further relief as is just.

Dated:      June 24, 2013
            Wilmington, Delaware

Karen C. Bifferato (No. 3279)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
Telephone:  (302) 757-7300
Facsimile:  (302) 757-7299

- and -

Mark C. Ellenberg (admitted pro hac vice)
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, NW
Washington, D.C. 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

- and -

Peter Friedman (admitted pro hac vice)
O'MELVENY & MYERS LLP
1625 Eye St., NW
Washington, D.C.  20006
Telephone:  (202) 383-5302
Facsimile:  (202) 383-5414

*Co-Counsel to The Renco Group, Inc.*

05060850