**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:                                                          :          Chapter 11

                                                                :
WP Steel Venture LLC, et al.,[1]                       :          Case No. 12-11661 (KJC)

                                                                :
                                      Debtors.          :          Jointly Administered

                                                                :
-------------------------------------------------------x          Re: Dkt. Nos. 909, 1178, 2896, 3243 & 3250

## STIPULATION RESOLVING GRAND EAST METALS' (1) MOTION TO MODIFY ORDER AUTHORIZING AND APPROVING (I) SALE OF SPARROWS POINT ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF AND (2) MOTION TO EXTEND RIGHT OF ACCESS PERIOD UNDER TEMPORARY ACCESS AGREEMENT

WHEREAS, on May 1, 2013, Grand East Metals ("GEM") filed its *Motion to (1) Modify Order Authorizing and Approving (I) Sale of Sparrows Point Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief* [Docket No. 2896] (the "Motion to Vacate");

WHEREAS, GEM and HRE Sparrows Point LLC ("HRE" and collectively with GEM, the "Parties")) thereafter entered into a TAA (as defined below);

WHEREAS, on August 30, 2013, GEM filed its *Motion to Extend Right of Access Period under Temporary Access Agreement* [Docket No. 3243] (the "Motion to Extend" and together with the Motion to Vacate, the "GEM Motions");

WHEREAS, the GEM Motions, among other things, raise concerns over the time allotted for its removal of approximately 5,278.94 net tons of mill scale and 10,066.15 net tons of

---

[1]       If applicable, the last four digits of the taxpayer identification numbers of the Debtors follow in parentheses:  (i) WP Steel Venture LLC (7095); (ii) Metal Centers LLC; (iii) RG Steel, LLC (1806); (iv) RG Steel Railroad Holding, LLC (4154); (v) RG Steel Sparrows Point, LLC (3633); (vi) RG Steel Warren, LLC (0253); (vii) RG Steel Wheeling, LLC (3273); and (viii) RG Steel Wheeling Steel Group, LLC (9927).  The Debtors' executive headquarters are located at 1430 Sparrows Point Boulevard, Sparrows Point, MD 21219.

auger fines (collectively, the "Steel") owned by GEM and located at the Debtors' Sparrows Point

steel facility (the "Site") pursuant to the expired Temporary Access Agreement dated June 7,

2013 by and between GEM and HRE Sparrows Point, LLC ("HRE") (the "TAA," a true and

accurate copy of which is attached hereto as **Exhibit A**); and

WHEREAS, the Parties discussed the relief requested in the GEM Motions, and

in light of the costs and risks of litigation, agree to resolve the GEM Motions as set forth more

fully below.

FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT OF

WHICH IS HEREBY ACKNOWLEDGED, SUBJECT TO COURT APPROVAL, IT IS

HEREBY STIPULATED AND AGREED TO BY THE PARTIES THAT:

A.    Section 12 of the TAA is hereby replaced and superseded in its entirety as

follows:

> **EXPIRATION.** The right of access granted pursuant to this Agreement shall
> commence on June 7, 2013 provided Access Party has paid HRE the Initial
> Payment and shall expire on the earlier of (i) completion of any agreed upon
> removal of all Access Party Property from the Site or (ii) November 14, 2013.

B.    Notwithstanding anything to the contrary in the TAA or any prior order of

this Court, including, without limitation, that certain *Order Authorizing and Approving (I) Sale*

*of Sparrows Point Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and*

*(II) Granting Related Relief* [Docket No. 909] or that certain *Order Resolving Motions to Modify,*

*Vacate, and for Relief from the Certain Order Authorizing and Approving (I) Sale of Sparrows*

*Point Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Granting*

*Related Relief* [Docket No. 1178] (together, the "Sale Orders"), in the event the Steel is not

timely removed by GEM from the Site on or before November 14, 2013, then, upon payment by

HRE to GEM of the Purchase Price (as defined in the Bill of Sale), which payment must occur

2

on or before November 22, 2013, such Steel shall be deemed sold to HRE pursuant to that certain Bill of Sale (a redacted version of which is attached hereto as **Exhibit B**) without further notice or order of the Court. A signed copy of the Bill of Sale shall be held in escrow by counsel for HRE pending payment of the Purchase Price by HRE or timely removal of the Steel from the Site, the latter case resulting in HRE's counsel voiding the Bill of Sale and returning the same to GEM's counsel.

