IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | x | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WP Steel Venture LLC, *et al.*,[1] | : | Case No. 12-11661 (KJC) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Hearing Date: April 1, 2014 |
| | : | Objection Deadlines: March 28, 2014 at 4:00 p.m. |
| | x | (eastern) (extended) |

---

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AMENDING THE FINAL CASH COLLATERAL ORDER

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, files this objection (the "Objection") to the Debtors' motion (the "Motion") for an order ("Amended Cash Collateral Order") approving an amendment to the final order authorizing the Debtors to use cash collateral (the "Final Cash Collateral Order") [D.I. 1376]. In support of the Objection, the Committee respectfully submits as follows:[2]

### Objection

1. By the Motion, the Debtors seek to modify the Final Cash Collateral Order to provide, among other things, that the Debtors must utilize any Preference Proceeds to pay estate all administrative costs prior to using any Cash Collateral.

2. Specifically, the Debtors request authority to segregate the Preference

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: (i) WP Steel Venture LLC (7095); (ii) Metal Centers LLC; RG Steel, LLC (1806); (iv) RG Steel Railroad Holding, LLC (4154); (v) RG Steel Sparrows Point, LLC (3633); (vi) RG Steel Warren, LLC (0253); (vii) RG Steel Wheeling, LLC (3273); and (viii) RG Steel Wheeling Steel Group, LLC (9927). The Debtors' headquarters are located at 1430 Sparrows Point Boulevard, Sparrows Point, MD 21219.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Proceeds from any proceeds from the liquidation of the remaining Collateral (i.e., the Cash Collateral) and to use these Preference Proceeds to fund all administrative costs. The Debtors would only use Cash Collateral to fund such costs to the extent the Preference Proceeds are not sufficient.

3. As the Court is aware (and as described in the Motion), there is currently a dispute between the Committee and the Secured Parties as to whether the Secured Parties have suffered any diminution in the value of their Collateral and therefore whether they have an adequate protection claim or lien on the Preference Proceeds. Accordingly, to the extent that the Court were to make a determination on this issue in the Committee's favor, the Preference Proceeds would be unencumbered and would not constitute Cash Collateral.

4. The Debtors recognize that the status of the Preference Proceeds is currently in limbo and attempt to justify their requested use of the Preference Proceeds by arguing that, in any event, "the Final Cash Collateral Order would require the Debtors to fund administrative expenses with the proceeds of unencumbered assets." Motion at ¶15. While the Committee recognizes that under the Final Cash Collateral Order the Debtors must use unencumbered cash to fund general administrative expenses, at this stage in these cases, this simply does not make sense given that the administrative costs to be funded would only benefit the Secured Parties.

5. Although not disclosed in the Motion, a review of the details supporting the proposed Budget makes clear that the overwhelming majority of administrative costs that the Debtors seek to pay are for litigations that are subject to the Secured Parties' prepetition lien.[3]

---

[3] The Debtors have only filed the first page of the Budget but have provided the detailed version to the Committee. Of note, the proposed Budget does not reflect payments to estate professionals for any outstanding fees that have been approved but not paid out of Cash Collateral. To the extent that there are unencumbered assets – i.e., the Preference Proceeds – to pay such outstanding fees, the Budget should provide for such payments.

2

Specifically, the Budget reflects that, of the approximately $2 million of projected operating expenses (through June 28, 2014), nearly $1.2 million relate to the cost of litigations that are part of the Secured Parties' prepetition collateral (collectively, the "Secured Parties Litigation") and, accordingly, any recovery from such litigations will only benefit the Secured Parties.[4] Although Cash Collateral is available to fund the Secured Parties Litigation, approval of the Debtors' proposed Amended Cash Collateral Order would effectively force the unsecured creditors to fund those costs even though they will not get any benefit from such litigation.

6. In other words, granting the relief sought by the Debtors and Secured Parties would result in a *de facto* ruling on the Declaratory Judgment Complaint in favor of the Secured Parties. This is because if the proposed Amended Cash Collateral Order is approved, even if the Court ultimately rules in the Committee's favor, the Preference Proceeds would have been spent on the enhancement of the Secured Parties collateral and would be unrecoverable, as the cash would have been paid to third parties and the Secured Parties would have the benefit of a section 506(c) waiver.[5] As such, until the Court determines that the Secured Parties have a lien on the Preference Proceeds, such proceeds should not be used to fund expenses that would only benefit the Secured Parties.

7. Moreover, upon information and belief, the only putative secured lender with an economic interest in resolution of these cases is Renco – which is the same entity that is the ultimate equity owner of the Debtors and controls the Debtors' board of directors. Accordingly, to the extent that the Debtors (i.e., Renco) were to determine that it is in its

---

[4] While the Budget does contain a list of the specific litigations to be funded, it is not immediately clear with respect to each such litigation whether it would fall under the Secured Parties' collateral. Accordingly, the actual amounts to be spent on the Secured Parties Litigation may be higher than $1.2 million

[5] Indeed, even without the 506(c) waiver, given that the Preference Proceeds would be spent on litigation, to the extent such litigation were unsuccessful, it is unclear whether there would be collateral from which to collect a surcharge.

interests to pursue the Secured Parties Litigation, it is certainly capable of consenting to the use of actual Cash Collateral or funding such costs separately. Renco should not be allowed to prejudice unsecured creditors to advance its own interests.

8. Accordingly, while the Committee has no objection to the Debtors' use of the Preference Proceeds to pay general administrative expenses, they should not use such proceeds on expenses that are solely for the benefit of the Secured Parties.

WHEREFORE, the Committee requests that the Court (a) deny the Motion and (b) grant such other relief as is proper.

Dated: Wilmington, Delaware
March 28, 2014

SAUL EWING LLP

/s/

Teresa K. D. Currier (No. 3080)
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6826
Facsimile: (302) 421-5861

-and-

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile (212) 715-8000

*Counsel to the Official Committee of Unsecured Creditors of WP Steel Venture LLP*