## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| WP Steel Venture LLC, et al.,[1] | : | Case No. 12-11661 (KJC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Docket Ref No. 4421** |

------------------------------------------------------x

### ORDER APPROVING: (I) (A) GLOBAL SETTLEMENT AGREEMENT AND (B) PROCEDURES FOR THE RESOLUTION OF CLAIMS AND DISTRIBUTION OF CERTAIN FUNDS TO CLAIMS HOLDERS; AND (II) GRANTING OF RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the debtors and debtors in possession in the above-captioned cases (collectively the "**Debtors**") pursuant to sections 105(a), 305, 349, 363, and 1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for: (i) an order (a) approving the Settlement Agreement, and (b) approving procedures for the resolution of claims and distribution of certain funds to claims holders; (ii) an order approving the dismissal of the Debtors' chapter 11 cases; and (iii) related relief; and it appearing that no other further notice need be provided; and after due deliberation and sufficient cause appearing therefor; it is hereby:

ORDERED, ADJUDGED, and DECREED that:

1.      The Motion is granted.

---

[1]   If applicable, the last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) WP Steel Venture LLC (7095); (ii) Metal Centers LLC; (iii) RG Steel, LLC (1806); (iv) RG Steel Railroad Holding, LLC (4154); (v) RG Steel Sparrows Point, LLC (3633); (vi) RG Steel Warren, LLC (0253); (vii) RG Steel Wheeling, LLC (3273); and (viii) RG Steel Wheeling Steel Group, LLC (9927). The Debtors' mailing address is P.O. Box 1847, Bel Air, Maryland 21014.

[2]   Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

2.    All unresolved objections to the Motion are overruled.

3.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement Agreement, attached hereto as <u>Exhibit 1</u>, is approved, and the terms, conditions, and provisions of the Settlement Agreement are incorporated in this Order by reference as if fully set forth herein.

4.    The Debtors are authorized, but not directed, to take any and all actions necessary to carry out, effectuate, or otherwise enforce the terms, conditions, and provisions of the Settlement Agreement.

5.    The claims resolution process (the "**Claims Resolution Process**") as set forth below is hereby approved and the Debtors are authorized to take any and all actions necessary to effectuate or otherwise carry out same:

(a)    The Debtors shall have until forty-five (45) days after the occurrence of the Effective Date (which deadline may be extended upon mutual written agreement of the Parties and without further approval of the Court) to object (a "**Claims Objection**") to any claim that is not an Allowed Claims (except to claims of the USW Parties and the non-withdrawal liability claims of the SPT, which claims are resolved by the distributions provided for in the Settlement Agreement). Except as explicitly set forth in the Settlement Agreement, the Debtors shall be the sole party authorized to pursue Claims Objections; <u>provided, that</u>, the Debtors shall consult with the Committee on which Other Claims shall be the subject of a Claims Objection and the settlement of any such Claims Objection; <u>provided, further,</u> that with respect to claims filed in excess of $500,000, the Committee shall have until 15 days after the expiration of the Claims Objection Deadline to file its own Claims Objections to Other Claims to the extent that the Debtors decline to file such Claims Objections. If a party listed on the Claims Objection disputes the treatment of such potential claimant's claim (a "**Responding Claimant**"), such Responding Claimant will be encouraged to contact the Debtors' counsel informally to attempt to resolve its claim or dispute amicably, without the need to file a formal claim or objection. The Parties will use their best efforts to support the Debtors' motion to establish the following claims reconciliation process in the absence of an informal resolution of a Responding Claimant's response to a Claims Objection. For the avoidance of doubt,

2

the following proposed procedures will control regardless of whether a Claims Objection is filed by the Debtors or the Committee.

(b)     If a Responding Claimant wishes to assert and file a formal claim or objection following attempts to resolve such claim amicably as provided above, the Responding Claimant must file its claim or response, together with documentation supporting its asserted claim or objection with the Bankruptcy Court (each, a "**Response**") on or before such time as set forth in the Claims Objection (the "**Claims Response Deadline**") and serve a copy of such Response on counsel for the Debtors and counsel to the Committee so that it is actually received on or before the Objection Deadline.  In any Response, the Responding Claimant must state the grounds for the Response to the Claims Objection and must include documentation to support such Response.