        C      As set forth in the TAA and pursuant to the terms and conditions thereof, GEM will have the right to access and remove the Steel. Subject to and without limiting, modifying or amending the terms of the TAA, HRE agrees to cooperate and act in a good faith and in a commercially reasonable manner with any agent retained by GEM to remove the Steel and not otherwise obstruct or impede the removal of the Steel provided that such agent, access and removal comply with the terms and conditions imposed by the TAA.

        D.      Upon GEM's written request, HRE agrees to contract with GEM at HRE's customary rates and terms to ship the Steel by rail from the Site; provided, however, that GEM must, on or before November 7, 2013, (1) designate, in writing to HRE or an email to HRE's counsel, the steel facility and/or storage yard that will be the destination of the Steel and produce written evidence that such facility/storage yard is under contract and has agreed to accept such Steel without any further contingencies or conditions, (2) pay HRE, on or before the later of, November 7, 2013 or receiving a good faith estimate from HRE by e-mail to GEM's counsel for the estimated costs of loading and shipping the Steel to such destination and for any other customary costs or fees to be incurred by HRE incidental to such shipping, and (3) provide written evidence to HRE on or before November 7, 2013 that GEM has arranged and paid for HRE's customary rates and any third party charges, taxes, fees, rail lines or services, as

3

applicable, required to deliver the Steel to GEM's designated location (collectively, the "Shipping Notice Requirements"). If HRE purports that any Shipping Notice is deficient, it shall immediately notify GEM of such deficiency, and GEM will have a one-time one (1) business day cure period to cure any purported deficiency relating to the adequacy of the shipping notice.

E.    The Parties irrevocably consent to the jurisdiction of this Court as it relates to this Chapter 11 case, this Agreed Order, the Sale Orders and the TAA.

F.    The Parties agree that upon entry of an order approving this Stipulation, the GEM Motions will be deemed withdrawn with prejudice.

G.    GEM waives and releases any right to take any action in the Bankruptcy Court for the District of Delaware or another court of competent jurisdiction to hinder or delay the sale of the Steel to HRE in the event that the Steel is not timely removed from the Site or GEM fails to materially comply with each of the Shipping Notice Requirements; provided however, notwithstanding any provision in the Stipulation to the contrary, GEM may seek to prevent the sale of the Steel/seek remedies from the Bankruptcy Court for the District of Delaware only if (1) HRE materially breaches the terms of the Stipulation, the TAA or otherwise acts in bad faith (i.e. purposefully obstructs removal of the Steel) and (2) GEM was otherwise in full compliance with each and every term of the Stipulation and the TAA and would have timely removed the Steel from the Site but for and only because of HRE's improper actions referred to in subpart (1) of this sentence. In the event GEM files such an action to delay the sale of the Steel to HRE and does not obtain a final order holding that (1) HRE materially breached the terms of the Stipulation, the TAA or otherwise acted in bad faith (i.e. purposefully obstructed removal of the Steel) and (2) GEM was otherwise in full compliance with each and every term of the Stipulation and the TAA and would have timely removed the Steel from the Site but for and

4

only because of HRE's improper actions referred to in subpart (1) of this sentence, then GEM

shall pay to HRE, in addition to being compelled to sell the Steel to HRE pursuant to the terms

hereof, reasonable attorneys' fees, costs, expenses, and damages, whether from market changes

or otherwise, incurred by HRE as a result of or in connection with such action.

Dated: Wilmington, Delaware
      October 30, 2013

| **GRAND EAST METAL (KULIM) SDN BHD** | **HRE SPARROWS POINT, LLC** |
|---|---|
| By: ___/s/ Scott J. Leonhart_____ | By: ___/s/ Eric S. Prezant_____ |
| THE ROSNER LAW GROUP LLC | BRYAN CAVE, LLP |
| Scott J. Leonhardt (No. 4885) | Eric S. Prezant (No. 06239611 |
| 824 Market Street, Suite 810 | 161 North Clark Street, Suite 4300 |
| Wilmington, DE 19801 | Chicago, IL 60601 |
| (302) 777-1111 | (312) 602-5000 |
| leonhardt@teamrosner.com | eric.prezant@bryancave.com |

5

**EXHIBIT A**

<u>TEMPORARY ACCESS AGREEMENT</u>

This TEMPORARY ACCESS AGREEMENT ("Agreement") is made and entered into this 7th day of June, 2013 ("Effective Date"), by and between Grand East Metals ("Access Party") and HRE Sparrows Point, LLC ("HRE").