(c)     The Debtors or the Committee (as applicable depending on which party files the Claims Objection) shall review all Responses and supporting documentation timely submitted by an Responding Claimant and shall consult with the Responding Claimant and the Debtors or the Committee (as applicable) in order to attempt to resolve any disputes regarding the Claim Objection.  If the Debtors or the Committee (as applicable) and the Responding Claimant cannot agree on a resolution, then a hearing to resolve any Response shall take place before the Bankruptcy Court as set forth in the Claims Objection.

(d)     The Debtors, in consultation with the Committee with respect to Other Claims, shall be authorized to resolve any Claim Objection by agreement with the Responding Claimant or withdraw the Claim Objection without further order of the Bankruptcy Court.

(e)     The requirements of Bankruptcy Rule 3007 and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, with regard to substantive claims objections and omnibus claims objections, shall be inapplicable to the extent inconsistent with the Claims Resolution Process provided for herein.[3]

5.     The Debtors are authorized and directed to make distributions to holders

of Allowed Claims as set forth below and the Debtors are authorized to take any and all actions

necessary to effectuate or otherwise carry out same:

---

[3]     The procedures approved by this Court pursuant to the *Order Pursuant to 11 U.S.C. § 105(a), Fed. R. Bank. P. 3007 and Del Bankr. L.R. 3007-1 Modifying the Application of Del. Bankr. L.R. 3007-1(f)(i), (ii) and (iii) Pertaining to Substantive Omnibus Claims Objection* [Docket No. 3925] remain unaltered by the proposed procedures in this Motion.

(a)     Distributions shall be made as set forth in Section 6(b) of the Settlement Agreement on account of Allowed Claims. For purposes of such distributions, the Debtors shall be treated as a single entity, and claims filed by a creditor against multiple Debtors asserting liability on the same basis shall be deemed a single claim for purposes of distributions. For the avoidance of doubt, the Debtors shall not be required to file a Claims Objection to expunge duplicate claims filed against multiple Debtors.

(b)     Upon the completion of the proposed claims resolution process, except as explicitly set forth herein, the Debtors shall make a single distribution to the holders of Allowed Claims. Distributions will be made by to holders of Administrative Claims and Other Claims by the Debtors' claims agent, and the USW Distributions shall be made by a third party on behalf of the Debtors. In each case, costs of the distributions will be covered by the Debtors' estates solely to the extent set forth in the Budget; provided, that, to the extent that employer taxes with respect to the USW Distributions on account of any payments to former bargaining unit employees for which withholding is required exceed $700,000, the excess amount of those taxes shall be paid from the USW Residual Amount allocated to the USW under paragraph 6(b) of the Settlement Agreement which USW Residual Amount shall be retained by the Debtors until the Debtors' remittance of such employer taxes. To the extent there are remaining funds in the USW Residual Amount after payment of such employer taxes, those funds shall be distributed by the Debtors as directed by the USW for a purpose that will not obligate the Debtors to withhold additional employment taxes, such as a further allocation on the claims of the USW Parties or the SPT or the payment of employee and retiree medical claims (for which the Debtors do not intend to withhold).[4]

(c)     The Distribution Pool will be used to make *pro rata* distributions in the following allocations: (A) $600,000 of the Distribution Pool will be distributed to holders of Allowed Administrative Expense Claims on a *pro rata* basis (the "**Admin Allocation**"); (B) $3,000,000 of the Distribution Pool will be distributed to holders of Allowed Other Claims on a *pro rata* basis (the "**Other Claim Allocation**"); and (C) $12,000,000 of the Distribution Pool (the "**USW Allocation**") will be distributed by the Debtors on account of claims (whether constituting Administrative Expense Claims or Other Claims) of the USW Parties (or members of the USW's collective bargaining unit) and the SPT against the Debtors

---

[4]     At the commencement of the Mediation, the USW took the position that the Debtors should be responsible for both making the distributions to individuals represented by the USW and for the entire employer portion of various employment taxes required to be paid in related to the wages. However, as the settlement discussions evolved and the USW became aware of the limited funds available and the Debtors' initial estimate of such taxes given the Debtors' lower estimate of wage-related distributions to be made to individuals represented by the USW, the USW agreed, solely in the context of this Settlement Agreement, for certain tax payments to be made from the USW Residual Amount.

pursuant to written instructions provided to the Debtors and agreed upon by all of the USW Parties and the SPT (the "**USW Distributions**").