<u>WITNESSETH:</u>

WHEREAS, immediately upon closing of that certain Asset Purchase Agreement dated August 7, 2012, consistent with the terms and conditions of that certain Joint Letter Agreement by and between Sparrows Point LLC and HRE, among others, dated August 11, 2012, Sparrows Point LLC, as fee simple owner of the hereinafter defined "Site", granted HRE a license for HRE's exclusive use and occupancy of that certain property located in Sparrows Point, Maryland, commonly known as 1430 Sparrows Point Boulevard and 5111 North Point Boulevard, Sparrows Point, Maryland (the "Site").

WHEREAS, Access Party has requested access to the Site for the purposes of access, storage, use and removal of certain personal property owned by Access Party more fully described on Exhibit A hereto ("Access Party Property")[1] and which is located in the designated area described on Exhibit B hereto ("Designated Area"), and HRE hereby grants permission to Access Party, to access, store, use and remove the Access Party Property within the Designated Area pursuant to the terms of this Agreement.

WHEREAS, paragraph 37 of the Order Authorizing and Approving (I) Sale of Sparrows Point Assets Free and Clear of Liens, Claims and Encumbrances, and Interests, and (II) Granting Related Relief is modified as to Access Party pursuant to this Agreement and the Modification Order, and HRE shall not seek to enforce against Access Party, the 21 day time deadline or to take title to or possession of the Access Party Property through the sale, transfer, assignment, scraping, abandonment or other disposition of the Access Party Property unless and until the Access Party Property remains at the Site upon the expiration of this Agreement.

NOW, THEREFORE, Access Party and HRE agree as follows:

1.    <u>RIGHT OF ACCESS.</u>  HRE hereby grants Access Party the right, during the term of this Agreement, to enter upon the Site and have ingress to and egress from the Designated Area to take such actions as are commercially reasonably necessary to access, store, use and remove the Access Party Property during the hours of 8:00 a.m. and 5:00 p.m., prevailing eastern time, Monday through Friday, or such other times as arranged in advance with HRE; provided, however, that Access Party is neither permitted nor authorized to ship or deliver additional Access Party Property to the Site.

---

[1]    Notwithstanding anything contained herein to the contrary, the inclusion or exclusion of property in the definition of Access Party Property, including the property described on Exhibit A hereto, is not intended to be and shall not be determinative of proof of ownership of such property, and nothing contained herein shall or shall be deemed to convey, authorize, or permit Access Party to access or use any property which it does not own or for which it is not otherwise authorized to access or use.

C

2.  <u>SITE SECURITY.</u>  The Site is secured by HRE's security personnel ("Site Security").  To the extent requested by the head of security designated by HRE, prior to gaining access, Access Party will provide Site Security with a written list, with at least one (1) business day's advance notice, identifying the names of the specific employees, agents, representatives, contractors and subcontractors designated by Access Party to have access to the Designated Area.  All persons or vehicles entering or leaving the Site must check in and out with Site Security.  At the direction of Site Security, Access Party shall demarcate the Designated Area with fencing or rope, and the Designated Area will be identified by color or other identification mark.  Vehicles used by Access Party will be required to display identification as provided by Site Security at all times that such vehicles are on Site and shall be returned to Site Security each day before leaving the facility.  Access Party agrees to comply and cause its employees, agents, representatives, contractors and subcontractors to comply with any additional security protocols established by HRE or Site Security.  If Access Party or its employees, contractors or subcontractors are identified by HRE or Site Security as performing work or engaging in unauthorized activities outside the Designated Area, HRE shall have the right to immediately suspend Access Party's right of access under this Agreement and the parties may seek further relief from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Upon termination or expiration of this Agreement, Access Party shall immediately return all identification materials to Site Security.

3.  <u>COORDINATION OF WORK.</u>  Access Party and its employees, agents, representatives, contractors and subcontractors will coordinate their work with HRE to minimize any impact to activities conducted on or near the Designated Area, and will take all actions reasonably requested by HRE to coordinate its work.

4.  <u>NON-INTERFERENCE.</u>  Access Party will perform the work as described in this Agreement in a manner so as to not unreasonably interfere with the activities and operations of HRE and others at the Site.