(d)     Any distribution check that has not been cashed within sixty (60) days after having been sent via first class mail to a holder of an Allowed Claim at the address identified in the Debtors' schedules of assets and liabilities, filed proof of claim, the Debtors' former payroll records or such other address provided by such creditor to the Debtors in writing (the "**Check Cashing Period**") shall be deemed forfeited. A Notice setting forth the Check Cashing Period and the consequences for failure to comply shall accompany distribution check(s) and shall also be published by the Debtors prior to the commencement of distributions in either USA Today (National Edition) or The New York Times (National Edition). Any funds remaining after the expiration of the Check Cashing Period in the USW Allocation shall be released by the Debtors to counsel for the USW for further distributions to creditors.

(e)     As to any funds released to the USW, the USW shall, after a reasonable period and after undertaking reasonable efforts to locate and identify former active and retired bargaining unit employees whose distributions were released to the union, and after providing appropriate notice to the Court and the parties in interest in the instant proceeding (if the USW acts to re-allocate funds prior to the dismissal of these cases), be authorized to: (A) re-allocate the funds among the covered former bargaining unit employees and retirees; (B) contribute said funds to plans providing benefits to former bargaining unit employees and/or retirees; or (C) contribute said amount to a charity or charities of the USW's choice that provide services to persons similarly situated to the Debtors' former employees in the areas where the Debtors operated.

(f)     If, following the expiration of the Check Cashing Period, the funds remaining in any of the Other Claim Allocation exceed $200,000 (the "**Remaining Other Claim Allocation**"), such funds shall be redistributed by the Debtors' claims agent to the holders of the Allowed Other Claims (on a *pro rata* basis, excluding the claims on account of which distribution checks have been returned or have not been cashed prior to the expiration of the Checks Cashing Period); provided, however, that the costs of such distribution shall be funded solely from the Remaining Other Claim Allocation. If the funds remaining in any of the Other Claim Allocation are less than $200,000, such funds shall be distributed to the Professionals on account of the *pro rata* portion (based on the total amount of the Fee Concessions, as defined below) of the Fee Concessions. Any funds remaining after the expiration of the Check Cashing Period in the Admin Allocation portion of the Distribution Pool shall be deemed property of the Debtors.

5

6.      Upon the Effective Date of the Settlement Agreement, the Debtors shall no longer be obligated to hold any assets or funds in escrow, segregated or reserve accounts, including those established pursuant to prior orders of this Court; provided, however, that, subject to further order of this Court after notice and opportunity for a hearing, or upon agreement of the Debtors, Wesco Distribution, Inc. ("Wesco"), the Committee, and the Prepetition Secured Parties,  the Debtors shall maintain the reserve established in connection with the Order Authorizing and Approving (I) Sale of Martins Ferry Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases [D.I. 849] and related assets in respect of mechanics liens asserted against the sold property by Wesco and all such parties' rights with respect to Wesco's asserted claims and mechanics lien, including, but not limited to, the validity and priority thereof, appropriate discovery (if any) in respect thereof and entitlement to the reserve, are preserved. Further, the Debtors shall be authorized, but, except as expressly provided herein, not directed to use such assets and funds, including without limitation: (a) cash and other assets held in that certain escrow account at Wilmington Trust, N.A. (the "Escrow Agent") established pursuant to an Order of this Court dated July 2, 2013 [D.I. 3106] regarding assets formerly held in trust at PNC Bank, N.A., which cash and other assets shall be distributed in accordance with the terms of a Memorandum of Understanding (the "Memorandum of Understanding") dated September 25, 2015, by and among Richard H. Carter, Gregg M. Johnston, Clarence E. Newhouse, and John P. McConegly, Jr. and the Debtors, which Memorandum of Understanding is attached hereto as Exhibit 2, and the terms, conditions, and provisions of which are incorporated in this Order by reference as if set forth herein; (b) the reserve established in connection with the Order Authorizing and Approving (I) Sale of Warren Assets Free and Clear of Liens, Claims,