5.  <u>ACCOMMODATION FEES AND EXPENSES.</u>  During the term of this Agreement, in consideration for HRE's willingness to allow Access Party access and use as set forth herein and due to the disruption that such access and use may cause HRE, Access Party shall pay HRE, through MCM Rail Services, LLC as it has prior to the date hereof, (i) a one-time payment of $13,810.59 (the "Initial Payment") on the date hereof and (ii) monthly installment payments during the term hereof (due in advance on the 1st day of each month) beginning on July 1, 2013 of $4,003.53 (each such recurring monthly payment an "Access Party Payment"), it being agreed and acknowledged by Access Party that HRE has not assumed any such agreements and has no liabilities, obligations, or duties to Access Party except as expressly set forth in this Agreement.  Access Party shall bear all costs and expenses associated with all work performed relating to access and removal of the Access Party Property, including, without limitation, all utilities services, and Access Party shall be required to coordinate with HRE's

2

utilities engineers to re-route service at Access Party's sole expense. Access Party shall not permit any mechanic's or other liens to be filed against HRE or any of the assets or real estate on the Site in relation to its access or use of the Access Party Property. In the event that such a lien is filed, Access Party shall immediately obtain the release or discharge of such lien.

6.    <u>HEALTH AND SAFETY.</u> Access Party shall comply and cause its employees, agents, representatives, contractors, and subcontractors to comply with all applicable health and safety laws and shall require that their employees, agents, representatives, contractors and subcontractors are competent and adequately trained in the required safety and health aspects of the work performed at the Site under this Agreement. Access Party agrees to comply with any additional reasonable health and safety protocols established by HRE.

7.    <u>COMPLIANCE WITH LAWS.</u> Access Party shall require that its employees, agents, representatives, contractors and subcontractors materially comply with all applicable federal, state and local laws and regulations while on the Site.

8.    <u>INSURANCE.</u> Access Party shall keep in force at its own expense during the life of this Agreement comprehensive general liability, comprehensive automotive liability and worker's compensation insurance to cover the costs of potential liability that may reasonably be expected to arise out of the Access Party Property and the work performed pursuant to this Agreement. Certificates of Insurance shall be provided to HRE and HRE shall be designated as an additional insured party on the policies referenced above.

9.    <u>INDEMNITY.</u> Access Party shall indemnify, defend and hold harmless HRE from and against all claims, demands, losses, damages and costs, including but not limited to the reasonable attorneys fees incurred by HRE (including any mechanics liens or other liens described in paragraph 5 above) incurred by HRE arising from or relating to the actions of Access Party or its employees, contractors or subcontractor on Site, including, but not limited to, those directly or indirectly arising from the negligent acts, errors, omissions or willful misconduct of Access Party or its employees, agents, representatives, contractors and subcontractors, except to the extent that such claims, demands, losses, damages or costs result from the gross negligence or willful misconduct of HRE or its agents.

10.    <u>AUTHORITY.</u> Each party hereto represents and warranties to each other that it has the power, right and authority to enter into this Agreement and to perform or cause to be performed its obligations described herein.

11.    <u>MOTION/OBJECTION TO SALE ORDER.</u> Upon execution of this Agreement, Access Party shall promptly cause that certain Motion by Grand East Metals to Modify Order Authorizing and Approving (I) Sale of Sparrows Point Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and (II) Granting Related Relief filed by Access Party with the Bankruptcy Court on May 1, 2013 [Docket No. 2896] and any related filings thereto to be withdrawn.

3

12. **EXPIRATION.** The right of access granted pursuant to this Agreement shall commence on June 7, 2013 provided Access Party has paid HRE the Initial Payment and shall expire on the earlier of (i) completion of any agreed upon removal of all Access Party Property from the Site or (ii) August 31, 2013.

13. **GOVERNING LAW.** This Agreement shall be governed in all respects, including its validity, interpretation and effect, by the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof. The parties agree to submit for determination by the Bankruptcy Court any disputes as to the interpretation or construction of this Agreement.

14. **ASSIGNMENT.** Access Party shall not assign this Agreement or any interests therein, without the prior written consent of HRE, such consent not to be unreasonably withheld.

15. **REPRESENTATIVES.** For the purposes of this Agreement, the parties' authorized representatives are:

HRE Sparrows Point, LLC
c/o Joseph A. Malfitano
Hilco Trading, LLC
5 Revere Drive
Northbrook, IL 60062

-and-

Saw Teow Hong
GRAND EAST METAL (KULIM) SDN BHD
Fortune Heights, 38-2-1, Jalan Cantonment
10250 Penang
MALAYSIA

4

This Agreement may be executed in counterparts and is effective as of the Effective Date.