6

Encumbrances, and Interests; and (II) Granting Related Relief [D.I. 1072] and related assets in respect of mechanics liens asserted against the sold property by Wesco Distribution, Inc.; and (c) the escrow account established pursuant to that certain Escrow Agreement, dated as of September 14, 2012, by and between RG Steel Sparrows Point, LLC, Baltimore County, Maryland and Fidelity National Title Insurance Company in connection with certain disputed tax claims and anticipated refunds. Except as provided herein, notwithstanding any restrictions under any prior order, any agreements with Debtors, or otherwise, any escrow agents or third party custodians in possession of such assets and funds are hereby directed to turn over and pay all such assets and funds to the Debtors or as otherwise provided in this Order.

7.    Requests for Payment of Professional Fees.  The Professionals in these Cases shall not be required to file with the Court any monthly or interim fee requests with respect to the Professional Fees, even with respect to the fees that were previously incurred that were not covered by any such fee requests. Each Professional shall file, and serve upon appropriate notice, its final fee request with the Court for approval of its Professional Fees incurred in these Cases within 120 days of the Effective Date. A hearing on the final fee requests will occur at a date and time to be determined. The Professionals shall be paid by the Debtors no later than 30 days after approval of the final fee requests.

8.    Dismissal.  Promptly after the occurrence of the last to occur of each of the following events: (a) distribution (or release) of all of the funds in the Distribution Pool as set forth herein, (b) entry of an order(s) by the Bankruptcy Court regarding all final fee applications, (c) conclusion of all avoidance actions and (d) payment of any then accrued and unpaid fees pursuant to 28 U.S.C. §1930 to the Office of the U.S. Trustee, the Debtors shall file

with this Court a notice certifying to the occurrence of such events and attaching the proposed
form of order dismissing these cases and requesting entry thereof.

        9.     Resolution of Objection of Air Products and Chemicals, Inc. ("**Air
Products**").  The objection filed by Air Products (D.I. 4441) has been resolved as follows: (a) in
partial satisfaction of the "Up-Front Air Products Payment" (as defined in Air Products'
objection), Air Products shall receive $100,000 if the amount is paid on or before December 31,
2015 or $150,000 if the amount is paid on or after January 1, 2016 (the "**Air Products
Payment**"); (b) in addition to the Fee Concessions set forth in the Settlement Agreement, each of
Willkie, Morris, Nichols, Arsht & Tunnell LLP, and Conway MacKenzie, Inc., shall reduce its
final fee request or the Budget for fees and expenses for such professional shall be reduced by
$35,000, $5,000, and $10,000, respectively; (c) the Air Products Payment shall be made from
Cash Collateral, the additional Fee Concessions described in subsection (b) above, and/or as
arranged by the Prepetition Secured Parties; and (d) the remainder of the Air Products
Administrative Expenses Claim (as defined in Air Products' objection) (i.e., the sum of (i)
$530,000 and (ii) the difference between (a) the Up-Front Air Products Payment and (b) the Air
Products Payment) (the "**Remaining Air Products Admin Claim**") and the Air Products
General Unsecured Claim (as defined in Air Products' objection) shall be unaffected by this
paragraph and distributions on account of the Remaining Air Products Admin Claim and the Air
Products General Unsecured Claim shall be made in accordance with the distribution procedures
set forth herein and in the Settlement Agreement.

11. 10.   The Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Order.

Dated: __Oct 15__, 2015
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

10. Resolution of Objection of Baltimore Scrap Corp. ("BSC"). The objection filed by BSC (D.I. 4440) has been resolved as follows:

(a) BSC shall be paid $27,000 in cash within ten (10) business days of the Effective Date;

(b) BSC shall be paid the first $50,000 in cash of the funds remaining in the Other Claim Allocation after expiration of the Check Cashing Period;

(c) BSC's allowed administrative expense claim in the amount of $214,339.11 (the "BSC Admin Claim") and BSC's general unsecured claim(s) shall be unaffected by this paragraph and distributions shall be made on account of such claims subject to the terms and conditions set forth herein; and

(d) the Debtors shall provide reasonable updates to BSC regarding the status of claims objections and distributions upon reasonable inquiry.