HRE SPARROWS POINT, LLC                    GRAND EAST METAL (KULIM) SDN BHD

By: _____               By: SAW TEOW HONG

Title: VP & Assistant General Counsel,     Title: DIRECTOR
       Managing Member

Date: JUNE 24, 2013                        Date: _____

## EXHIBIT A

### Access Party Property

Access Party Property is comprised of 5,278.94 net tons of mill scale and 10,066.15 net tons of auger fines as further defined as the "Steel" in that certain Motion by Grand East Metals to Modify Order Authorizing and Approving (I) Sale of Sparrows Point Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and (II) Granting Related Relief filed by Access Party with the Bankruptcy Court on May 1, 2013 [Docket No. 2896].

EXHIBIT B

Designated Area

The area of the Site commonly referred to as Coke Point, 800 yard area.

**EXHIBIT B**

## BILL OF SALE

**THIS BILL OF SALE** is made and entered into this 31st day of October, 2013, by and between Grand East Metal (KULIM) SDN BHD, a Malaysian company ("Seller") and HRE Sparrows Point, LLC, a Delaware limited liability company ("Buyer").

**WITNESSETH:**

**WHEREAS,** Seller desires to sell and Buyer desires to purchase all of Seller's rights, title, and interest in and to the Assets herein described;

**NOW, THEREFORE,** in consideration of the above premise, the mutual covenants and agreements stated herein, and other good and valuable consideration, the receipt of which is provided for below and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Sale of Assets.**  Upon receipt of the Purchase Price as set forth in Section 2 hereof, Seller does hereby irrevocably SELL, ASSIGN, TRANSFER, AND DELIVER unto Buyer, its successors and assigns, all of Seller's right, title, and interest in and to all those assets described in Attachment A hereto and by this reference made a part hereof (collectively, the "Assets").

2.    **Purchase Price.**  Pursuant to that certain *STIPULATION AND AGREED ORDER RESOLVING GRAND EAST METALS' (1)MOTION TO MODIFY ORDER AUTHORIZING AND APPROVING (I) SALE OF SPARROWS POINT ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF AND (2) MOTION TO EXTEND RIGHT OF ACCESS PERIOD UNDER TEMPORARY ACCESS AGREEMENT* (the "Agreed Order") entered on or about October 15, 2013 in the jointly administered Chapter 11 case captioned In re WP Steel Venture LLC, et al., Case No. 12-11661, in the United States District Court for the District of Delaware, Buyer has paid the purchase price of            per metric ton of screened material (the "Purchase Price") to the following account:

Beneficiary Account Name  : GRAND EAST METAL (KULIM) SDN BHD
Beneficiary Address          : FORTUNE HEIGHTS, 58-2-1, JALAN CANTONMENT, 10250 PENANG, MALAYSIA.
Bank Name        : CITIBANK BERHAD
Bank Address        : 42, JALAN SULTAN AHMAD SHAH, 10050 PENANG, MALAYSIA.
USD A/C No        : 0-165208-013
SWIFT CODE        : CITIMYKL

3.    **Representations, Warranties, and Covenants of Seller.**  Seller does hereby represent and warrant to the Buyer as follows:

(a)    Seller has and is hereby transferring to Buyer good and indefeasible title to the Assets. The Assets are hereby transferred to Buyer free and clear

{00012284. }                                      {00012284. }                                      251471.}

of all mortgages, liens, pledges, charges, claims, leases, restrictions and encumbrances of any nature whatsoever. The Seller has complete and unrestricted power to enter into this Bill of Sale and to sell, assign, and transfer good and indefeasible title to the Assets and such sale assignment and transfer does not and will not require the consent or approval of any third person or government entity.

      (b)    Neither the execution and delivery of this Bill of Sale nor compliance with the terms hereof by Seller will violate the articles of incorporation or bylaws of Seller, will breach any governmental law, statute or regulation, or conflict with or result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which the Seller is a party or by which it is or may be bound, or constitute a default thereunder, or result in the creation or imposition of any liability, lien, claim, charge, encumbrance, or constructive trust.

      (c)    Seller has taken all corporate action necessary to make this Bill of Sale enforceable against Seller in accordance with the terms hereof.

      (d)    EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN SUBSECTION (a) OF THIS SECTION 3, THE ASSETS ARE SOLD "AS IS" AND "WHERE IS", SELLER HEREBY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

    4.    **Representations and Warranties of Buyer**. Buyer does hereby represent and warrant to Seller as follows:

      (a)    Neither the execution and delivery of this Bill of Sale nor compliance with the terms hereof by the Buyer will violate the articles of incorporation or bylaws of Buyer, will breach any governmental statute or regulation, or conflict with or result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which the Buyer is a party or by which it is or may be bound, or constitute a default thereunder, or result in the creation or imposition of any lien, claim, charge, encumbrance, or constructive trust.

      (b)    Buyer has the corporate power and authority to enter into this Bill of Sale and has taken all corporate action necessary to make this Bill of Sale enforceable against Buyer in accordance with the terms hereof.

    5.    **Further Action**. Seller agrees that it shall execute and deliver or cause to be executed and delivered from time to time such instruments, documents, agreements, consents and assurances and take such other actions as Buyer reasonably may require to more effectively convey, transfer to and vest in Buyer and to put Buyer in possession of the Assets and to carry out the intent and purposes of this instrument.

{00012284. }             {00012284. }             251471.1

6.    <u>General</u>.

(a)    This Bill of Sale cancels and supersedes all previous agreements relating to the subject matter of this Bill of Sale, written or oral, between the parties hereto and contains the entire understanding of the parties hereto and shall not be amended, modified or supplemented in any manner whatsoever except as otherwise provided herein or in writing signed by each of the parties hereto.

(b)    Neither this Bill of Sale, nor any of the rights, duties or obligations of Seller hereunder, may be assigned either voluntarily or by operation of law or otherwise delegated by Seller without the prior written consent of Buyer and any attempted assignment which is not in conformity herewith shall be voidable at the option of Buyer. This Bill of Sale shall be binding upon, and inure to the benefit of and be enforceable by, the parties hereto and their respective successors and permitted assigns.

(c)    This Bill of Sale may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which shall constitute one agreement which is binding upon all the parties hereto, notwithstanding that all parties are not signatories to the same counterpart.

(d)    Any notice, request, consent or communication under this Bill of Sale shall be effective only if it is in writing and personally delivered or sent by certified mail, <u>electronic mail,</u> postage prepaid, nationally recognized express delivery service with delivery confirmed or telexed or telecopied with receipt confirmed, addressed as follows:

If to Seller:

<u>Name:</u>

Saw Teow Hong
GRAND EAST METAL (KULIM)
SDN BHD
Fortune Heights, 58-2-1,
    Jalan Cantonment
10250 Penang
MALAYSIA

<u>With Copy To:</u>

THE ROSNER LAW GROUP LLC
Attn: Scott J. Leonhardt
824 Market Street, Suite 810
Wilmington, DE 19801
(302) 777-1111
leonhardt@teamrosner.com

If to Buyer:

<u>Name:</u>

HRE SPARROWS POINT, LLC
c/o Joseph A. Malfitano
Hilco Trading, LLC
5 Revere Drive
Northbrook, IL 60062

<u>With Copy To:</u>

BRYAN CAVE, LLP
Attn: Eric S. Prezant
161 North Clark Street, Suite 4300
Chicago, IL 60601
(312) 602-5000

{00012284. }

{00012284. }
3

251471.1

eric.prezant@bryancave.com

or such other persons and/or addresses as shall be furnished in writing by any such party, and shall be deemed to have been given as of the date so personally delivered or received.

(e)    This Bill of Sale and all rights and obligations of the parties hereunder and all rights and obligations of the parties shall be governed by, and construed and interpreted in accordance with, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such State, including all matters of enforcement, validity and performance.

{00012284.}                    {00012284.}                    251471.1
                               4

IN WITNESS WHEREOF, the parties hereto have each caused this Bill of Sale to be duly executed as of the day and year first above written.

GRAND EAST METAL (KULIM) SDN BHD

By_____

Its_____

HRE SPARROWS POINT, LLC

By_____

Its___Secretary___

## ATTACHMENT A

| <u>PURCHASE PRICE</u> | <u>ASSETS TO BE SOLD</u> |
|---|---|
| per metric ton of screened material (screening to be performed by Kinder Morgan at the cost of Seller). | 5,278.94 net tons of mill scale and 10,066.15 net tons of auger fines. |